UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**FAS-TES FRANCHISE SYSTEMS, LLC,**
c/o Binnall Law Group
717 King Street
Alexandria, Virginia 22314

*Plaintiff*,

v.

**RAMSEY DIAGNOSTICS CORP., d/b/a LABB,**
2115 Granby Street
Norfolk, Virginia 23517

Registered Agent:
Albert H. Poole
4705 Columbus Street, Suite 100
Virginia Beach, Virginia 23462

*Defendant*.

Case No. 2:26-cv-961

**COMPLAINT**

Plaintiff Fas-Tes Lab Franchise Systems LLC brings this action alleging that Ramsey Diagnostics Corporation d/b/a Labb has breached the Exclusive Supplier Agreement between the parties.

**The Parties and Jurisdiction**

1. Plaintiff Fas-Tes Lab Franchise Systems LLC ("Fas-Tes") is a Limited Liability Company incorporated and headquartered in the State of Texas. Fas-Tes' members are all citizens of the State of Texas.

2. Defendant Ramsey Diagnostics Corporation d/b/a Labb ("Labb") is a

Virginia corporation with its principal place of business in the Commonwealth of Virginia and may be served with process upon its registered agent, Albert H. Poole of Poole Brook Plumlee PLLC, located at 4705 Columbus Street, Suite 100, Virginia Beach, VA 23462–6749, or wherever he may be found. Ramsey Diagnostics Corporation is doing business under the name "Labb" and provides drug-testing equipment, software, and related services.

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff's claims exceed an amount in controversy over $75,000, exclusive of costs and interest, and because complete diversity of the Parties exists. Plaintiff has been injured, at minimum, in an amount of $533,010.00 with an expectation that such damages will grow once discovery in this case is completed.

4. The Court has jurisdiction and authority to declare the Parties' rights and legal relations because an actual controversy exists concerning the validity, enforceability, performance, and termination of the Parties' several agreements. 28 U.S.C. § 2201.

5. This Court may grant further and necessary or proper relief based on a declaratory judgment after reasonable notice and hearing. 28 U.S.C. § 2202.

6. The Court has personal jurisdiction over Labb because Labb is incorporated in Virginia, conducts business in Virginia, and contractually agreed to the exclusive jurisdiction of the state and federal courts sitting in Norfolk, Virginia.

7. Venue is proper in this District because Labb resides in this District and a substantial part of the events and omissions giving rise to Fas-Tes' claims occurred

in this District. 28 U.S.C. § 1391. Venue is further proper in this District because Labb contractually agreed that the state and federal court sitting in Norfolk, Virginia would be the exclusive venue to resolve any and all disputes arising from the several agreements between the Parties.

**The Facts and Allegations**

8. Fas-Tes is a drug and DNA testing company that offers a range of drug, alcohol, and DNA testing services for individuals, businesses, government agencies, and other organizations. Fas-Tes is a franchisor that maintains a network of current and future franchisees operating across the country.

9. Labb is the developer of one or more proprietary software systems to be used in effectuating certain drug tests and other toxicology screenings, and also provides testing materials, such as the cups used to collect testing samples.

10. On December 21, 2022, Fas-Tes and Labb entered into a written Exclusive Supplier Agreement (the "Contract" or the "Original Agreement," attached as Exhibit 1) wherein Fas-Tes Systems LLC agreed to exclusively use certain Labb products and services as provided for in the Original Agreement, and in return Labb warranted and agreed to provide Fas-Tes with products which conform to applicable industry standard for functionality and accuracy, and that Labb and its authorized designees will render the services under the Agreement in a manner which conforms to applicable industry standards.

11. The Original Agreement had an initial ten-year term beginning on December 21, 2022.

12. Under the Original Agreement, Fas-Tes agreed to require its franchisees to purchase and use specified Labb products and services exclusively for drug tests and related services, subject to stated exceptions. One exception provides that it is not a violation of the exclusivity provisions if a franchisee uses a product, for which Labb does not offer a similar or equal product, for the franchisee's drug-testing and related services.

13. Per the Original Agreement, Labb agreed to develop a specialized modification of its Core Software, with additional software, source code, and technology, to address the specific needs of Fas-Tes' operations (the "Modified Software"). The Original Agreement granted Fas-Tes and its franchisees a license to use the Modified Software, including all modifications made to the software during the term of the Agreement.

14. The Original Agreement further required Labb to segregate a fifty-cent per-unit development fee collected on designated products. During the first four years of the agreement, Labb retained authority to use those fees to modify, maintain, upgrade, and support the Core Software and Modified Software and to develop new software and technology to be covered under the Original Agreement. The Original Agreement established annual license fees and a 3.5 percent annual increase in the prices for products and services, beginning in the second agreement year.

15. Labb's existing software has failed to meet the needs of Fas-Tes and its franchisees or applicable industry standards for functionality and accuracy because it lacks essential capabilities and functionality commonly available in industry-

standard products and software.

16. Labb's existing software also does not accommodate third-party collection sites which use third party cups and equipment rather than cups and equipment used by Labb. As a result, where Fas-Tes clients require testing in areas without a Fas-Tes collection site and where a third-party collection site uses only non-Labb provided equipment, the Fas-Tes franchisee cannot service that client through Labb's software and equipment.

17. Other available software platforms are compatible with third party equipment.

18. Labb developed and began marketing a new software platform called "One by Labb," which is closer to applicable industry standards and provides capabilities materially absent from Labb's existing software and products. Labb represented in a proposed partnership framework that it made a deliberate decision to abandon its original platform because the system is obsolete and improvements on that platform could not deliver what the market needs.

19. One by Labb is a modification, upgrade, or additional software developed in conjunction with the Modified Software that Labb was already obligated to provide or license under the Original Agreement. Labb, however, has taken the position that Fas-Tes and its franchisees may only use One by Labb under a new agreement with materially increased pricing.

20. During negotiations preceding July 6, 2026, Labb represented that Fas-Tes franchisees had committed multiple material breaches of the Original

Agreement's exclusivity provisions and asserted that, unless Fas-Tes agreed to pay $100,000 and accept a new pricing structure, Labb would conduct audits and directly investigate Fas-Tes franchisees. Such self-led investigations are not permitted to Labb under the Original Agreement or the LOI.

21. On July 6, 2026, Fas-Tes and Labb executed a Letter of Intent (the "LOI," attached as Exhibit 2). The LOI states that Fas-Tes was to announce revised fees effective September 1, 2026.

22. The LOI provides that each franchisee would pay Labb a $249 monthly software fee plus a monthly revenue-based fee of $149 for each $10,000 of monthly franchisee revenue, or portion thereof. The LOI states that the new fees would apply regardless of the software platform used by the franchisee and would control over conflicting pricing provisions in the Original Agreement.

23. The LOI further states that the parties would work in good faith to complete a term sheet within five business days and would work in good faith to complete and execute a final, definitive agreement on or before July 30, 2026.

24. The LOI conditioned Fas-Tes' $100,000 payment upon execution of the contemplated definitive agreement and provided that Labb would release past exclusivity claims only after both payment in full and execution of that definitive agreement. The Parties, however, did not execute a definitive agreement by July 30, 2026 (or after), and Fas-Tes did not pay Labb $100,000 because Fas-Tes subsequently learned that Labb had no evidence supporting its representations that Fas-Tes franchisees had committed a material breach of the Original Agreement–which Labb

used as improper leverage to pressure Fas-Tes into executing the LOI. Labb has not provided Fas-Tes with specific identities of allegedly offending franchisees, the alleged conduct constituting a breach, or evidence supporting its accusations. And despite multiple requests to do so, Labb has also not identified contractual authority permitting it to access each franchisee's vendor-payment information. Instead, Labb relies upon a generalized suspicion that each and every franchisee has somehow breached the exclusivity agreement but refuses to provide any corroborating evidence to support this claim.

25. Notwithstanding the absence of a final definitive agreement and Fas-Tes' dispute of the LOI's enforceability, Labb increased the monthly price charged to each franchisee location from approximately $109 to $398 as of September 1, 2026, and charged the increased amount to franchisees' credit cards or ACH payment accounts.

26. Labb has directly contacted Fas-Tes franchisees regarding the alleged new pricing structure and has offered demonstrations of One by Labb directly to Fas-Tes franchisees. Fas-Tes demanded that Labb cease non-essential direct communications with Fas-Tes franchisees, cease making unsubstantiated accusations of exclusivity violations, and reenable "direct read" functionality that Labb had disabled.

27. The Original Agreement permits Labb to stop shipping products or providing services only to a franchisee whose payment charge has been rejected, unpaid, or charged back and who has not cured the delinquency as specified in the

agreement.

28. An actual and immediate controversy exists between Fas-Tes and Labb concerning Labb's alleged material breach of the Original Agreement, Fas-Tes' obligations under the Original Agreement, the enforceability of the LOI, and Labb's authority to impose increased pricing, contact franchisees for non-operational purposes, audit franchisees directly, or discontinue products, services, software access, or support during this action.

**COUNT I**
**(Breach of Contract Under the Original Agreement)**

29. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

30. The Original Agreement was a valid contract between Fas-Tes and Labb. Fas-Tes performed its obligations under the Original Agreement or was excused from further performance by Labb's material breaches or repudiation.

31. Labb promised to provide products and services that conformed to applicable industry standards for functionality and accuracy. Labb also agreed to develop and license specialized Modified Software for Fas-Tes and its franchisees, including modifications and additional software developed in conjunction with the Modified Software. Instead, Labb materially breached the Original Agreement by failing to provide software, products, and services which meet the promised industry-standard functionality or the specialized needs for which the Modified Software was to be developed.

32. Labb materially breached the Original Agreement by failing to provide

industry standard software capable of supporting Fas-Tes' and its franchisees' operations, including but not limited to their operations at third-party collection locations using third party cups and equipment, while requiring Fas-Tes and its franchisees to purchase and use Labb products and services exclusively.

33. Labb materially breached the Original Agreement by withholding One by Labb unless Fas-Tes accepted a new agreement and increased pricing, despite Fas-Tes' contractual rights to the Modified Software, modifications, and software developed through development fees.

34. Labb's breaches defeated or substantially impaired the purpose of Fas-Tes' exclusivity commitments under the Original Agreement.

35. As a direct and proximate result of Labb's breaches, Fas-Tes has suffered and continues to suffer harm, including impairment of its franchise system, loss of business opportunities, loss of good will amongst its franchisees, disruption of franchisee relationships, and exposure to disputed charges. The pecuniary harm to Fas-Tes is ongoing and at this point is at least $533,010.

36. Fas-Tes is entitled to a declaration that Labb materially breached the Original Agreement and that Fas-Tes is excused from further performance of the Original Agreement's exclusivity, buyout, and other prospective obligations.

WHEREFORE, Plaintiff prays for judgment as set forth herein.

**COUNT II**
**(Fraudulent Inducement and Recission of the LOI)**

37. Plaintiff incorporates by reference all preceding paragraphs of this

Complaint as though fully set forth herein.

38. Before Fas-Tes executed the LOI on July 6, 2026, Labb represented to Fas-Tes that multiple franchisees had materially breached the Original Agreement's exclusivity provisions. Labb further represented that Fas-Tes needed to pay $100,000 to resolve those alleged past violations and needed to accept increased pricing to prevent Labb from directly auditing and investigating Fas-Tes franchisees.

39. Labb made those representations to induce Fas-Tes to execute the LOI and agree to the revised pricing structure. The alleged exclusivity violations were material to Fas-Tes' decision whether to execute the LOI because the LOI made the proposed $100,000 payment and eventual release of claimed past violations part of the parties' proposed resolution.

40. Labb's representations regarding existing material exclusivity violations were false because Labb had no evidence that Fas-Tes franchisees had committed such violations. Labb knew its representations were false when made.

41. Fas-Tes reasonably relied on Labb's representations and executed the LOI while facing Labb's threatened direct intervention with Fas-Tes franchisees.

42. Fas-Tes was damaged by that reliance because Labb now asserts that the LOI authorizes a substantial immediate increase in fees and permits Labb to alter the parties' relationship notwithstanding the absence of the contemplated definitive agreement. Labb has also subsequently gone around the LOI and has made their own announcement, or series of announcements, directly to Fas-Tes' franchisees regarding the new pricing structure, thus eroding good will amongst Fas-Tes and its

franchisees.

43. The fraudulent inducement by Labb renders the LOI unenforceable. Fas-Tes is entitled to rescission of the LOI and a declaration that it is void and unenforceable.

WHEREFORE, plaintiff prays for judgment as set forth herein.

**COUNT III**
**(Declaratory Judgment)**

44. Plaintiff incorporates by reference all previous paragraphs of this Complaint as though fully set forth herein.

45. An actual, substantial, and immediate controversy exists between Fas-Tes and Labb regarding the parties' rights and obligations under the Original Agreement and the LOI.

46. Fas-Tes contends that the LOI is unenforceable because its material provisions contemplated the negotiation and execution of a future definitive agreement by July 30, 2026, which the parties did not execute.

47. Fas-Tes further contends that Labb's promised release of alleged past exclusivity claims could not serve as valid consideration for the increased fee structure because Labb lacked evidence supporting those alleged claims and because the release was conditioned on both execution of a definitive agreement and payment of $100,000, neither of which were perfected due to Labb's conduct.

48. Fas-Tes also contends that Labb's provision of One by Labb does not constitute new consideration for the LOI because the Original Agreement already obligated Labb to provide and license the Modified Software, including qualifying

modifications and additional software, and provided for development fees to fund modifications, upgrades, and new technology.

49. Labb nevertheless asserts that the LOI authorizes the increased franchisee fees that it imposed beginning September 1, 2026, and that it may enforce the LOI notwithstanding the Parties' failure to execute the contemplated definitive agreement.

50. Fas-Tes seeks a declaration of the parties' rights and legal relations, including declarations that:

i. The LOI is void, rescinded, or otherwise unenforceable;

ii. The Original Agreement, rather than the LOI, governed the pricing of Products and Services before any valid termination or adjudication of Fas-Tes' rights;

iii. Labb's unilateral imposition and collection of fees under the LOI was unauthorized;

iv. Fas-Tes is excused from further performance of the Original Agreement's prospective exclusivity and early-termination buyout provisions because of Labb's material breaches; and

v. Fas-Tes may terminate the Original Agreement without the contractual buyout otherwise specified by that agreement.

## PRAYER

WHEREFORE, Plaintiff Fas-Tes prays that judgment be entered in its favor for the following relief:

(1) A declaration determining the parties' respective rights and obligations under the Original Agreement and the LOI ;

(2) A declaration that the LOI is void, rescinded, or otherwise unenforceable;

(3) A declaration that Labb materially breached the Original Agreement and that Fas-Tes is excused from further performance of the Original Agreement's prospective exclusivity, early-termination buyout, and related obligations;

(4) Rescission of the LOI;

(5) Preliminary and permanent injunctive relief prohibiting Labb, and all persons acting in concert or participation with it who receive actual notice of the injunction, from: (i) enforcing or collecting the fees established by the LOI; (ii) suspending, terminating, disabling, degrading, or materially limiting Products, Services, Modified Software access, direct-read functionality, support, or shipments to Fas-Tes or its franchisees based on Fas-Tes' dispute of the LOI, its nonpayment of disputed fees imposed under that instrument, or the alleged past exclusivity violations; (iii) communicating directly with Fas-Tes franchisees regarding alleged exclusivity violations, audits, disputed

pricing, One by Labb demonstrations, or proposed contractual changes, except for communications reasonably necessary to fill product orders, provide operational support, invoice undisputed charges, or perform other routine services under the Original Agreement; (iv) conducting or threatening to conduct direct audits of Fas-Tes franchisees concerning alleged exclusivity violations, absent Fas-Tes' written consent or further order of this Court;

(6) Restitution and disgorgement of amounts collected from Fas-Tes franchisees under the disputed fee structure, in an amount to be determined at trial;

(7) Compensatory damages in an amount to be proven at trial, but no less than $533, 010.00;

(8) Prejudgment and post-judgment interest as allowed by law;

(9) Reasonable attorney fees, costs, and expenses under the Original Agreement; and

(10) Costs and such further relief as is just and equitable. Plaintiff further prays for general relief.

**JURY DEMAND**

Plaintiff hereby makes demand for a trial by jury on all issues so triable.

Dated: September 11, 2026

Respectfully submitted,

*/s/ Jason C. Greaves*

Jason C. Greaves, VSB No. 86164
Katie L. Raymond, VSB No 101624
BINNALL LAW GROUP, PLLC
717 King Street
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jason@binnall.com
katie@binnall.com

*and*

Robert M. Park (PHV forthcoming)
Chase C. Parsons (PHV forthcoming)
UHL, FITZSIMONS, BURTON, WOLFF & RANGEL, PLLC
4040 Broadway, Suite 430
San Antonio, Teas 78209
Phone: (210) 829-1660
Fax: (210) 829-1641
Email: rpark@uhlfitzsimons.com
cparsons@uhlfitzsimons.com

*Counsel for Plaintiff Fas-Tes Franchise Systems, LLC*