IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

| | |
|---|---|
| FAS-TES FRANCHISEE SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>RAMSEY DIAGNOSTICS CORP., d/b/a LABB,<br><br>Defendant. | Case No. ________________ |

**DECLARATION OF JOHN SMITH ON BEHALF OF PLAINTIFF**

My name is John Smith, and I am the Executive Vice President of Fas-Tes Franchisee Systems, LLC, the named Plaintiff in this case. I make the following declaration:

1. "I am over the age of 18 years old and am capable of making this declaration. I am the Executive Vice President of Fas-Tes Franchisee Systems, LLC, and through that role the matters contained within this declaration are within my personal knowledge. I declare under penalty of perjury that the foregoing is true and correct. Executed on this 10th day of September, 2026.

2. In December of 2022, Fas-Test Franchise Systems LLC ("Fas-Tes" or "FTFS") and Ramsey Diagnostics Corp. d/b/a Labb (hereinafter referred to as "Labb") entered into an Original Agreement entitled "Exclusive Supplier

Agreement" (the "Original Agreement"). The Original Agreement contained exclusivity provisions for Fas-Tes and its franchisees to use software, products, and equipment provided by Labb, in exchange for Labb providing industry standard software, products, and equipment. A portion of each unit (i.e. testing cup) purchased by Fas-Tes from Labb was to be used by Labb to develop modifications to Labb's original software, as well as developing new software to better Fas-Tes and its franchisee's specific industry needs. A true and correct copy of this contract is attached hereto as **Exhibit PD-1** and is incorporated fully herein for all purposes as if fully stated.

3. The original software, and any modifications that have been made to it up until now, have been insufficient to keep pace with the day-to-day needs of Fas-Tes and its franchisees. Throughout the course of the relationship of the Parties under the Original Agreement, Labb has only made a handful of minor modifications to their core software–despite repeated pleas from Fas-Tes for additional industry standard features required by their clients and franchisees to perform day-to-day operations. The current functionality and features of the core/modified software offered by Labb under the Original Agreement is too obsolete to reasonably enable to allow Fas-Tes to successfully grow its business by offering it to new franchisees.

4. On May 31, 2026, James Ramsey, President of Labb, sent a document to myself and Matt Kunz, President & CEO of Fas-Tes, entitled "Proposed Partnership Framework" stating that Labb had made a "deliberate rebuild of the

platform start[ing] in early 2025" which resulted in a finalization of a new software known as One by Labb. Labb's communication went on to say that Labb "made a deliberate choice to abandon the original platform that had been developed . . . and build from the ground up" and that Labb made that decision "because the industry has reached a point where incremental improvement on the existing platform could not deliver what the market needs." A true and correct copy of this communication is attached hereto as **Exhibit PD-2** and is incorporated fully herein for all purposes as if fully stated.

5. Fas-Tes agrees with Labb's admissions that the original or modified software that has been solely offered to Fas-Tes by Labb fails to meet applicable industry standards for failure to integrate industry standard functionality and features, including–but not limited to–easy electronic ordering consistent with modern industry norms across the platform, real-time result reporting, integrated electronic custody and control form management for non-DOT and DOT drug tests, comprehensive compliance tools, live tracking, random drug testing program management, ordering and processing electronic breath alcohol test results, ordering at third-party networks across the United States, and other insufficiencies. Taken as a whole, the number of features lacking in the current Labb software is obsolete and cannot keep pace with industry standard needs, and there are multiple industry competitors who offer most if not all of these features for a competitive price–especially compared to the high prices Labb seeks to force Fas-Tes to pay for One by Labb. In short, the core/modified software offered by

Labb fails to meet the terms of the warranty provisions within the Original Agreement between the parties, which Fas-Tes now believes Labb sought to get around such warranties by concocting bald-faced accusations of exclusivity breaches to leverage Fas-Tes into signing the LOI between the parties.

6. James Ramsey of Labb has made repeated verbal accusations directly to me and FTFS' CEO, Matt Kunz, alleging that there has been "widespread" violations of the exclusivity provisions of the Original Agreement and that he believes "every" FTFS franchisee is in violation. FTFS strongly refutes that any such "widespread" breaches have occurred or that "every" franchisee is guilty of such allegations. FTFS has asked multiple times for evidentiary support from Labb. However, to date, no concrete evidence has been produced by Labb to support its claims of widespread exclusivity breaches. Instead, Labb continues to make bold accusations and has demanded that FTFS conduct its own company wide audit of each and every franchisee, which FTFS does not consider to be warranted or reasonable.

7. Based off of the representation made by Labb regarding alleged franchisee breaches of the exclusivity provisions of the Original Agreement between the Parties, along with the economic emergency that would result from Labb shutting off the software then and currently being used by Fas-Tes and its franchisees, Fas-Tes errantly entered into a Letter of Intent (the "LOI") on July 6, 2026. A true and correct copy of this LOI is attached hereto as **Exhibit PD-3** and is incorporated herein for all purposes as if fully stated herein.

8. The LOI contemplated the creation of a new agreement between the Parties, which was never finalized due to the growing disputes between the Parties, chief among which has been Labb's un-corroborated allegation that all of Fas-Tes' franchisees have breached the exclusivity provisions of the Original Agreement. Labb demanded $100,000 as resolution of these alleged breaches. Upon request for corroborating evidence to allow Fas-Tes to verify the existence or extent of any alleged breaches, Labb was unable to provide any concrete evidence and relied instead upon hunches and surmises, which lacked documentation or credibility.

9. As mentioned above, the Parties entered into the LOI on July 6, 2026. However, on July 15, 2026 Jeff Konecke of Labb stated via email that after doing a "deep dive" audit of one of Fas-Tes' top performing franchisees who was accused of exclusivity breaches, that "their site seems to be in compliance" and went on to state that Labb had also "finished looking at about 160 other sites. The difference–if any–between tests run, direct reads, and purchases are minor." A true and correct copy of this email is attached hereto as **Exhibit PD-4** and is incorporated fully herein as if fully stated. When asked about the audit status of the 160 franchisees referenced above, after accusing Fas-Tes of having "widespread" violations of the exclusivity provision in order to achieve the LOI, Labb stated after the fact on July 21, 2026 that "We did not continue going through anymore at this point. When the amendment to agreement was signed we told you we wanted to pursue three [franchisees]." *Id.* Three suspected franchisees, one of

whom being completely cleared of accusations after a “deep dive” audit, does not constitute a “widespread” breach–as asserted by Labb.

10. Fas-Tes took Labb’s assertions of ‘widespread’ breaches of exclusivity in good faith when negotiating the terms of the LOI, along with the calculations of Labb’s claims of $100,000 in damages. These representations were a material aspect of Fas-Tes’ agreement to enter into the LOI. However, upon learning further of the arbitrary ‘evidence’ and methodologies relied upon by Labb to substantiate their claim and damage figure, it is now clear to Fas-Tes that Labb materially misrepresented the operative facts behind the LOI.

11. It was Labb’s President, James Ramsey, who instead instructed Fas-Tes and its franchisees to direct CRL testing through third parties, which was later discovered to be at least part of the basis of Labb’s assertions that Fas-Tes and its franchisees had breached the exclusivity provisions of the Original Agreement. A true and correct copy of the September 30, 2024 email from James Ramsey of Labb is attached hereto as **Exhibit PD-5.**

12. Labb and its President, James Ramsey, have repeatedly gone around Fas-Tes to make direct announcements and communications to Fas-Tes’ franchisees, including announcements of deals and agreements that have not been made or finalized between the Parties, thus causing widespread confusion and frustration amongst Fas-Tes’ franchisees. These communications and interferences with Fas-Tes’ role as the Fas-Tes franchisor have directly led to the straining of relationships between Fas-Tes and multiple franchisees. True and correct copies

of examples of announcements are attached hereto as **Exhibits PD-6 and PD-8.**

13. Additionally, Labb or its agents or representatives have engaged in a smear campaign against one or more Fas-Tes franchisees concerning alleged breaches of the Agreement between the Parties, thus causing reputational harm to certain franchisees and leading to yet more strained relations between Fas-Tes and its franchisees, for which Fas-Tes has been harmed. This campaign involved Labb or its agents or representatives calling other Fas-Tes franchisees to impugn the character and credibility of one more other franchisees, which are top performers in the company and are extremely important to Fas-Tes not only for their business but for the close direct relationships between them and Fas-Tes.

14. Labb has also threatened at least one top performer to engage in an aggressive and invasive audit of that franchisees to discover suspected breaches of the exclusivity provisions of the Original Agreement. An example of such harassment is attached hereto as **Exhibit PD-7**, and is attached hereto for all purposes as if fully stated herein. This campaign of harassment has caused a great deal of distress, confusion, and emotional trauma for multiple franchisees, the frustrations for which have been directed upon Fas-Tes directly as the franchisor.

15. Through Labb's direct communications with Fas-Tes franchisees, Labb has eroded the confidence and trust of multiple franchisees once had with Fas-Tes, which Fas-Tes has had to expend considerable time and energy to counteract and repair. This threat continues still with new direct communications and announcements still being made by Labb, despite previous agreement with Labb

to cease such communications.

16. Relationships in the franchise industry that are soured or lost are not easy or capable to recover. Strong goodwill amongst Fas-Tes and its franchisees is the lifeblood of Fas-Tes and the loss of even one franchisee is an irreparable harm. One franchisee has even decided to withhold their option to open a new franchisee location directly because of the ongoing uncertainty and frustration caused by Labb through its policies and direct communications with franchisees–which often times completely contradict what Fas-Tes is correctly telling its franchisees.

17. Labb has even go so far as to make direct announcement to Fas-Tes' franchisees that they are required to use a company called Omega as the exclusive testing laboratory for any and all hair testing. **PD-6.** Hair testing has never been incorporated into any agreement with Labb, and hair testing equipment or software is not included in Exhibit A to the Agreement, which is an exhaustive list of the products and services covered by the Agreement. This announcement directly deposes Fas-Tes' authority as franchisor of its franchisees and must immediately stop.

18. Through Labb's own communications, they imminently intend on shutting off the original or modified software currently being used by Fas-Tes and its franchisees. This would result in immediate and irreparable harm to Fas-Tes and its franchisees company wide because neither would be able to perform the basic day-to-day functions of their business practice without said software.

19. Labb's continued direct communications with Fas-Tes franchisees about

non-essential business topics and unauthorized announcements poses an imminent threat of irreparable harm to Fas-Tes by eroding the goodwill cultivated between it and its franchisees–the relationships with which have already been greatly strained by Labb's previous interferences.

20. Despite numerous communications with Labb, disputing the enforceability of the LOI, Labb continues to assert that the LOI is a binding, "fully executed" agreement. Moreover, Labb has insisted that the LOI pricing would go into effect on September 1, 2026, to get access to One by Labb, even though One by Labb is not ready for operations. This new pricing includes a $249 per month SaaS license fee, up from $109, plus a revenue module fee of $150 for every $10,000 of revenue, plus various other charges, which is an incredibly inflated price compared to other more-competitive software on the market. On September 1, 2026, Labb began its plan of charging the LOI prices to Fas-Tes franchisees.

21. Labb's actions are currently creating an imminent threat of immediate harm to the operational viability and reputation of both Fas-Tes and its franchisees."

Further Affiant sayeth naught.

Executed on September 16, 2026

*/s/ John Smith*
John Smith, on behalf of
Fas-Tes Franchisee Systems, LLC

John Smith

# Declaration of John Smith

Final Audit Report 2026-09-16

| | |
|---|---|
| Created: | 2026-09-16 |
| By: | Chase Parsons (cparsons@uhlfitzsimons.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAY7KHo2ktUeFOhz6_p-j6OW0KlpzemCv1 |

## "Declaration of John Smith" History

Document created by Chase Parsons (cparsons@uhlfitzsimons.com)
2026-09-16 - 11:00:55 PM GMT

Document emailed to John Smith (john@fastestlabs.com) for signature
2026-09-16 - 11:00:59 PM GMT

Email viewed by John Smith (john@fastestlabs.com)
2026-09-16 - 11:01:30 PM GMT

Document e-signed by John Smith (john@fastestlabs.com)
Signature Date: 2026-09-16 - 11:01:41 PM GMT - Time Source: server - Signature Appearance Selected: MOBILE_IMAGE

Agreement completed.
2026-09-16 - 11:01:41 PM GMT