# Exhibit JK-1

# AMENDMENT NO. ONE (1) TO THE EXCLUSIVE SUPPLIER AND MODIFIED SOFTWARE DEVELOPMENT AGREEMENT

This Amendment No. One (1) (this "Amendment") is entered into as of July 6, 2026 (the "Amendment Effective Date"), by and between Ramsey Diagnostics Corporation, d/b/a Labb ("Labb"), and Fastest Labs [full legal entity name] ("Fastest Labs"). Labb and Fastest Labs are referred to individually as a "Party" and together as the "Parties."

This Amendment amends that certain Exclusive Supplier and Modified Software Development Agreement, dated December 21, 2022 (as previously amended, the "Agreement"), between the Parties. Capitalized terms used but not defined in this Amendment have the meanings given to them in the Agreement.

RECITALS

WHEREAS, the Parties are parties to the Agreement, under which Labb provides software and related products and services used by Fastest Labs and its franchisees;

WHEREAS, the Parties wish to amend the Agreement to establish a revised fee structure applicable to Fastest Labs franchisees and to have Fastest Labs announce that structure to its franchisees; and

WHEREAS, the Parties wish to resolve certain past matters under the Agreement and to proceed in good faith toward a term sheet and a definitive agreement.

NOW, THEREFORE, in consideration of the mutual promises set forth below, and intending to be legally bound, the Parties agree as follows:

1. Franchisee Fee Announcement and Structure

1.1 Announcement. Fastest Labs shall make an announcement to all of its franchisees stating that, effective September 1, 2026, the fees set forth in this Section 1 apply to each franchisee.

1.2 Software Fee. Each franchisee shall pay Labb $249 per month for Labb software.

1.3 Revenue-Based Fee. In addition to the software fee, each franchisee shall pay Labb a revenue-based fee equal to $149 per month for each $10,000 of the franchisee's monthly revenue, or any portion thereof. The first $10,000 (or any portion of it) is $149; each time monthly revenue exceeds an additional $10,000 increment, another $149 is added. The fee is illustrated in the table below:

| Franchisee Monthly Revenue | Monthly Revenue-Based Fee |
|---|---:|
| $0 to $10,000 | $149 |
| $10,001 to $20,000 | $298 |
| $20,001 to $30,000 | $447 |

| Franchisee Monthly Revenue | Monthly Revenue-Based Fee |
|---|---|
| $30,001 to $40,000 | $596 |
| Each additional $10,000 or portion thereof | Add $149 |

1.4 Application Regardless of Platform. The fees in this Section 1 apply to each franchisee regardless of which software platform the franchisee is then using.

1.5 Effective Date of Fees. The fees in this Section 1 begin on September 1, 2026. To the extent this Section 1 conflicts with any fee or pricing provision of the Agreement, this Section 1 controls as to Fastest Labs franchisees.

2. Term Sheet and Definitive Agreement

2.1 Term Sheet. The Parties shall work in good faith to complete a term sheet within five (5) business days after the Amendment Effective Date.

2.2 Definitive Agreement. The Parties shall work in good faith to complete and execute a final, definitive agreement on or before July 30, 2026.

3. Settlement of Past Contract Violations

3.1 Settlement Payment. Upon execution of the definitive agreement described in Section 2.2, Fastest Labs shall pay Labb $100,000 in resolution of past violations of the Agreement.

3.2 Reservation of Rights. Until the entire $100,000 described in Section 3.1 has been paid to Labb in full, Labb reserves all of its legal rights and remedies under the Agreement and at law, and may pursue them in a court of competent jurisdiction. Nothing in this Amendment waives, releases, or limits any such right or remedy prior to payment in full.

3.3 Release upon Payment and Execution. Upon both (a) payment of the entire $100,000 described in Section 3.1 to Labb in full, and (b) execution of the definitive agreement described in Section 2.2, all past exclusivity violations under the Agreement occurring prior to the Amendment Effective Date shall be released, discharged, and forgiven, and Labb shall have no further claim against Fastest Labs arising from those violations. This release becomes effective only upon satisfaction of both conditions in clauses (a) and (b), and not before.

4. Effect of Amendment; General

4.1 Continuing Effect. Except as expressly amended by this Amendment, the Agreement remains in full force and effect in accordance with its terms. This Amendment is incorporated into and made a part of the Agreement.

4.2 Conflict. In the event of any conflict or inconsistency between this Amendment and the Agreement, this Amendment controls.

4.3 Governing Law. This Amendment is governed by the laws of the Commonwealth of Virginia, without regard to its conflict-of-laws principles.

4.4 Counterparts and Electronic Signatures. This Amendment may be executed in counterparts, including by electronic signature, each of which is deemed an original and all of which together constitute one instrument.

IN WITNESS WHEREOF, the Parties have executed this Amendment as of the Amendment Effective Date.

RAMSEY DIAGNOSTICS CORPORATION, d/b/a LABB

________________________________

By: James Ramsey
Title: President
Date: 07/06/2026

FAS-TES FRANCHISE SYSTEMS, LLC, d/b/a Fastest Labs



By: Matt Kunz
Title: CEO
Date: 07/06/2026

# Exhibit JK-1A

Outlook

## Re: Amendment to Agreement for SIgnature.

**From** Matt Kunz <matt@fastestlabs.com>
**Date** Mon 7/6/2026 3:51 PM
**To** Jeff Konecke <jeff.Konecke@labb.com>

Thank you

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Monday, July 6, 2026 at 2:47 PM
**To:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Amendment to Agreement for SIgnature.

HI Matt

One more try.

Jeff

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Monday, July 6, 2026 3:22 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** Re: Amendment to Agreement for SIgnature.

Jeff,

Here is the signed amendment.

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Monday, July 6, 2026 at 1:16 PM
**To:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Amendment to Agreement for SIgnature.

Hi Matt.

Here is revised with the two changes/adds.

If good please sign and I will get it signed and sent back.

Thank You

Jeff

---

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Monday, July 6, 2026 12:41 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** Re: Amendment to Agreement for SIgnature.

Jeff,

Thanks for sending this over. We would like to see 3.1 include the release we originally discussed. I'm assuming that release would not come until the final payment is made.

Also, could you change my title to CEO please?

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Monday, July 6, 2026 at 9:23 AM
**To:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Amendment to Agreement for SIgnature.

Sorry,

Here is the correct one.

Jeff

---

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Monday, July 6, 2026 10:21 AM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** Re: Amendment to Agreement for SIgnature.

Jeff,

Thank you and I hope your holiday was good as well.

I believe you attached the wrong document.  This is the terms sheet John sent you.

Thank you,

**Matt Kunz** / President & CEO

Office: 210-641-2058

Cell: 815-739-1218

matt@fastestlabs.com

Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd

Suite 105

San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If

you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Monday, July 6, 2026 at 9:08 AM
**To:** Matt Kunz <matt@fastestlabs.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** Amendment to Agreement for SIgnature.

Hi Matt,

I hope you had a good holiday weekend. Attached is the Amendment we discussed for signing. Please let me know if there is any questions. If all good, please sign and send back to me for signature on our end.

Once we get this signed I will get working on the first cut of the TERM SHEET for new platform so we can get that ball rolling.

Thank You

Jeff

Outlook

## Re: Amendment to Agreement for SIgnature.

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Mon 7/6/2026 3:46 PM
**To** Matt Kunz <matt@fastestlabs.com>

Hi Matt,

Here is the counter signed agreement.

Let me know when you have let the franchisees notification go out and we can followup. I will work on the Term Sheet and get over ASAP.

Thank You

Jeff

---

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Monday, July 6, 2026 3:22 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** Re: Amendment to Agreement for SIgnature.

Jeff,

Here is the signed amendment.

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Monday, July 6, 2026 at 1:16 PM
**To:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Amendment to Agreement for SIgnature.

Hi Matt.

Here is revised with the two changes/adds.

If good please sign and I will get it signed and sent back.

Thank You

Jeff

---

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Monday, July 6, 2026 12:41 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** Re: Amendment to Agreement for SIgnature.

Jeff,

Thanks for sending this over.  We would like to see 3.1 include the release we originally discussed.  I'm assuming that release would not come until the final payment is made.

Also, could you change my title to CEO please?

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105

San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Monday, July 6, 2026 at 9:23 AM
**To:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Amendment to Agreement for SIgnature.

Sorry,

Here is the correct one.

Jeff

---

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Monday, July 6, 2026 10:21 AM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** Re: Amendment to Agreement for SIgnature.

Jeff,

Thank you and I hope your holiday was good as well.

I believe you attached the wrong document.  This is the terms sheet John sent you.

Thank you,

**Matt Kunz** / President & CEO

Office: 210-641-2058

Cell: 815-739-1218

matt@fastestlabs.com

Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd

Suite 105

San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Monday, July 6, 2026 at 9:08 AM
**To:** Matt Kunz <matt@fastestlabs.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** Amendment to Agreement for SIgnature.

Hi Matt,

I hope you had a good holiday weekend.  Attached is the Amendment we discussed for signing. Please let me know if there is any questions.  If all good, please sign and send back to me for signature on our end.

Once we get this signed I will get working on the first cut of the TERM SHEET for new platform so we can get that ball rolling.

Thank You

Jeff

# Exhibit JK-2

Outlook

## Text chain complete

**From** Jeff Konecke <jeff.konecke@yahoo.com>
**Date** Thu 10/1/2026 12:10 PM
**To** Jeff Konecke <jeff.konecke@labb.com>




12:01
5G
17
+1 (815) 739...
a tough
sell.
I would like to see the first payment due now. Second payment is due when term sheet is done or August 1 or when term sheet is signed. Third payment when new agreement is signed or September 1
Forth payment October 1
We want to get a new agreement and so do you. The payments are simply motivator to not drag feet.
iMessage


12:02
5G
17
+1 (815) 739...
We want to get a new
to not drag feet.
Thoughts
To leave it open ended just begs for delays. At this point that is what we don't want to continue to happen.
I get what you're saying but the fact that the payment is going into effect at least a month before the system has access to the software is plenty motivating to us to not drag anything out.
iMessage


12:02
5G
17
+1 (815) 739...
the system has
out.
Fri, Jul 3 at 7:23 AM
Good morning
What I laid out is fair and motivating to both. We are incentivized to get each done sooner and speed things up a little. You are incentivized to keep it moving because the payments are happening.
However in the end we want to get things locked in so we can move forward and have you as a
iMessage


12:02
5G
17
+1 (815) 739...
things
locked in so we can move forward and have you as a founder along with Cynergy and ??
We have already discussed the points and have met you at or pretty close to what was asked. Let's get this agreed and move on.
Jeff, I'm not really sure I understand what you're saying specifically what do you mean about Nguyen payment start?
iMessage


12:02
5G
17
+1 (815) 739...
Nguyen payment
start?
Sent with Siri
?? I don’t see Nguyen
Are you saying you're good that we don't start the payments until we have an agreement?
Sent with Siri
No
What I am saying is what I laid out above. This is fair and a motivator for both. I can’t sell another delay. No reason to since the points laid
discussed and for the
iMessage


12:03
5G
+1 (815) 739...
delay. No reason to since the points laid out by John have already been discussed and for the most part agreed. Even the exclusivity you asked for.
Well, Jeff, I guess we're at an impasse because I'm not making payments on 100,000 until we have an agreement
Best I can give you is they start when the term sheet signed.
middle of next week
iMessage


12:03
5G
17
+1 (815) 739...
Best I can give you is they start when the term sheet signed.
And we will have the term sheet to you by middle of next week
I'm sorry, Jeff. I just can't do that.
Also, I don't think you realize that I will have my attorney review the term sheet before we sign it.
I understand it will be reviewed. I do realize that. All I am saying is
to you so this moves
iMessage


12:03
5G
realize that I will have
my attorney review
we sign it.
17
+1 (815) 739...
I understand it will be reviewed. I do realize that. All I am saying is that we are ready to draft it and get it over to you so this moves forward.
We are not looking to drag this out. But it does seem like everytime I make a concession you look for more. That makes me question your desire to get things done.
Jeff, I appreciate your position and I hope you can appreciate it.
I thought we close to
iMessage


12:03
+1 (815) 739...
Jeff, I appreciate your position and I hope you can appreciate it. I thought we close to a deal until James email on 6/22 that added the additional topic, so I don't feel I like FTL is the delay. Make the hundred thousand dollar payment start when we have an agreement and I'm ready to move to terms. Otherwise, we need to change the conversation to how do we unwind this?
Fri, Jul 3 at 12:15 PM
iMessage


12:03
5G
17
+1 (815) 739...
agreement and I'm
need to
do we unwind this?
Fri, Jul 3 at 12:15 PM
Matt,
We are going to accept that change to what I sent over. But that is it. We are going to send you an amendment that spells out what was in the email I sent. With the only change being the $100k (4 payments of $25k) when the agreement is signed. No other changes.
We expect a letter to go to your
soon as it goes we
iMessage


12:03
5G
17
+1 (815) 739...
in the email I sent.
$100k (4
25k)
when the agreement
is signed. No other changes.
We expect a letter to go to your franchisees within 3 business days. As soon as it goes we need to know so that we can send our letter also.
We will have a draft of the term sheet - based on what we have discussed and those terms we have agreed to by the end of next week.
Since everything has been discussed, it
iMessage


12:05
5G
17
+1 (815) 739...
when the agreement
is signed. No other
changes.
We expect a letter to
go to your
franchisees within 3
business days. As
soon as it goes we
need to know so that
we can send our
letter also.
We will have a draft
of the term sheet -
based on what we
have discussed and
those terms we have
agreed to by the end
of next week.
Since everything has
been discussed, it
iMessage


12:06
5G
17
+1 (815) 739...
Since everything has been discussed, it should not be that difficult to finalize it and get it signed.
Our goal is to have this all wrapped up by end of July - since we have already shown things to many of the franchisees.
The new pricing goes in to effect September 1. Regardless. It is not tied to anything - as the $100k payment is.
iMessage
we will get the


12:06
5G
17
+1 (815) 739...
the $100k payment is.
Please affirm this and we will get the amendment over.
Please note: that nothing in this agreement sets aside anything in the old agreement until the new agreement is done, other then what was laid out in email.
Thank you
Jeff
Delivered
iMessage




Sent from my iPhone

# Exhibit JK-3

Outlook

## FW: Discover What's Next with the New Labb Agreement

**From** Matt Kunz <matt@fastestlabs.com>
**Date** Tue 7/7/2026 1:53 PM
**To** Jeff Konecke <jeff.Konecke@labb.com>

The below email was sent to the entire FTL system first thing this morning.

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Fastest Labs Home Office <saas@fastestlabs.com>
**Reply-To:** "saas@fastestlabs.com" <saas@fastestlabs.com>
**Date:** Tuesday, July 7, 2026 at 9:05 AM
**To:** "matt@fastestlabs.com" <matt@fastestlabs.com>
**Subject:** Discover What's Next with the New Labb Agreement

Hello Owners,

We want to bring you into something we've been working on for a while now: a new multi-year agreement with Labb.

Here's the short version: Labb is shifting its focus toward technology. The new agreement would be built around ONE by Labb — their next-generation platform replacing the current LabbStation/LabFusion system. And honestly, this shift lines up well with where we want to take things for you as owners.

Matt Kunz and John Smith have been meeting directly with Labb President Jeff Konecke, and those conversations have gotten us to a shared vision for the partnership. All parties are now working in good faith on a term sheet, which we expect to review in early July before it heads to legal counsel for a formal agreement.

We also want to be upfront about pricing. On September 1, 2026, Labb's base platform fee will increase to $249 per location, and the separate collection-network fee will be eliminated and absorbed into that base fee. The Finance module of One by Labb will be $150 per $10,000 in revenue.

We know no one loves a price increase, so here's some of what we negotiated for in exchange: a next-generation platform in ONE by Labb, simpler billing with one predictable fee instead of two, and a partner that's investing in technology built around how you run your labs. We wouldn't move forward with this if we didn't believe it puts your locations in a stronger position.

Why are we telling you this before anything is signed? Because an agreement this significant affects your business, and you deserve to see it coming — not read about it after the fact. More details on what we expect the agreement to include, pricing, and rollout are in FranConnect.

We're at the negotiating table with you in mind, and we'll keep you posted as things progress.

Thank you,

**The Fastest Labs Corporate Team**

Fastest Labs, 5718 University Heights Blvd, Suite 105, San Antonio, Texas 78249, United States, (210) 641-2051

Unsubscribe Manage preferences

Image removed by sender.

# Exhibit JK-4

Outlook

## Re: Response to Current Negotiations and Situation

**From** James Ramsey <james@labb.com>
**Date** Wed 7/29/2026 12:36 PM
**To** Matt Kunz <matt@fastestlabs.com>; Jeff Konecke <jeff.Konecke@labb.com>
**Cc** John Smith <john@fastestlabs.com>

Matt,

I think it is time for the attorney to get involved and move forward with enforcing the current contract.

James

**James Ramsey**
CEO
Labb

(o) 877 868 9967 | (d) 757 805 9652
James@Labb.com
labb.com
2115 Granby Street
Norfolk VA 23517

---

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Wednesday, July 29, 2026 12:22 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** James Ramsey <james@labb.com>; John Smith <john@fastestlabs.com>
**Subject:** Response to Current Negotiations and Situation

Jeff,
This last few weeks of communications between Labb and FTL have raised concerns that must be addressed before we move forward.
Regarding the amendment that was agreed to on Jul*y 3rd and executed on July 6th*. The events that lead to the agreement included Labb making serious accusations against Fastest Labs Home Office and Fastest Labs Franchisees regarding POCT non-compliance. John and I tried to work with you through this to show the amount of TPA business as well as conditions regarding the use of Direct Read. While we expected to find some non-compliance in the system, we did not think it was as egregious as it was presented. However, Labb insisted non-compliance was widespread without providing actual evidence. In good faith, we proceeded to sign the agreement and send out the system wide communications.
Now we've learned that Labb presented its opinion and hunch based on a revenue calculation as fact and forced us into agreeing to pay $100,000 settlement. During this same period, I was accused of not negotiating in good faith while you were actually not negotiating in good faith. Since then, you have found (by your admission) that there is very little if any non-compliance in the Fastest Labs system. Your chief accusation was against our Franchisee of the Year, Dave and Rachel George, whom were later cleared after you actually audited them. James previously cleared Ilan before he was listed as the

2*nd* highest offender. The other 160 noted in your email on July 15*th* seem good with minimal non-compliance. If you have actual evidence of wrongdoing, we would be happy to review and we have provided all the revenue information we have for owners. The assertions against Dave and Rachel George and Labb's confirmed leaking of that information to another franchisee, the letter itself, and the harsh text sent by James Ramsey to Jennifer Taylor, all have created a massive negative reaction that I must deal with.

As we are now in term-sheet negotiations we are being met with resistance to many things we find non-negotiable. Customer data ownership, fee structures related to FTFS revenue and the revenue that the system may or may not simplify, continuity of labs on the platform, and removal of a cost reduction for the rapid cups are a few of our chief concerns.

I must inform you that we are no longer willing to pay the fee schedule that was originally discussed. The market does not support it, and I cannot lead Fastest Labs into signing another agreement that is unfairly weighted. Your latest message noted that you would rather us not make a point of your margins. I agree that is fair. But, I am tasked with making sure franchisee's are paying fair prices for technology. The rates we are looking at are far from in line with the market of new technology vendors in the drug testing space. At any rate, it is not in the best interest of Fastest Labs to sign a 10 year agreement with a provider.

Jeff, the relationship has been severely strained since your arrival. The last several years have not been pleasant relationally with Labb. We expected certain technology to be built years ago. Now that it is finally available from Labb, instead of proceeding easily towards that path, you have introduced new strain to the relationship. Notably, the massive accusations against Fastest Labs over the last 6 weeks have been extremely straining and difficult. Frankly, I do not want to continue this relationship any further passed the limited scope of our existing agreement, should it remain, if the relationship is going be the same as it has been the last few years. Doing so would not be in the best interest of Fastest Labs.

We have lost confidence in Labb's ability to negotiate in good faith to find a mutually beneficial solution. Our trust has also been eroded through the process that led to the $100,000 and what has been found since.

Therefore, Fastest Labs is no longer willing to pay the $100,000 fee as that was developed without fact or merit nor will we sign another one-sided agreement and we are rolling back the price increase to our owners, set to go in effect on September 1st, 2026, until such time as One by Labb is functional and we have a mutually beneficial agreement. If a new agreement is not reached, we will live with the current one-sided agreement.

Key issues that remain or are new after our research:

- Rapid cup pricing. We expected a *meaningful* reduction in rapid costs and have yet to see any.
- Quest Pricing at $10.50
- Platform pricing costs to be within 10% of industry standard pricing
- Term is reduced to 3 years

Further, your assertion that "Under the existing contract, Labb can require Fastest Labs to purchase 100% of its products and services from Labb.," is not true. Fastest Labs is, at best, bound by the products and services listed on Exhibit A of the 2022 agreement.

Jeff, just this statement "Under the existing contract, Labb can require Fastest Labs to purchase 100% of its products and services from Labb.", is an example of what I am no longer willing to work with. It is not true – the contract does not say that. Why would Labb assert that to me?

If Labb is willing to be reasonable in the terms negotiations and genuinely work in good faith in all dealings with me and Fastest Labs we can move forward. If not, we will stick to the current agreement's scope and work with Labb there, and source other partners for the remaining technology and services we need, if you still want to partner with us.

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
Book Time With Me

FASTEST LABS® CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

# Exhibit JK-5

Outlook

## Re: Followup on call.

**From** John Smith <john@fastestlabs.com>
**Date** Wed 6/17/2026 3:27 PM
**To** Jeff Konecke <jeff.Konecke@labb.com>
**Cc** Matt Kunz <matt@fastestlabs.com>

Sounds good - 1CT works for both Matt and I. Thanks!

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Wed, Jun 17, 2026 at 2:22 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi John
>
> Thank you for the term sheet/wish list. This gives us a good base of understanding - since you also have ours. As mentioned in last email, and discussed with James, we now have to find reasonable middle ground on the various points and move this forward.
>
> James and I are traveling today and I forwarded it to him for review. We will be back tomorrow morning and will get together to discuss.
>
> As such, I think it best we move the call to Friday. How would 11:00 pst (1:00 cst) work? I would like to block out 90 minutes .
>
> Please let me know if that works.
>
> Thank you
> Jeff

Get Outlook for iOS

---

**From:** John Smith <john@fastestlabs.com>
**Sent:** Wednesday, 17 June 2026 09:14:32
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Followup on call.

Hey Jeff,

I agree the call was too short. Apologies if it felt tense, but this is an integral stage for us to properly align and I was caught off guard by a few things. My position and excitement to see this through and have a great relationship is the same as when we met, and when Matt and I recently visited with James. I want to get a healthy deal done with Labb that is good for both sides.

To that intent, I've attached our draft of key considerations we are seeking in this new agreement. I'd love for you to take a look and propose your own draft, and we can each review and catch up this week to discuss. We can make Thursday morning work and are free all of Friday afternoon.

Below are a couple of key points regarding test pricing, based on the PDF you sent. I want to clarify that I am not trying to be combative or ungrateful for some of the items you've extended, but pricing is a huge factor in this decision. Further, we are all trying to get franchisee buy-in. We want them to love the product and feel like they are getting a great price. Candidly, the SaaS ARR of year 2 of my proposal is $1,216,152 before finance module fees. That is more money than we spend annually on all tech expenses combined running the entire 250-unit franchise system.

I'm getting on board with paying that much for great tech, but we need to iron out some of the below, which I was hoping to see in your pricing proposal.

- Rapid test cup prices did not decrease. Removal of the $2.25 per cup bundled confirmation fee is not a reduction in price. It is a cost shift. James made it clear this was very important to Labb and I agreed. While it worked in some ways, it was not a one-size-fits-all and should be eliminated. But that should not be marketed as a reduction in cost.
- $2.88 for MRO is higher than competitors.
- Drug test prices are higher except the Omega Hair tests.

Our proposed term sheet is attached. I will go ahead and call out the key differences for ease of read and transparency: SaaS pricing cost and exclusivity. The rest are more general considerations.

Again, I'm good with the times above, and should you have short preliminary questions, I'm happy to chat before a main call on my cell at 903-920-8908.

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Mon, Jun 15, 2026 at 5:05 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

John and Matt,

Thank you for taking the time to connect today regarding the ONE by LABB platform and the opportunity to place it across all Fastest Labs franchisees.

I'll be candid our conversation today felt a bit rushed and one sided. There are details that are critical for us to work through this week and I don't think there was enough time to go beyond me just listing off our thoughts or what we were going to offer. When what we really needed was a better give and take conversation. Are you available Thursday for a 90-minute call? I'd like to use that time to go deeper on pricing and the value proposition for both corporate and your franchisees.

In a brief summary of the call...

---

WHAT'S IN IT FOR FASTEST LABS CORPORATE

Perhaps most importantly, the ONE by LABB platform gives corporate full visibility into franchisee activity in real time. I.e. who they're talking to, what they're bidding on, who their customers are, what tests are being run, and what revenue is being generated and so much more. That kind of transparency is invaluable at the enterprise level.

---

WHAT'S IN IT FOR YOUR FRANCHISEES

ONE by LABB is a single, comprehensive platform that replaces multiple tools/platforms your franchisees are currently using separately, or they should be using them and are not. John, as James walked you through, the platform is built to help them run their businesses more efficiently and grow revenue. That's a goal we all share.

---

Some details discussed to clarify:

Monthly cost per franchisee: $499 + $99 per $10K in revenue (all franchisees would be required to be on the platform. (I apologize for rounding up to $600 on the call and causing any confusion.)

In return, franchisees receive: (Highlights - not a complete list.)

• Most Favored Nation pricing on tests and services used through the platform - for some franchisees, the reduction in hair testing costs alone could cover the monthly fee
• An integrated bid platform to identify opportunities and assist with completing proposals
• In-platform policy development tools to draft testing policies without the need for outside legal counsel
• Guaranteed franchise-wide access to the CPP platform
• A custom dashboard giving corporate the visibility, data points, and layout that best fits your needs
• eCCF capability for paperless DOT testing (individual lab linkages still required, but made significantly easier through the platform)
• Access to the full suite of labs, testing products, and services offered through Synergy

Additionally, franchisees can eliminate the monthly cost of standalone tools like HubSpot, PandaDoc, and teleconferencing software - further reducing the net expenditure.

Our goal is to demonstrate that the net monthly cost to your franchisees is minimal, if not zero, and for many, should be net positive.

---

NEXT STEPS

As I discussed with James following our call: to reach a binding term sheet by July 15th that we can move to contract, both sides need to put their cards on the table. We're not looking to carry the previous agreement forward — we want a new arrangement that works for everyone. Your franchisees' growth and well-being matters to us, just as our growth and well-being should matter to you.

To that end, I'd ask that you send over the wish list John mentioned on the call as soon as possible. That will allow me to begin discussions with James so we can come to Thursday's call with concrete answers. As I noted, not every item may be achievable exactly as envisioned — exclusivity, for example, may require a more nuanced approach — but nothing needs to be all-or-nothing. There's room for creative solutions that keep you at a meaningful competitive advantage. The same is true for the "custom programing" topic. There is levels of this, what the task being customized is and the work involved and the effect in the market and the platform. All things that can be discussed and clarified in any agreement.

Please reply with your Thursday availability. I'll make it work.

Note: The pricing spreadsheet is being sent under separate cover. This should allow you to do some calculations to show what the savings could be.

Best regards,
Jeff Konecke

Outlook

## Re: Followup on call.

**From** John Smith <john@fastestlabs.com>
**Date** Wed 6/17/2026 10:15 AM
**To** Jeff Konecke <jeff.Konecke@labb.com>
**Cc** Matt Kunz <matt@fastestlabs.com>

1 attachment (8 KB)
FL Term Sheet Draft 6.17.26.pdf;

Hey Jeff,

I agree the call was too short. Apologies if it felt tense, but this is an integral stage for us to properly align and I was caught off guard by a few things. My position and excitement to see this through and have a great relationship is the same as when we met, and when Matt and I recently visited with James. I want to get a healthy deal done with Labb that is good for both sides.

To that intent, I've attached our draft of key considerations we are seeking in this new agreement. I'd love for you to take a look and propose your own draft, and we can each review and catch up this week to discuss. We can make Thursday morning work and are free all of Friday afternoon.

Below are a couple of key points regarding test pricing, based on the PDF you sent. I want to clarify that I am not trying to be combative or ungrateful for some of the items you've extended, but pricing is a huge factor in this decision. Further, we are all trying to get franchisee buy-in. We want them to love the product and feel like they are getting a great price. Candidly, the SaaS ARR of year 2 of my proposal is $1,216,152 before finance module fees. That is more money than we spend annually on all tech expenses combined running the entire 250-unit franchise system.

I'm getting on board with paying that much for great tech, but we need to iron out some of the below, which I was hoping to see in your pricing proposal.

- Rapid test cup prices did not decrease. Removal of the $2.25 per cup bundled confirmation fee is not a reduction in price. It is a cost shift. James made it clear this was very important to Labb and I agreed. While it worked in some ways, it was not a one-size-fits-all and should be eliminated. But that should not be marketed as a reduction in cost.
- $2.88 for MRO is higher than competitors.
- Drug test prices are higher except the Omega Hair tests.

Our proposed term sheet is attached. I will go ahead and call out the key differences for ease of read and transparency: SaaS pricing cost and exclusivity. The rest are more general considerations.

Again, I'm good with the times above, and should you have short preliminary questions, I'm happy to chat before a main call on my cell at 903-920-8908.

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Mon, Jun 15, 2026 at 5:05 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> John and Matt,
>
> Thank you for taking the time to connect today regarding the ONE by LABB platform and the opportunity to place it across all Fastest Labs franchisees.
>
> I'll be candid our conversation today felt a bit rushed and one sided. There are details that are critical for us to work through this week and I don't think there was enough time to go beyond me just listing off our thoughts or what we were going to offer. When what we really needed was a better give and take conversation. Are you available Thursday for a 90-minute call? I'd like to use that time to go deeper on pricing and the value proposition for both corporate and your franchisees.
>
> In a brief summary of the call...
>
> ---
>
> WHAT'S IN IT FOR FASTEST LABS CORPORATE
>
> Perhaps most importantly, the ONE by LABB platform gives corporate full visibility into franchisee activity in real time. I.e. who they're talking to, what they're bidding on, who their customers are, what tests are being run, and what revenue is being generated and so much more. That kind of transparency is invaluable at the enterprise level.
>
> ---
>
> WHAT'S IN IT FOR YOUR FRANCHISEES
>
> ONE by LABB is a single, comprehensive platform that replaces multiple tools/platforms your franchisees are currently using separately, or they should be using them and are not. John, as James walked you through, the platform is built to help them run their businesses more efficiently and grow revenue. That's a goal we all share.

---

Some details discussed to clarify:

Monthly cost per franchisee: $499 + $99 per $10K in revenue (all franchisees would be required to be on the platform. (I apologize for rounding up to $600 on the call and causing any confusion.)

In return, franchisees receive: (Highlights - not a complete list.)

• Most Favored Nation pricing on tests and services used through the platform - for some franchisees, the reduction in hair testing costs alone could cover the monthly fee
• An integrated bid platform to identify opportunities and assist with completing proposals
• In-platform policy development tools to draft testing policies without the need for outside legal counsel
• Guaranteed franchise-wide access to the CPP platform
• A custom dashboard giving corporate the visibility, data points, and layout that best fits your needs
• eCCF capability for paperless DOT testing (individual lab linkages still required, but made significantly easier through the platform)
• Access to the full suite of labs, testing products, and services offered through Synergy

Additionally, franchisees can eliminate the monthly cost of standalone tools like HubSpot, PandaDoc, and teleconferencing software - further reducing the net expenditure.

Our goal is to demonstrate that the net monthly cost to your franchisees is minimal, if not zero, and for many, should be net positive.

---

NEXT STEPS

As I discussed with James following our call: to reach a binding term sheet by July 15th that we can move to contract, both sides need to put their cards on the table. We're not looking to carry the previous agreement forward — we want a new arrangement that works for everyone. Your franchisees' growth and well-being matters to us, just as our growth and well-being should matter to you.

To that end, I'd ask that you send over the wish list John mentioned on the call as soon as possible. That will allow me to begin discussions with James so we can come to Thursday's call with concrete answers. As I noted, not every item may be achievable exactly as envisioned — exclusivity, for example, may require a more nuanced approach — but nothing needs to be all-or-nothing. There's room for creative solutions that keep you at a meaningful competitive advantage. The same is true for the "custom programing" topic. There is levels of this, what the task being customized is and the work involved and the effect in the market and the platform. All things that can be discussed and clarified in any agreement.

Please reply with your Thursday availability. I'll make it work.

Note: The pricing spreadsheet is being sent under separate cover. This should allow you to do some calculations to show what the savings could be.

Best regards,
Jeff Konecke

# Exhibit JK-5A

Outlook

## Re: Introduction/Meeting May 7 in San Antonio

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Wed 5/6/2026 5:27 PM
**To** John Smith <john@fastestlabs.com>

Hi John

I'm in San Antonio and just confirming our meeting in the morning. Also, confirming I am going to address on bottom of your email.

Looking forward to meeting you.

Thank you
Jeff

Get [Outlook for iOS]

---

**From:** John Smith <john@fastestlabs.com>
**Sent:** Wednesday, April 29, 2026 1:54:42 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Subject:** Re: Introduction/Meeting May 7 in San Antonio

Sounds great!

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office:  210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com




NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Wed, Apr 29, 2026 at 1:53 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

Hi John

9:00 works great. I am heading to a College Station after for sons graduation.

Thank you. Look forward to meeting.

Jeff

Get Outlook for iOS

---

**From:** John Smith <john@fastestlabs.com>
**Sent:** Wednesday, April 29, 2026 11:32:47 AM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Subject:** Re: Introduction/Meeting May 7 in San Antonio

Hey Jeff - morning of the 7th works great for me. I get in early, so any time before noon is great. Would you like to come by around 9 or 10?

We can have a cup of coffee at the office and chat.

Looking forward to it.

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com




NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Wed, Apr 29, 2026 at 10:00 AM Jeff Konecke <jeff.Konecke@labb.com> wrote:

Good Morning John,

I hope this message finds you well. I wanted to reach out and introduce myself. My name is Jeff Konecke, and I am joining LABB as the new Vice President of Sales. I have been looking forward to meeting and connecting with LABB's clients and partners, and FastestLabs is at the top of my list.

I will be in San Antonio on May 6th and 7th for a personal commitment. I would love the opportunity to stop by your offices on the morning of May 7th to introduce myself in person and learn more about your business, and begin what I hope will be a strong and productive relationship.

Please let me know if that timing works for you. I look forward to meeting you, and to working with you, FastestLabs and your entire team in the weeks and months ahead.

Best Regards,

Jeff Konecke

# Exhibit JK-6

Outlook

## Proposed Term Sheet - ONE by LABB - Workplace

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Mon 7/13/2026 9:14 AM
**To** John Smith <john@fastestlabs.com>; Matt Kunz <matt@fastestlabs.com>
**Cc** James Ramsey <james@labb.com>

1 attachment (23 KB)
One_by_Labb_Term_Sheet 07132026-V1.docx;

Hi Matt and John

Here is our first cut on the Term Sheet. Please take a look and comment, add etc. I have sent this as a red line so please keep that on and track changes.

Thank You

Jeff

# 1. TERM SHEET

## One by Labb – Workplace Health

*Platform for Workplace DOA Testing and Program Management*

| | |
|---|---|
| **Parties** | Ramsey Diagnostics Corporation, d/b/a Labb ("Labb"), and Fastest Labs Franchising, LLC ("Fastest Labs") |
| **Subject** | Franchise-wide adoption of the One by Labb – Workplace Health Platform for Workplace DOA Testing and Program Management by Fastest Labs, under a founding-partner structure, with mandatory enrollment for all current and future franchisees. |

## SECTION 1 – PLATFORM, TERM, AND SCOPE

- Fastest Labs adopts the new One by Labb – Workplace Health Platform as its franchise-wide platform under the founding-partner structure. Term: 10 years.

- **Year-7 ownership transfer:** Upon completion of year 7 of the term, and provided that (a) all monthly payments have been made and kept current throughout years 1 through 7, and (b) no breach of the Agreement occurred and went uncured during that period through the transfer date, Labb shall transfer to Fastest Labs complete ownership of the Fastest Labs instance of the One by Labb – Workplace Health platform, together with a perpetual, non-exclusive, non-transferable (except in connection with a permitted change of control under Section 3) license to use the patents, intellectual property, and knowhow embodied in and used to operate the Fastest Labs instance of the platform, solely for the purpose of operating that instance within Fastest Labs' franchise workplace drug-testing business. This license does not grant Fastest Labs any right to manufacture, have manufactured, distribute, or sell point-of-care testing devices or rapid-test reader hardware, and Labb retains full ownership of, and the unrestricted right to use and license to any third party, all such patents and intellectual property, including US PAT 10,340,032.

- The transfer of ownership does not end Fastest Labs' payment obligations. Fastest Labs shall continue to pay the monthly SaaS fees owed under the Agreement throughout years 8 through 10, and shall continue to purchase all point-of-care testing exclusively from Labb throughout years 7 through 10. Upon the conclusion of year 10, all fee obligations cease, no fees are owed for any period thereafter, and the ongoing commercial relationship under this Agreement concludes with no renewal.

- **Conclusion of the term:** Upon the conclusion of year 10, the ongoing commercial relationship under this Agreement ends, with no renewal and no further fees or performance obligations owed by either party. Notwithstanding the foregoing, the following survive the conclusion of the term: the ownership transfer and IP license granted under this Section 1; the parties' confidentiality obligations; each party's limitation of liability and indemnification obligations for the period through the conclusion of the term; and the governing-law provision.

- **Labb-added products/services:** Labb may, at its discretion, add products or services to the Platform and make them available to Fastest Labs' franchisees, at the price Labb sets for them, in its discretion. Franchisees are free to use or not use any product or service so added; there is no obligation to purchase or sell any such product or service.

- **No opt-out:** all current and future Fastest Labs franchisees are placed onto the Platform, and none may decline participation or opt out. All franchisees are subject to the base Software Fee and the Revenue-Based Fee.

- **Reciprocal franchisee agreement:** as a condition of Platform access, every current and future Fastest Labs franchisee must execute a reciprocal agreement with Labb binding the franchisee directly to the applicable terms of the definitive Agreement, including fees, exclusivity, and audit rights. A failure by a franchisee to sign the agreement shall be deemed a breach by franchisor.

- **Standard SLA:** 99.5% platform uptime.

- **Core features baseline:** the core features of the product shall include rapid drug testing, laboratory testing, confirmation and MRO coordination as well as integrated accounting and network testing capabilities. All functionality added to One by Labb – Workplace Health shall be incorporated into the base functionality once launched.

- **Legacy platform phase-out:** once the new One by Labb – Workplace Health Platform is fully launched, the legacy Labb Fusion platform will be phased out. Labb shall use its best efforts to keep Labb Fusion operational only through the end of 2027. Labb shall not be responsible for security breaches, HIPAA violations, or any other regulation related to Labb's legacy platform once One by Labb – Workplace Health is launched. Fastest Labs shall take full responsibility for the use of the legacy platform and agree to defend and hold Labb harmless for all security data breaches and/or violations.

- **Built-in support:** the Platform will include AI technical support, product training, and FAQs. Live support shall be limited to One by Labb – Workplace Health SaaS technology or rapid test. Labb shall not be responsible for providing support, guidance or explanation on any lab-based or MRO result, even if such result is related to a confirmation of a rapid test. All other questions will be referred to Fastest Labs' corporate offices.

- **Account manager:** Labb will assign a dedicated account manager and secondary support manager to Fastest Labs, with a defined SLA response time of 24 hours, excluding weekends and holidays.

- **Software to ArcPoint and Any Lab Test Now:** Labb shall not sell One by Labb – Workplace Health to ArcPoint or Any Lab Test Now. Labb may sell other software to any customer, including ArcPoint and Any Lab Test Now. Labb reserves the right to build entirely new technology for ArcPoint and Any Lab Test Now, provided that such technology does not include a rapid-testing reader. ArcPoint and Any Lab Test Now may participate as collection sites in the network.

- **Data ownership:** all data on the Platform, including franchisee and program data, is owned by Labb.

## SECTION 2 – EXCLUSIVITY

- **Platform exclusivity:** Fastest Labs is exclusive to the One by Labb Platform. Fastest Labs may not contract with, use, or implement any other software that competes with, or performs the functions of, the One by Labb Platform. During the term of this Agreement, Fastest Labs may not contract with any third party to build, nor build in-house, any competing software or platform.

- **Freedom of contract for all other services:** apart from Point-of-Care Testing, Fastest Labs may contract with any provider of its choosing for laboratory testing and other services. Labb shall not act as a required intermediary for those services.

- **Labb-added products/services made available Platform-wide:** Labb may choose to add new products or services to the Platform and may or may not make those products or services available to all Platform users, including Fastest Labs. Labb is not required to sell and Fastest Labs' franchisees are under no obligation to purchase any product or service so added, unless it is specifically made a part of this Agreement by mutual, written agreement.

- **POCT exclusivity:** Fastest Labs will purchase all point-of-care testing exclusively from Labb without exception.

- **Reservation of Labb's competition rights:** Labb reserves the right to compete with Fastest Labs directly in laboratory-based testing, DNA testing, background checks, and any other product or service that Fastest Labs does not purchase exclusively from Labb.

- **Custom POCT offering:** In the event that Fastest Labs requires a POCT panel configuration that is not available in some subset form from Labb, Labb shall facilitate the order of a custom POCT. Fastest Labs shall be bound by the same ordering and payment terms as Labb. For the sake of clarity, Fastest Labs shall pay 50% at the time of the order and 50% before the products are shipped to Fastest Labs. Fastest Labs shall be responsible for distributing all customer products directly.

- **System-level enforcement:** no out-of-network POCT test result may be entered into the Platform. Every POCT result entered into the One by Labb Platform must have been purchased from Labb and contain a Labb SD number with a unique QR code identifier.

- **Fastest Labs' role:** Fastest Labs agrees to assist Labb in ensuring franchisee compliance with the definitive Agreement. Labb shall agree to report any violations of the Agreement by franchisees that Labb identifies or suspects to Fastest Labs Corporate within 5 business days of confirming the violation.

- **Audit rights:** Labb shall have, and Fastest Labs shall assist Labb with, complete and unrestrained access to franchisee data including, but without limitation to, strict audit rights over each franchisee's POCT purchasing and usage, and over franchisee revenue, including access to each franchisee's QuickBooks records, for the purpose of verifying POCT exclusivity compliance and the Revenue-Based Fee.

## SECTION 3 – TERMINATION, TRIGGERS, AND CHANGE OF CONTROL

- **Acquisition, merger, or spin-off of Labb:** if Labb is acquired or merges with another company, or the One by Labb Platform is spun off into a separate company or entity, the acquirer, new company, merged company, or new entity shall agree to be bound by this Agreement and its terms. Fastest Labs acknowledges that none of these events shall be deemed a material adverse change, and Fastest Labs shall remain bound by the terms of this Agreement.

- **Sale of Fastest Labs:** any change of control or sale of Fastest Labs shall require the new operators or owners to sign an identical version of the agreement.

- **Transfer of a franchise or territory:** upon any sale or transfer of a franchise or territory, all outstanding amounts owed to Labb transfer to, and are assumed by, the new owner.

- **Franchisee payment guarantee:** Fastest Labs guarantees the payment obligations owed to Labb by any franchisee that closes, or whose territory remains closed or unoccupied.

- **Strategic competition by Fastest Labs:** Fastest Labs may not build, acquire, or invest in a competing platform during the term of this Agreement. If Fastest Labs does so: (a) the year-7 ownership transfer is forfeited, and (b) all fixed payments due under the Agreement through the remainder of the term become immediately due and payable.

- **General commercial termination:** either party may terminate for the standard commercial reasons (sustained non-performance, insolvency, or repeated SLA breach) that remain uncured. In the event of termination by either party, the technology shall not transfer to Fastest Labs.

- **Successor obligation:** monthly fees due under this Agreement remain due and payable regardless of a change in ownership or control of either party, including a merger, acquisition, or sale of substantially all assets, and are owed to whichever entity succeeds to the company and its assets.

- **General cure period:** all breaches under the Agreement must be cured within 60 days of notice of the breach. Should a breach not be cured within the 60-day period, the consequences of such uncured breach, including any acceleration, termination, or forfeiture remedies, shall be as set forth in the definitive Agreement, which Labb shall prepare through its counsel.

## SECTION 4 – FEES AND BILLING

- **Pricing overview:** the Platform Base Monthly Fee is $249.00 per month per location with a 3.5% annual escalator on September 1 of each year of the agreement, and the Revenue-Based Operational Fee is $149.00 per $10,000 of revenue with a 3.5% escalator on September 1 of each year of the agreement. All fees are prepaid (e.g., fees paid on the 1st and 15th of June are for June). The Revenue-Based Operational Fee is based on the prior month's revenue.

- **Revenue reporting:** Fastest Labs Corporate will provide Labb a monthly report of per-location revenue, sent by the 10th of each month, to allow Labb to calculate the supplemental invoice for Revenue-Based Fees.

- **Payment on file:** all franchisees must keep a valid form of payment on file with their account: a checking/savings account for ACH, or a credit/debit card.

- **Billing structure for Software:** Labb will provide each franchisee two SaaS bills per month, each automatically charged to the franchisee. The first "Core" platform bill/auto-debit shall occur on the 1st of each month at $249.00 with a 3.5% escalator each September 1, and the Finance Revenue-Based Fee of $149.00 with a 3.5% escalator, which covers the first $10,000 revenue tier. The second bill/auto-debit is on the 15th of each month and includes the Supplemental Revenue-Based Fee, reflecting the amount owed based on revenue reported above the first $10,000 tier for the previous month.

- **Payment method fees:** franchisees that provide a checking/savings account and authorize ACH payment of monthly fees are charged no processing fee. Franchisees that pay by debit or credit card are charged a 2.5% processing fee added to the account.

- **Due dates:** the first debit is due on the 1st of the month; the second debit is due on the 15th of the month.

● **Failed payment charge:** a $25.00 charge applies if a payment fails to process (e.g., invalid card, card denied, insufficient funds for ACH), in addition to (and not in lieu of) the underlying fee that failed to process.

● **Late fee:** a $50.00 late fee applies to any amount not paid within 10 days after its due date, for both the first and second debits, in addition to (and not in lieu of) the underlying fee owed.

## SECTION 5 – CHANNEL PARTNER PROGRAM (CPP) AND MARKETING

● **CPP membership:** Fastest Labs shall have the right to determine in its sole discretion at the start of the agreement if CPP membership by franchisees is optional or mandatory.

○ In the event that the CPP membership is optional, Labb reserves the right to withhold membership from any Fastest Labs franchisee as well as decide in Labb's sole discretion not to renew a franchisee's CPP Membership.

○ In the event that the CPP membership is mandatory, Labb shall not have the right to withhold membership from any Fastest Labs franchisee and must renew all compliant franchisees into the CPP each year.

● **CPP Marketing Fee:** franchisees who enroll in the CPP Program shall pay a monthly Marketing Fee of $699.00, due and payable on the 1st of each month. Labb shall be obligated to spend at least 80% of all funds collected on direct hard cost marketing programs such as ad agencies, PPC, SEO, display ads, tradeshows, marketing materials and other direct costs for the CPP program.

● **Marketing Program Agreement condition:** In the event the CPP is mandatory and all franchisees are CPP members, Labb shall direct 100% of all CPP leads to Fastest Labs for distribution to franchisees at Fastest Labs' sole discretion. Fastest Labs shall be responsible for the complete adjudication of all territory disputes and Labb shall have no role in CPP lead distribution or account assignment.

● **Custom CPP lead-dispersal dashboard (optional):** Labb shall build at Fastest Labs' request a custom CPP dashboard allowing Fastest Labs to direct all leads, by ZIP code, to a specific franchisee. The cost of building this custom dashboard is Fastest Labs' responsibility, and Labb will provide a firm, fixed quote for the work. Absent the Marketing Program Agreement, Labb controls lead dispersal.

● **CPP rule continuity:** all existing rules of the CPP Program remain in force under the definitive Agreement, unless specifically modified in that Agreement. Labb reserves the right to modify all future CPP agreements in Labb's sole discretion. Fastest Labs shall have the right to withdraw from the CPP at the end of any CPP agreement term.

## SECTION 6 – CUSTOM FEATURES AND DASHBOARDS

● **Custom modules:** custom modules may be added under agreed work orders, billed at a firm, fixed price per work order.

● **Custom features:** Fastest Labs has the right to request that Labb build custom features. Any feature built at Fastest Labs' request is exclusive to Fastest Labs. If such a feature is required by law, or becomes available on any other platform, Labb may offer it to all clients, with no repayment to Fastest Labs. Before making any such feature available to others, Labb will give Fastest Labs six months' notice and provide evidence that the feature is required by law or is available on another platform.

- **One by Labb Custom Dashboard:** should Fastest Labs want a custom dashboard beyond the planned standard dashboard already included with the Platform, with capability beyond the Platform's planned scope, Labb agrees to build it and add it to the program for Fastest Labs. Fastest Labs agrees to pay for this custom work on a firm, fixed time/cost basis.

## ACKNOWLEDGED AND AGREED

This term sheet reflects the parties' current understanding of proposed terms. It is intended to be non-binding as to deal terms not yet reduced to a definitive, signed Agreement, except as to confidentiality, exclusivity of negotiation, and governing law, which the parties intend to be binding upon execution below, pending review by counsel. This term sheet and the underlying negotiations are confidential and governed by the existing non-disclosure agreement(s) already in place between the parties.

**Governing Law:** This term sheet and the definitive Agreement are both governed by the laws of the Commonwealth of Virginia, without regard to its conflict-of-laws principles.

| **RAMSEY DIAGNOSTICS CORPORATION, d/b/a Labb** | **FASTEST LABS FRANCHISING, LLC** |
| --- | --- |
| Signature: _______________________ | Signature: _______________________ |
| Name: _______________________ | Name: Matt Kunz, CEO |
| Date: _______________________ | Date: _______________________ |

# Exhibit JK-7

Outlook

## Re: Proposed Term Sheet - ONE by LABB - Workplace

**From** John Smith <john@fastestlabs.com>
**Date** Fri 7/17/2026 12:19 PM
**To** Jeff Konecke <jeff.Konecke@labb.com>
**Cc** Matt Kunz <matt@fastestlabs.com>

1 attachment (47 KB)
One_by_Labb_Term_Sheet 07132026-V1.docx;

Jeff - please see attached revisions and comments.

Thanks -

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Tue, Jul 14, 2026 at 5:57 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi John
> Thanks
>
> But no worries. Long document.
>
> Jeff
>
> Get Outlook for iOS

**From:** John Smith <john@fastestlabs.com>
**Sent:** Tuesday, 14 July 2026 16:21:51
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Subject:** Re: Proposed Term Sheet - ONE by LABB - Workplace

Jeff - won't have revisions done by today. Will do my best to have them done tomorrow. Wanted to keep you updated.

Thanks

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Mon, Jul 13, 2026 at 1:01 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Thank you
>
> ---
>
> **From:** John Smith <john@fastestlabs.com>
> **Sent:** Monday, July 13, 2026 1:36 PM
> **To:** Jeff Konecke <jeff.Konecke@labb.com>
> **Subject:** Re: Proposed Term Sheet - ONE by LABB - Workplace
>
> Yes I did. Got both. Thank you. Reviewing amendment now. I expect to get it out EOD as discussed.
>
> Thanks!
>
> John Smith
> Fas-Tes Franchise Systems
>
> On Mon, Jul 13, 2026 at 12:32 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:
>
> > Thanks John

Also I just sent over the memo to go out to franchisees.

Lastly, did you see the document I sent over from the Franchisee that created a result form that shows a nonLABB POCT test?

Jeff

---

**From:** John Smith <john@fastestlabs.com>
**Sent:** Monday, July 13, 2026 1:28 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** Matt Kunz <matt@fastestlabs.com>; James Ramsey <james@labb.com>
**Subject:** Re: Proposed Term Sheet - ONE by LABB - Workplace

Thanks Jeff - I'll begin reviewing this and get with Matt and get back to you. He and I won't be able to sit down until tomorrow afternoon to discuss. Plan to have comments to you by EOD tomorrow.

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Mon, Jul 13, 2026 at 8:14 AM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi Matt and John
>
> Here is our first cut on the Term Sheet. Please take a look and comment, add etc. I have sent this as a red line so please keep that on and track changes.
>
> Thank You
>
> Jeff

# 1. TERM SHEET

## One by Labb – Workplace Health

*Platform for Workplace DOA Testing and Program Management*

| | |
|---|---|
| **Parties** | Ramsey Diagnostics Corporation, d/b/a Labb ("Labb"), and Fastest Labs Franchising, LLC ("Fastest Labs") |
| **Subject** | Franchise-wide adoption of the One by Labb – Workplace Health Platform for Workplace DOA Testing and Program Management by Fastest Labs, under a founding-partner structure, with mandatory enrollment for all current and future franchisees. |

### SECTION 1 – PLATFORM, TERM, AND SCOPE

● Fastest Labs adopts the new One by Labb – Workplace Health Platform as its franchise-wide platform under the founding-partner structure. Term: ~~10~~ 7 years.

● **Year-7 ownership transfer:** Upon completion of year 7 of the term, and provided that (a) all monthly payments have been made and kept current throughout years 1 through 7, and (b) no breach of the Agreement occurred and went uncured during that period through the transfer date, Labb shall transfer to Fastest Labs complete ownership of the Fastest Labs instance of the One by Labb – Workplace Health platform, together with a perpetual, non-exclusive, non-transferable (except in connection with a permitted change of control under Section 3) license to use the patents, intellectual property, and knowhow embodied in and used to operate the Fastest Labs instance of the platform, solely for the purpose of operating that instance within Fastest Labs' franchise workplace drug-testing business. ~~This license does not grant Fastest Labs any right to manufacture, have manufactured, distribute, or sell point-of-care testing devices or rapid-test reader hardware, and Labb retains full ownership of, and the unrestricted right to use and license to any third party, all such patents and intellectual property, including US PAT 10,340,032.~~

● The transfer of ownership does not end Fastest Labs' payment obligations. Fastest Labs shall continue to pay the monthly SaaS fees owed under the Agreement throughout years 8 through 10, and shall continue to purchase all point-of-care testing exclusively from Labb throughout years 7 through 10. Upon the conclusion of year 10, all fee obligations cease, no fees are owed for any period thereafter, and the ongoing commercial relationship under this Agreement concludes with no renewal.

● **Conclusion of the term:** Upon the conclusion of year 10, the ongoing commercial relationship under this Agreement ends, with no renewal and no further fees or performance obligations owed by either party. Notwithstanding the foregoing, the following survive the conclusion of the term: the ownership transfer and IP license granted under this Section 1; the parties' confidentiality obligations; each party's limitation of liability and indemnification obligations for the period through the conclusion of the term; and the governing-law provision.

● **Labb-added products/services:** Labb may, at its discretion, add products or services to the Platform and make them available to Fastest Labs' franchisees, at the price Labb sets for them, in its discretion. Franchisees are free to use or not use any product or service so added; there is no obligation to purchase or sell any such product or service.

**Commented [JS1]:** Reword to support this agreement ending seven years from now (at the same time the existing agreement would end).

**Commented [JS2]:** Reword showing this is a 7 year contract

**Commented [JS3]:** Reword showing this is a 7 year contract

- **No opt-out:** all current and future Fastest Labs franchisees are placed onto the Platform, and ~~none may decline participation or opt out~~are required to pay the agreed upon fees. All franchisees are subject to the base Software Fee and the Revenue-Based Accounting Module Fee.

- **Reciprocal franchisee agreement:** as a condition of Platform access, every current and future Fastest Labs franchisee must execute a reciprocal agreement with Labb binding the franchisee directly to the applicable terms of the definitive Agreement, including fees, exclusivity, and audit rights. ~~A failure by a franchisee to sign the agreement shall be deemed a breach by franchisor.~~

- **Standard SLA:** 99.5% platform uptime.

- **Workplace Health Core features baseline:** the core features of the product shall include rapid drug testing, laboratory testing, confirmation and MRO coordination, full eCCF for DOT urine and Breath Alcohol, network testing via eCCF on the Quest and Formfox networks. ~~as well as integrated accounting and network testing capabilities~~ as well as connections to two SAMHSA laboratories at all times. All functionality added to One by Labb – Workplace Health shall be incorporated into the base functionality once launched.

- Accounting Module features: needs to be clearly defined in this document.

- **Platform Continuity:** primary core features and accounting module features that are set at launch will not be removed without Fastest Labs consent. Fastest Labs agrees to define these core features with Labb. In the event non-core features will be removed, Labb agrees to give Fastest Labs 90 days notice.

- **Legacy platform phase-out:** once the new One by Labb – Workplace Health Platform is fully launched, the legacy Labb Fusion platform will be phased out. Labb shall use its best efforts to keep Labb Fusion operational only through the end of 2027. ~~Labb shall not be responsible for security breaches, HIPAA violations, or any other regulation related to Labb's legacy platform once One by Labb – Workplace Health is launched. Fastest Labs shall take full responsibility for the use of the legacy platform and agree to defend and hold Labb harmless for all security data breaches and/or violations.~~

- **Built-in support:** the Platform will include AI technical support, product training, and FAQs. Live support shall be limited to One by Labb – Workplace Health SaaS technology or rapid test. Labb shall not be responsible for providing support, guidance or explanation on any lab-based or MRO result, even if such result is related to a confirmation of a rapid test. All other questions will be referred to Fastest Labs' corporate offices or laboratory / MRO partner where applicable.

- **Account manager:** Labb will assign a dedicated account manager and secondary support manager to Fastest Labs, with a defined SLA response time of 24 hours, excluding weekends and holidays and will be availbe by phone from 7am – 7pm ET standard working days.~~.~~

- **Software to ArcPoint and Any Lab Test Now:** Labb shall not sell One by Labb – Workplace Health to ArcPoint or Any Lab Test Now. Labb may sell other software to any customer, including ArcPoint and Any Lab Test Now. Labb reserves the right to build entirely new technology for ArcPoint and Any Lab Test Now, provided that such technology does not include ~~a rapid-testing reader~~drug testing technology including rapid readers, facilitation of POCT drug testing devices, laboratory drug testing, or drug testing technology of any kind. ArcPoint and Any Lab Test Now may participate as collection sites in the network.

- **Data ownership:** all drug test result data on the Platform, including franchisee and program data, is owned by Labb. All customer data is owned by Fastest Labs.
- Future Proofing Section

**SECTION 2 – EXCLUSIVITY**

- **Platform exclusivity:** Fastest Labs is exclusive to the One by Labb Platform. Fastest Labs may not contract with, use, or implement any other software that competes with, or performs the functions of, the One by Labb Platform. During the term of this Agreement, Fastest Labs may not contract with any third party to build, nor build in-house, any competing software or platform.
- **Freedom of contract for all other services:** apart from Point-of-Care Testing that Labb offers, Fastest Labs may contract with any provider of its choosing for laboratory testing and other services. Labb shall not act as a required intermediary for those services.
- **Labb-added products/services made available Platform-wide:** Labb may choose to add new products or services to the Platform and may or may not make those products or services available to all Platform users, including Fastest Labs. Labb is not required to sell and Fastest Labs' franchisees are under no obligation to purchase any product or service so added, unless it is specifically made a part of this Agreement by mutual, written agreement.
- **POCT exclusivity:** Fastest Labs will purchase all point-of-care testing exclusively from Labb without exception. Fastest Labs will purchase all point-of-care testing for products that Labb offers in stock. For the avoidance of doubt, Fastest Labs is not prohibited for purchasing any product from another source for a product that Labb does not currently offer in stock at the time of purchase nor is Fastest Labs prohibited from purchasing point-of-care testing products that are required by National third party networks to conduct testing for the network.

**Freedom to source and sell non-Labb products; no minimums:** Fastest Labs' point-of-care testing exclusivity extends only to products that Labb offers for sale and has in stock at the time of purchase. Fastest Labs is under no obligation to purchase any product or service that Labb does not offer for sale, and undertakes no minimum-purchase, minimum-order, or minimum-volume commitment of any kind with respect to Labb products. For any product or service that Labb does not offer for sale, Fastest Labs may source it from any third party of its choosing, or manufacture, have manufactured, and sell it itself, in each case free of any obligation to Labb, provided such product or service does not embody, incorporate, or practice Labb's patents or proprietary technology, including US Pat 10,340,032.

- **Reservation of Labb's competition rights:** Labb reserves the right to compete with Fastest Labs directly in laboratory-based testing, DNA testing, background checks, and any other product or service that Fastest Labs does not purchase exclusively from Labb. **Covenant against direct competition; reservation of rights:** During the term, neither Labb nor any entity Labb controls, is controlled by, or is under common control with shall directly sell, offer, or provide (a) professional testing , defined as testing performed at a collection site sold directly to an end user, which is defined as a workplace customer , (b) DNA testing, or (c) background-check services, in each case to end users located in any market that Fastest Labs then serves, and this restriction applies regardless of whether Fastest Labs purchases such testing or services exclusively from Labb. Should Labb breach this covenant, the year-7 ownership transfer shall accelerate and Fastest Labs may take its then-current Fastest Labs instance of the Platform and exit this Agreement. This covenant is not triggered by, and Labb expressly reserves the right to

**Commented [JS4]:** We need an agreed upon framework for future proofing over the next several years. If advancements or new technology become available, we need framework around what Labb is willing/able to build and invest in, what Fastest Labs commits to continue purchasing, etc. We need to have a conversation around this.

My goal, as I'm sure Labb's is, is that Labb would remain on the forefront of technology expansion in the space, and that FL would purchase any new concepts. But, we need terms around that, including if new technology becomes available that Labb cannot or will not develop/purchase/make available.

**Commented [JS5]:** Platform exlusivity clause contradicts bullet two of section two. In exchange for paying the platform fee for each office monthly for term of contract, we have freedom to use other services as needed.

**Commented [JS6]:** Contradicts bullet two of section two. In exchange for paying the platform fee for each office monthly for term of contract, we have freedom to use other services as needed.

**Commented [JS7]:** Contradicts bullet two of section two. In exchange for paying the platform fee for each office monthly for term of contract, we have freedom to use other services as needed.

**Commented [JS8]:** If Labb sells something, Fastest Labs has option to buy it.

engage in: (i) any activity in markets that Fastest Labs does not then serve; (ii) non-professional, clinic-based testing; and (iii) the sale, license, or provision of its technology, products, or services to any independent third party in which Labb holds no ownership or controlling interest, including where such third party competes with Fastest Labs. Apart from the foregoing restrictions, Labb reserves the right to compete with Fastest Labs in laboratory-based testing and in any other product or service that Fastest Labs does not purchase exclusively from Labb.

- ~~**Custom POCT offering:** In the event that Fastest Labs requires a POCT panel configuration that is not available in some subset form from Labb, Labb shall facilitate the order of a custom POCT. Fastest Labs shall be bound by the same ordering and payment terms as Labb. For the sake of clarity, Fastest Labs shall pay 50% at the time of the order and 50% before the products are shipped to Fastest Labs. Fastest Labs shall be responsible for distributing all customer products directly.~~

- **System-level enforcement:** no out-of-network POCT test result may be entered into the Platform. Every POCT result entered into the One by Labb Platform must have been purchased from Labb and contain a Labb SD number with a unique QR code identifier.

**Commented [JS9]:** This needs to leave room for outsourced rapids that are upload to the platform via manual upload from clinic. It is not uncommon for us to outsource rapid collections to sites that are not on any network and have to upload that result manually. Agreed to limitations where they cant DR cups at will that are not purchased from Labb.

- **Fastest Labs' role:** Fastest Labs agrees to assist Labb in ensuring franchisee compliance with the definitive Agreement. Labb shall agree to report any violations of the Agreement by franchisees that Labb identifies or suspects to Fastest Labs Corporate within 5 business days of confirming the violation with definitive evidence of suspicion.

- **Audit rights:** Labb shall have, and Fastest Labs shall assist Labb with, ~~complete and unrestrained~~ access to franchisee data including, ~~but without limitation to~~, strict audit rights over each franchisee's POCT purchasing and usage, and over franchisee revenue, including access to each franchisee's QuickBooks records via PDF or Excel export as long as we use Quickbooks, for the purpose of verifying POCT exclusivity compliance and the Revenue-Based Fee. Labb shall meet an agreed upon evidence threshold for requesting an audit on a franchisee.

## SECTION 3 – TERMINATION, TRIGGERS, AND CHANGE OF CONTROL

- **Acquisition, merger, or spin-off of Labb:** if Labb is acquired or merges with another company, or the One by Labb Platform is spun off into a separate company or entity, the acquirer, new company, merged company, or new entity shall agree to be bound by this Agreement and its terms. Fastest Labs acknowledges that none of these events shall be deemed a material adverse change, and Fastest Labs shall remain bound by the terms of this Agreement with exception: if Labb merges, sells the One by Labb Platform or otherwise transfers interest or ownership to a company that directly competes with Fastest Labs, Fastest Labs shall have the option to exit the agreement with ownership of the technology. ~~.~~Fastest Labs agrees to define "directly competes" for future avoidance of doubt but said definition will include Quest Diagnostics, Abbott, DISA, First Advantage, CRL, etc.

- **Sale of Fastest Labs:** any change of control or sale of Fastest Labs shall require the new operators or owners to sign an identical version of the agreement.

- **Transfer of a franchise or territory:** ~~upon any sale or transfer of a franchise or territory, all outstanding amounts owed to Labb transfer to, and are assumed by, the new owner.~~ Fastest Labs agrees to gain sign-off from Labb that all debts to Labb are paid by existing owner and will not allow a transfer to take place unless all debts are paid as of that sign-off.

● **Franchisee payment guarantee:** Fastest Labs guarantees the payment obligations owed to Labb by any franchisee that closes, or whose territory remains closed or unoccupied.

● **Strategic competition by Fastest Labs:** Fastest Labs may not build, acquire, or invest in a competing platform during the term of this Agreement. If Fastest Labs does so: (a) the year-7 ownership transfer is forfeited, and (b) all fixed payments due under the Agreement through the remainder of the term become immediately due and payable.

● **General commercial termination:** either party may terminate for the standard commercial reasons (sustained non-performance, insolvency, or repeated SLA breach) that remain uncured. In the event of termination by either party, the technology shall not transfer to Fastest Labs.

● **Key-partner failure:** if the Cynergy relationship (or any successor relationship then providing the same function) is terminated, lapses, or otherwise fails, and Labb does not, within 90 days of such failure, source and place into production an alternative partner that restores the same core ordering and lab-site filtering connectivity available immediately prior to the failure, a triggering event shall be deemed to have occurred.

● **Loss of core features:** if Labb removes, disables, or fails to maintain any of the core features from the baseline scope delivered under the Platform as set forth in Section 1, and does not restore such feature within the general cure period, a triggering event shall be deemed to have occurred.

● **Remedy for the Key Partner Failure and Loss of Core Features triggers:** upon a triggering event under either of the two provisions above, the remedy available to Fastest Labs shall be determined by when the triggering event occurs:

● If the triggering event occurs at any time during years 1 through 2 of the term, Fastest Labs may terminate this Agreement and walk away at any point thereafter, with no ownership transfer, no continued payment or performance obligation, and no penalty to either party.

● If the triggering event occurs on or after the first day of year 3 of the term, Fastest Labs may exit this Agreement with accelerated ownership of its then-current Fastest Labs instance of the Platform, transferred on the same ownership-and-license terms set forth in Section 1, and Fastest Labs' continued payment and exclusivity obligations shall cease as of the effective date of such accelerated transfer.

●

● **Successor obligation:** monthly fees due under this Agreement remain due and payable regardless of a change in ownership or control of either party, including a merger, acquisition, or sale of substantially all assets, and are owed to whichever entity succeeds to the company and its assets.

● **General cure period:** all breaches under the Agreement must be cured within 60 days of notice of the breach. Should a breach not be cured within the 60-day period, the consequences of such uncured breach, including any acceleration, termination, or forfeiture remedies, shall be as set forth in the definitive Agreement, which Labb shall prepare through its counsel.

● Definitive Agreement: The definitive Agreement shall be prepared collaboratively by the parties and their respective counsel.

## SECTION 4 – FEES AND BILLING

● **Pricing overview:** the Platform Base Monthly Fee is $249.00 per month per location with a 3.5% annual escalator on September 1 of each year of the agreement, and the Revenue-Based Operational Fee is $149.00 per $10,000 of revenue with a 3.5% escalator on September 1 of each year of the agreement.

All fees are prepaid (e.g., fees paid on the 1st and 15th of June are for June). The Revenue-Based Operational Fee is based on the prior month's revenue.

- ~~**Revenue reporting**: Fastest Labs Corporate will provide Labb a monthly report of per-location revenue, sent by the 10th of each month, to allow Labb to calculate the supplemental invoice for Revenue-Based Fees.~~

- **Payment on file:** all franchisees must keep a valid form of payment on file with their account: a checking/savings account for ACH, or a credit/debit card.

- **Billing structure for Software:** Labb will provide each franchisee two SaaS bills per month, each automatically charged to the franchisee. The first "Core" platform bill/auto-debit shall occur on the 1st of each month at $249.00 ~~with a 3.5% escalator each September 1~~, and the ~~Finance~~ Accounting Module Revenue-Based Fee of $149.00 ~~with a 3.5% escalator~~, which covers the first $10,000 revenue tier. The second bill/auto-debit is on the 15th of each month and includes the Supplemental Revenue-Based Fee, reflecting the amount owed based on revenue reported above the first $10,000 tier for the previous month.

- **FTFS National Accounts:** For the avoidance of doubt, FTFS National Accounts will be run independent of the franchisees. FTFS National Accounts will be managed by FTFS under its own existing entity. FTFS revenue, and the revenue that it produces for franchisees, will not be subject to Accounting Module Fees. FTFS would pay for a One by Labb Workplace seat to manage these customers.

- **Payment method fees:** franchisees that provide a checking/savings account and authorize ACH payment of monthly fees are charged no processing fee. Franchisees that pay by debit or credit card are charged a 2.5% processing fee added to the account.

- **Due dates:** the first debit is due on the 1st of the month; the second debit is due on the 15th of the month.

- **Failed payment charge:** a $25.00 charge applies if a payment fails to process (e.g., invalid card, card denied, insufficient funds for ACH), in addition to (and not in lieu of) the underlying fee that failed to process.

- **Late fee:** a $50.00 late fee applies to any amount not paid within 10 days after its due date, for both the first and second debits, in addition to (and not in lieu of) the underlying fee owed.

- **POCT and Laboratory Drug Test Pricing:** the $2.25/cup confimation fee is unbundled and confirmation fees will be set at pass through rates from the respective laboratory. The following rates for POCT cups are:
  - 6 Panel: $3.75
  - 13 Panel: $5.75
  - 16 Panel: $6.75
  - 17 Panel: $7.00
  - 18 Panel: $7.25
  - 23 Panel: 10.50
  - 14 Panel OR: $6.5

**Commented [JS10]:** This language throughout needs to shift to show that this fee is for the accounting module and the work that that module does - not a revenue based fee for the workplace health module.

**Commented [JS11]:** This section needs to be designed to incorporate the accounting/finance module and what all it can help with. Example: if you have no way to facilitate the billing to TPAs (escreen, FADV, Disa, etc.) then franchisees will be forced to manually manage that, which we will not pay accounting module fees for. Covering the accounting module fees in Section 1 will help this.

**Commented [JS12]:** This section needs to be designed to incorporate the accounting/finance module and what all it can help with. Example: if you have no way to facilitate the billing to TPAs (escreen, FADV, Disa, etc.) then franchisees will be forced to manually manage that, which we will not pay accounting module fees for. Covering the accounting module fees in Section 1 will help this.

**Commented [JS13]:** reword for FTFS paying the $249 per month directly to Labb for each open office.

○ 31 Panel OR: $8.50

○ **Laboratory Pricing:** All laboratory pricing of any kind, and MRO services, sold by Labb to Fastest Labs will be at pass-through pricing, defined as the set price given to Labb by the laboratory.

○ Processing fees and Stripe integration for billing clients: define these fees and the structure (including what Labb Pay / Single Payer is).

## SECTION 5 – CHANNEL PARTNER PROGRAM (CPP) AND MARKETING

● **CPP membership:** Fastest Labs shall have the right to determine in its sole discretion at the start of the agreement if CPP membership by franchisees is optional or mandatory.

○ In the event that the CPP membership is optional, Labb reserves the right to withhold membership from any Fastest Labs franchisee as well as decide in Labb's sole discretion not to renew a franchisee's CPP Membership.

○ In the event that the CPP membership is mandatory, Labb shall not have the right to withhold membership from any Fastest Labs franchisee and must renew all compliant franchisees into the CPP each year.

● **CPP Marketing Fee:** franchisees who enroll in the CPP Program shall pay a monthly Marketing Fee of $699.00, due and payable on the 1st of each month. Labb shall be obligated to spend at least 80% of all funds collected on direct hard cost marketing programs such as ad agencies, PPC, SEO, display ads, tradeshows, marketing materials and other direct costs for the CPP program.

● **Marketing Program Agreement condition:** In the event the CPP is mandatory and all franchisees are CPP members, Labb shall direct 100% of all CPP leads to Fastest Labs for distribution to franchisees at Fastest Labs' sole discretion. Fastest Labs shall be responsible for the complete adjudication of all territory disputes and Labb shall have no role in CPP lead distribution or account assignment.

● **Custom CPP lead-dispersal dashboard (optional):** Labb shall build at Fastest Labs' request a custom CPP dashboard allowing Fastest Labs to direct all leads, by ZIP code, to a specific franchisee. The cost of building this custom dashboard is Fastest Labs' responsibility, and Labb will provide a firm, fixed quote for the work. Absent the Marketing Program Agreement, Labb controls lead dispersal.

● **CPP rule continuity:** all existing rules of the CPP Program remain in force under the definitive Agreement, unless specifically modified in that Agreement. Labb reserves the right to modify all future CPP agreements in Labb's sole discretion. Fastest Labs shall have the right to withdraw from the CPP at the end of any CPP agreement term.

## SECTION 6 – CUSTOM FEATURES AND DASHBOARDS

● **Custom modules:** custom modules may be added under agreed work orders, billed at a firm, fixed price per work order.

● **Custom features:** Fastest Labs has the right to request that Labb build custom features. Any feature built at Fastest Labs' request is exclusive to Fastest Labs. If such a feature is required by law, or becomes available on ~~any other platform~~ 2/3 of the following platforms: eScreen 123, Formfox Marketplace, i3 Screen, Labb may offer it to all clients, with ~~no repayment to~~100% of the total build cost

**Commented [JS14]:** We expect these rates to be virtually pass through from Stripe. We are only interested in Stripe being the payment processor. So, if Labb intends to change that, we need the ability to use stripe or be involved in those discussions. We are not interested in Labb being the clearinghouse/processor without an outside processor, which Labb has mentioned they can or intend to do in the future.

**Commented [JS15]:** Need guidelines around this and understand for what reasons Labb would withhold or non-renew a compliant franchisee into the CPP.

**Commented [JS16]:** Without marking through this individually: our goal is for all CPP leads to come to FTL HQ regardless of if they participate or not. If not, we will manage it on our own or through the nearest FL office until an office opens up in that area.

Through the CPP, the owners have ended up selling in other's territories consistently. We need to clear that up by managing these leads all around and also ensuring the leads are closed - too many leads are left unclosed, unfavorable to both labb and fastest labs.

We can't make all of them pay into the monthly fee. But we can do something like "if you don't pay into the CPP program you dont get the inbound leads" which would then force it to the next nearest office or we manage the relationship there --- but they have to still have the outbound reseller capability.

being refunded to Fastest Labs. Before making any such feature available to others, Labb will give Fastest Labs six months' notice and provide evidence that the feature is required by law or is available on ~~another platform~~2/3 of the following platforms: eScreen 123, Formfox Marketplace, i3 Screen.

- **One by Labb Custom Dashboard:** should Fastest Labs want a custom dashboard beyond the planned standard dashboard already included with the Platform, with capability beyond the Platform's planned scope, Labb agrees to build it and add it to the program for Fastest Labs. Fastest Labs agrees to pay for this custom work on a firm, fixed time/cost basis.

## ACKNOWLEDGED AND AGREED

This term sheet reflects the parties' current understanding of proposed terms. It is intended to be non-binding as to deal terms not yet reduced to a definitive, signed Agreement, except as to confidentiality, exclusivity of negotiation, and governing law, which the parties intend to be binding upon execution below, pending review by counsel. This term sheet and the underlying negotiations are confidential and governed by the existing non-disclosure agreement(s) already in place between the parties.

**Governing Law:** This term sheet and the definitive Agreement are both governed by the laws of the Commonwealth of Virginia, without regard to its conflict-of-laws principles.

| | |
|---|---|
| **RAMSEY DIAGNOSTICS CORPORATION, d/b/a Labb** | **FASTEST LABS FRANCHISING, LLC** |
| Signature: ______________________ | Signature: ______________________ |
| Name: ______________________ | Name: Matt Kunz, CEO |
| Date: ______________________ | Date: ______________________ |

# Exhibit JK-7A

Outlook

## Re: Proposed Term Sheet - ONE by LABB - Workplace

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Mon 7/20/2026 9:45 AM
**To** John Smith <john@fastestlabs.com>
**Cc** Matt Kunz <matt@fastestlabs.com>

1 attachment (58 KB)
One_by_Labb_Term_Sheet 07132026-V1 Johns Edits v1 and jeff comments 7-20.docx;

Hi John

Please see attached Term Sheet.

I have put my comments with reasons - in red under each section that you changed or editied. I have found that at this stage to go in an actually take out those changes and change it back or remodify it creates an unreadable document. Thus, it is easier to give you my comments back in red and then make all the changes into a new document once discussed.

Thank You

Jeff

---

**From:** John Smith <john@fastestlabs.com>
**Sent:** Friday, July 17, 2026 4:53 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Proposed Term Sheet - ONE by LABB - Workplace

Ok - I look forward to it - thanks

**It is our pleasure to serve,**
**John Smith** / Executive Vice President
Office: 210-641-2058
**Fas-Tes Franchise Systems LLC**
5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

FASTEST LABS
CLEAN FAST TESTING




NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Fri, Jul 17, 2026 at 12:58 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

John,

Did a quick look through and now a deeper dive.

First glance and thoughts - some changes can be accepted, some need to be discussed and a couple are looking like hard no's . I will have something back to you Monday.

Thank You

Jeff

---

**From:** John Smith <john@fastestlabs.com>
**Sent:** Friday, July 17, 2026 12:18 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Proposed Term Sheet - ONE by LABB - Workplace

Jeff - please see attached revisions and comments.

Thanks -

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249

www.fastestlabs.com

FASTEST LABS
CLEAN FAST TESTING




NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Tue, Jul 14, 2026 at 5:57 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

Hi John
Thanks

But no worries. Long document.

Jeff

Get Outlook for iOS

---

**From:** John Smith <john@fastestlabs.com>
**Sent:** Tuesday, 14 July 2026 16:21:51
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Subject:** Re: Proposed Term Sheet - ONE by LABB - Workplace

Jeff - won't have revisions done by today. Will do my best to have them done tomorrow. Wanted to keep you updated.

Thanks

**It is our pleasure to serve,**
**John Smith** / Executive Vice President
Office: 210-641-2058
**Fas-Tes Franchise Systems LLC**
5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

FASTEST LABS
CLEAN FAST TESTING




NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Mon, Jul 13, 2026 at 1:01 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Thank you
>
> ---
>
> **From:** John Smith <john@fastestlabs.com>
> **Sent:** Monday, July 13, 2026 1:36 PM
> **To:** Jeff Konecke <jeff.Konecke@labb.com>
> **Subject:** Re: Proposed Term Sheet - ONE by LABB - Workplace
>
> Yes I did. Got both. Thank you. Reviewing amendment now. I expect to get it out EOD as discussed.
>
> Thanks!
>
> John Smith
> Fas-Tes Franchise Systems
>
> On Mon, Jul 13, 2026 at 12:32 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:
>
> > Thanks John
> >
> > Also I just sent over the memo to go out to franchisees.

Lastly, did you see the document I sent over from the Franchisee that created a result form that shows a nonLABB POCT test?

Jeff

---

**From:** John Smith <john@fastestlabs.com>
**Sent:** Monday, July 13, 2026 1:28 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** Matt Kunz <matt@fastestlabs.com>; James Ramsey <james@labb.com>
**Subject:** Re: Proposed Term Sheet - ONE by LABB - Workplace

Thanks Jeff - I'll begin reviewing this and get with Matt and get back to you. He and I won't be able to sit down until tomorrow afternoon to discuss. Plan to have comments to you by EOD tomorrow.

**It is our pleasure to serve,**
**John Smith** / Executive Vice President
Office: 210-641-2058
**Fas-Tes Franchise Systems LLC**
5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

FASTEST LABS® CLEAN FAST TESTING
Join me at the 2026 Fastest Labs Annual Franchise Conference!
Ask About Registration Or Sponsorship Opportunities!
FTL UNITED WE ACCELERATE
OCT 2-3, 2026 PHILADELPHIA, PA

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Mon, Jul 13, 2026 at 8:14 AM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi Matt and John
>
> Here is our first cut on the Term Sheet. Please take a look and comment, add etc. I have sent this as a red line so please keep that on and track changes.
>
> Thank You
>
> Jeff

# 1. TERM SHEET

## One by Labb – Workplace Health

*Platform for Workplace DOA Testing and Program Management*

| | |
|---|---|
| **Parties** | Ramsey Diagnostics Corporation, d/b/a Labb ("Labb"), and Fastest Labs Franchising, LLC ("Fastest Labs") |
| **Subject** | Franchise-wide adoption of the One by Labb – Workplace Health Platform for Workplace DOA Testing and Program Management by Fastest Labs, under a founding-partner structure, with mandatory enrollment for all current and future franchisees. |

**SECTION 1 – PLATFORM, TERM, AND SCOPE**

- Fastest Labs adopts the new One by Labb – Workplace Health Platform as its franchise-wide platform under the founding-partner structure. Term: ~~10~~ 7 years.

- If 7 years then no ownership and not considered a Founding partner. This becomes a straight license deal. No representations can then be given to any software ownership.

- **Year-7 ownership transfer:** Upon completion of year 7 of the term, and provided that (a) all monthly payments have been made and kept current throughout years 1 through 7, and (b) no breach of the Agreement occurred and went uncured during that period through the transfer date, Labb shall transfer to Fastest Labs complete ownership of the Fastest Labs instance of the One by Labb – Workplace Health platform, together with a perpetual, non-exclusive, non-transferable (except in connection with a permitted change of control under Section 3) license to use the patents, intellectual property, and knowhow embodied in and used to operate the Fastest Labs instance of the platform, solely for the purpose of operating that instance within Fastest Labs' franchise workplace drug-testing business. ~~This license does not grant Fastest Labs any right to manufacture, have manufactured, distribute, or sell point-of-care testing devices or rapid-test reader hardware, and Labb retains full ownership of, and the unrestricted right to use and license to any third party, all such patents and intellectual property, including US PAT 10,340,032.~~

- **No ownership transfer if only a 7 year deal.** Straight license to use on terms at the terms already established. We are not able to build and support and innovate the platform and then turn it all over under a 7 year deal.

- The transfer of ownership does not end Fastest Labs' payment obligations. Fastest Labs shall continue to pay the monthly SaaS fees owed under the Agreement throughout years 8 through 10, and shall continue to purchase all point-of-care testing exclusively from Labb throughout years 7 through 10. Upon the conclusion of year 10, all fee obligations cease, no fees are owed for any period thereafter, and the ongoing commercial relationship under this Agreement concludes with no renewal.

- Paragraph goes away under a 7 year deal.

- **Conclusion of the term:** Upon the conclusion of year 10, the ongoing commercial relationship under this Agreement ends, with no renewal and no further fees or performance obligations owed by either party. Notwithstanding the foregoing, the following survive the conclusion of the term: the ownership transfer and IP license granted under this Section 1; the parties' confidentiality obligations;

**Commented [JS1]:** Reword to support this agreement ending seven years from now (at the same time the existing agreement would end).

**Commented [JS2]:** Reword showing this is a 7 year contract

**Commented [JS3]:** Reword showing this is a 7 year contract

each party's limitation of liability and indemnification obligations for the period through the conclusion of the term; and the governing-law provision.

- **Paragraph goes away under a 7 year term.** No transfer of any technology. No ownership involved.

- **Labb-added products/services:** Labb may, at its discretion, add products or services to the Platform and make them available to Fastest Labs' franchisees, at the price Labb sets for them, in its discretion. Franchisees are free to use or not use any product or service so added; there is no obligation to purchase or sell any such product or service.

- **No opt-out:** all current and future Fastest Labs franchisees are placed onto the Platform, and ~~none may decline participation or opt out~~are required to pay the agreed upon fees. All franchisees are subject to the base Software Fee and the Revenue-Based Accounting Module Fee.

- **Accept the changes made. See later for description. But the Second fee remains a revenue based fee. NOT AN ACCOUNTING MODULE FEE. The accounting module is a core feature. The revenue fee is separate.**

- **Reciprocal franchisee agreement:** as a condition of Platform access, every current and future Fastest Labs franchisee must execute a reciprocal agreement with Labb binding the franchisee directly to the applicable terms of the definitive Agreement, including fees, exclusivity, and audit rights. ~~A failure by a franchisee to sign the agreement shall be deemed a breach by franchisor.~~

- **Accept the changes made.**

- **Standard SLA:** 99.5% platform uptime.

- **Workplace Health Core features baseline:** the core features of the product shall include rapid drug testing, laboratory testing, confirmation and MRO coordination, full eCCF for DOT urine and Breath Alcohol, network testing via eCCF on the Quest and Formfox networks. ~~as well as integrated accounting and network testing capabilities~~ as well as connections to two SAMHSA laboratories at all times. All functionality added to One by Labb – Workplace Health shall be incorporated into the base functionality once launched.

- Insert text not accepted. We are not going to be iin the Lab business under this agreement. You are free to contract with any lab you wish or contract with Cynergy. We commit to integrate and connect them. But they have to allow us to connect. It is not up to us, we are open to work with all and so are you.

- Accounting Module features: needs to be clearly defined in this document.

- **Platform Continuity:** primary core features and accounting module features that are set at launch will not be removed without Fastest Labs consent. Fastest Labs agrees to define these core features with Labb. In the event non-core features will be removed, Labb agrees to give Fastest Labs 90 days notice.

- **See later part of Term Sheet this is addressed already.**

- **Legacy platform phase-out:** once the new One by Labb – Workplace Health Platform is fully launched, the legacy Labb Fusion platform will be phased out. Labb shall use its best efforts to keep Labb Fusion operational only through the end of 2027. ~~Labb shall not be responsible for security breaches, HIPAA violations, or any other regulation related to Labb's legacy platform once One by Labb –~~

~~Workplace Health is launched. Fastest Labs shall take full responsibility for the use of the legacy platform and agree to defend and hold Labb harmless for all security data breaches and/or violations.~~

- **This text deletion is not accepted.** The new platform will have increased security and features. Plus it is HIPPA compliant. Once we launch the new platform, continued use of the old platform causes liability exposure if it was allowed to continue to be used beyond a normal "wind down". That is why we would prefer to shut it down with 30 days-45 days. But will keep it operation longer as outlined above, but we cannot be responsible for things described that could happen. Because we are clearly stating that we are not going improve or modify or change it.

- **Built-in support:** the Platform will include AI technical support, product training, and FAQs. Live support shall be limited to One by Labb – Workplace Health SaaS technology or rapid test. Labb shall not be responsible for providing support, guidance or explanation on any lab-based or MRO result, even if such result is related to a confirmation of a rapid test. All other questions will be referred to Fastest Labs' corporate offices or laboratory / MRO partner where applicable.

- **Not accepted addition. These calls also go to home office. We have no relationship with labs or mro under new agreement. Those relationships are between you and the providers.**

- **Account manager:** Labb will assign a dedicated account manager and secondary support manager to Fastest Labs, with a defined SLA response time of 24 hours, excluding weekends and holidays and will be availbe by phone from 7am – 7pm ET standard working days.~~.~~

- **We will define the hours to be worked as 9:**00am – 4:30pm est (M-F) But Fasttest Labs is assigned 1 Dedicated Manager and a secondary support person. But their time runs concurrent. After those hours they can call and leave a message or email. We will respond within the time frame given above.

- **Software to ArcPoint and Any Lab Test Now:** Labb shall not sell One by Labb – Workplace Health to ArcPoint or Any Lab Test Now. Labb may sell other software to any customer, including ArcPoint and Any Lab Test Now. Labb reserves the right to build entirely new technology for ArcPoint and Any Lab Test Now, provided that such technology does not include ~~a rapid-testing reader~~drug testing technology including rapid readers, facilitation of POCT drug testing devices, laboratory drug testing, or drug testing technology of any kind. ArcPoint and Any Lab Test Now may participate as collection sites in the network.

- **Changes not accepted.** We are giving you the exclusive on the ONE by LABB Platform and on a platform with a reader. That's all. LABB is migrating to a technology company. New technologies or work that anyone asks that does not relate to these two things are not covered.

- **Data ownership:** all drug test result data on the Platform,~~ including franchisee and program data,~~ is owned by Labb. All customer data is owned by Fastest Labs.

  **No – Standard industry practice. Cannot make this distinction.**

- Future Proofing Section

- NO FUTURE PROOFING SECTION CAN BE INCLUDED. IMPOSSIBLE TO DO THIS. THERE IS NO WAY TO KNOW WHAT THE FUTURE WILL BRING. WE ARE PROVIDING ONE BY LABB TO BE AN INDUSTRY STANDARD. HOWEVER, TECHNOLOGY CHANGES. AND WE HAVE NO WAY TO KNOW WHAT MAY COME 5,6 ,7 YEARS FROM NOW. LIKE WISE THIS IS

**Commented [JS4]:** We need an agreed upon framework for future proofing over the next several years. If advancements or new technology become available, we need framework around what Labb is willing/able to build and invest in, what Fastest Labs commits to continue purchasing, etc. We need to have a conversation around this.

My goal, as I'm sure Labb's is, is that Labb would remain on the forefront of technology expansion in the space, and that FL would purchase any new concepts. But, we need terms around that, including if new technology becomes available that Labb cannot or will not develop/purchase/make available.

NOT A REASON TO TERMINATE. IF IT WAS THEN EVERYONE THAT BOUGHT A CAR 3 YEARS AGO SHOULD BE ABLE TO WALK AWAY FROM THEIR LOANS. (OBVIOUSLY THEY CAN'T. WHAT YOU ARE PAYING FOR EACH MONTH IS FOR PAST WORK, CURRENT WORK, FUTURE WORK ON THE PLATFORM. TO TRY TO ADD ANYTHING LIKE THIS IS A RABBIT HOLE THAT DOES NOT END.

**SECTION 2 – EXCLUSIVITY**

- ~~**Platform exclusivity:** Fastest Labs is exclusive to the One by Labb Platform. Fastest Labs may not contract with, use, or implement any other software that competes with, or performs the functions of, the One by Labb Platform. During the term of this Agreement, Fastest Labs may not contract with any third party to build, nor build in-house, any competing software or platform.~~

- NOT ACCEPTED. THIS IS AN ABSOLUTE OR WHY HAVE AN AGREEMENT. WE ARE ALSO NOT AN INTERIM SOLUTION UNTIL YOU FIND SOMETHING ELSE OR SOMETHING ELSE COMES ALONG.

- **Freedom of contract for all other services:** apart from Point-of-Care Testing that Labb offers, Fastest Labs may contract with any provider of its choosing for laboratory testing and other services. Labb shall not act as a required intermediary for those services.

- **Labb-added products/services made available Platform-wide:** Labb may choose to add new products or services to the Platform ~~and may or may not make those products or services available to all Platform users, including Fastest Labs~~. ~~Labb is not required to sell and~~ Fastest Labs' franchisees are under no obligation to purchase any product or service so added, unless it is specifically made a part of this Agreement by mutual, written agreement.

- **See above paragraph – already addressed. But this is for thing on the workplace platform and does not include other platforms we are or may build that are designed to address other markets. This agreement is only here to address the One by Labb for Workplace.**

- **POCT exclusivity:** ~~Fastest Labs will purchase all point-of-care testing exclusively from Labb without exception.~~ Fastest Labs will purchase all point-of-care testing for products that Labb offers in stock. For the avoidance of doubt, Fastest Labs is not prohibited for purchasing any product from another source for a product that Labb does not currently offer in stock at the time of purchase nor is Fastest Labs prohibited from purchasing point-of-care testing products that are required by National third party networks to conduct testing for the network.

NO – POCT IS EXCLUSIVE. IF SOMETHING IS REQUIRED TO BE USED BY A THIRD PARTY NETWORK – I.E. YOU ARE DOING COLLECTIONS FOR ABBOTT AND THEY WANT THERE DEVICE USED – IT CAN ONLY BE USED FOR THAT ACCOUNT AND VERIFIABLE DOCUMENTATION THAT SHOWS THE NUMBER OF TESTS PURCHASED MATCHES THE NUMBER OF TETS DONE FOR ABBOTT. ANY DESCREPENCY IN THOSE NUMBERS WOULD BE DEEMED A VIOLATION OF THE EXCLUSIVITY.

**Freedom to source and sell non-Labb products; no minimums:** Fastest Labs' point-of-care testing exclusivity extends only to products that Labb offers for sale and has in stock at the time of purchase. Fastest Labs is under no obligation to purchase any product or service that Labb does not offer for sale, and undertakes no minimum-purchase, minimum-order, or minimum-volume commitment of any

**Commented [JS5]:** Platform exlusivity clause contradicts bullet two of section two. In exchange for paying the platform fee for each office monthly for term of contract, we have freedom to use other services as needed.

**Commented [JS6]:** Contradicts bullet two of section two. In exchange for paying the platform fee for each office monthly for term of contract, we have freedom to use other services as needed.

**Commented [JS7]:** Contradicts bullet two of section two. In exchange for paying the platform fee for each office monthly for term of contract, we have freedom to use other services as needed.

**Commented [JS8]:** If Labb sells something, Fastest Labs has option to buy it.

kind with respect to Labb products. For any product or service that Labb does not offer for sale, Fastest Labs may source it from any third party of its choosing, or manufacture, have manufactured, and sell it itself, in each case free of any obligation to Labb, provided such product or service does not embody, incorporate, or practice Labb's patents or proprietary technology, including US Pat 10,340,032.

NO – POCT EXCLUSIVE TO LABB. WE HAVE AGREED UPON PANELS. WE HAVE OTHER NEW ONES COMING. IF THERE IS A DIFFERENT PANEL FASTEST LABS NEEDS THEN THEY NEED TO COMMIT TO BUYING IT AND WE WILL GET IT. (BUT WE ARE NOT GOING TO STOCK EVERY POSSIBLE CONFIGURATION FASTEST LABS SAYS THEY WANT WITHOUT A PURCHASE ASSURANCE. WE HAVE TESTS NOW THAT HAVE FASTEST LABS PACKAGING THAT ARE NOT BEING BOUGHT THAT WE ARE THROWING AWAY. IT IS NOT UNREASONABLE TO ASK THIS FOR THE SAME REASON THAT ANY COMPANY YOU WOULD GO TO – ABSENT OUR CURRENT OR A FUTURE AGREEMENT – WOULD REQUIRE MOQ AND ASSURANCES BEFORE THEY WOULD MAKE YOU A CUSTOM TEST.

- ~~**Reservation of Labb's competition rights:** Labb reserves the right to compete with Fastest Labs directly in laboratory-based testing, DNA testing, background checks, and any other product or service that Fastest Labs does not purchase exclusively from Labb.~~**Covenant against direct competition; reservation of rights:** During the term, neither Labb nor any entity Labb controls, is controlled by, or is under common control with shall directly sell, offer, or provide (a) professional testing , defined as testing performed at a collection site sold directly to an end user, which is defined as a workplace customer , (b) DNA testing, or (c) background-check services, in each case to end users located in any market that Fastest Labs then serves, and this restriction applies regardless of whether Fastest Labs purchases such testing or services exclusively from Labb. Should Labb breach this covenant, the year-7 ownership transfer shall accelerate and Fastest Labs may take its then-current Fastest Labs instance of the Platform and exit this Agreement. This covenant is not triggered by, and Labb expressly reserves the right to engage in: (i) any activity in markets that Fastest Labs does not then serve; (ii) non-professional, clinic-based testing; and (iii) the sale, license, or provision of its technology, products, or services to any independent third party in which Labb holds no ownership or controlling interest, including where such third party competes with Fastest Labs. Apart from the foregoing restrictions, Labb reserves the right to compete with Fastest Labs in laboratory-based testing and in any other product or service that Fastest Labs does not purchase exclusively from Labb.

- **There is no year 7 ownership agreement. If we have something to sell and Fastest labs is not buying it from us then we are free to sell to others or you stifle our ability to grow.**

- ~~**Custom POCT offering:** In the event that Fastest Labs requires a POCT panel configuration that is not available in some subset form from Labb, Labb shall facilitate the order of a custom POCT. Fastest Labs shall be bound by the same ordering and payment terms as Labb. For the sake of clarity, Fastest Labs shall pay 50% at the time of the order and 50% before the products are shipped to Fastest Labs. Fastest Labs shall be responsible for distributing all customer products directly.~~

  **This paragraph must stay.** IF there is a panel that you decide you want, then we will facilitate it being done. But we can not be put in a situation that you want a panel but give no commitment to buy it. (We have product now under the FASTEST LABS name that will need to be scrapped.)

Removal of this paragraph also could lead to creation of a loophole for Fastest Labs to avoid buying from LABB.

- **System-level enforcement:** no out-of-network POCT test result may be entered into the Platform. Every POCT result entered into the One by Labb Platform must have been purchased from Labb and contain a Labb SD number with a unique QR code identifier.

**Commented [JS9]:** This needs to leave room for outsourced rapids that are upload to the platform via manual upload from clinic. It is not uncommon for us to outsource rapid collections to sites that are not on any network and have to upload that result manually. Agreed to limitations where they cant DR cups at will that are not purchased from Labb.

- **WE CAN LOOK TO ACCOMIDATE THIS LIMITED NEED. BUT THESE WOULD BE STRICTLY LIMITED TO SPECIFIC DEVCIES FOR SPECIFIC CLIENTS AND NEED TO BE DOCUMENTED THIS IS WHAT IT IS FOR. THE WORKFLOW FOR THIS WOULD NEED TO BE DETERMINED.**

**Fastest Labs' role:** Fastest Labs agrees to assist Labb in ensuring franchisee compliance with the definitive Agreement. Labb shall agree to report any violations of the Agreement by franchisees that Labb identifies or suspects to Fastest Labs Corporate within 5 business days of confirming the violation with definitive evidence of suspicion.

- **Cannot use word like definitive evidence, since that is what the audit provides.** All we need is a preponderance of the evidence.

- **Audit rights:** Labb shall have, and Fastest Labs shall assist Labb with, ~~complete and unrestrained~~ access to franchisee data including, ~~but without limitation to~~, strict audit rights over each franchisee's POCT purchasing and usage, and over franchisee revenue, including access to each franchisee's QuickBooks records via PDF or Excel export as long as we use Quickbooks, for the purpose of verifying POCT exclusivity compliance and the Revenue-Based Fee. Labb shall meet an agreed upon evidence threshold for requesting an audit on a franchisee.

- **Evidence threshold is as described above.**

## SECTION 3 – TERMINATION, TRIGGERS, AND CHANGE OF CONTROL

- **Acquisition, merger, or spin-off of Labb:** if Labb is acquired or merges with another company, or the One by Labb Platform is spun off into a separate company or entity, the acquirer, new company, merged company, or new entity shall agree to be bound by this Agreement and its terms. Fastest Labs acknowledges that none of these events shall be deemed a material adverse change, and Fastest Labs shall remain bound by the terms of this Agreement with exception: if Labb merges, sells the One by Labb Platform or otherwise transfers interest or ownership to a company that directly competes with Fastest Labs, Fastest Labs shall have the option to exit the agreement with ownership of the technology. Fastest Labs agrees to define "directly competes" for future avoidance of doubt but said definition will include Quest Diagnostics, Abbott, DISA, First Advantage, CRL, etc.

- **Added/Changed Text not accepted. First if this is a 7 year deal there is no Ownership at the end. It is a straight license deal. Second, if we are selling, this Platform and the Agreements we have in place are what is being bought. Thus, the only rights that you would have would be to exit if sold to the companies you listed. But if you exit you do not get anything for that choice. If you stay, then you abide by the terms of the Agreement, and the buyer will also abide by the terms of the Agreement. Likewise, if Fastest Labs sells we are obligated to abide by the terms of the Agreement and the new owners are also obligated to abide by the terms. Otherwise we have no agreement, since either of us could just form another company and sell our resepective companies to the new**

**company and be done with the Agreement. Understand that Labb is making considerable investment in the ONE by LABB platform. Those partners we sign agreements with for the use of that Platform are expected to be committed as are we.**

- **Sale of Fastest Labs:** any change of control or sale of Fastest Labs shall require the new operators or owners to sign an identical version of the agreement.

- **Transfer of a franchise or territory:** ~~upon any sale or transfer of a franchise or territory, all outstanding amounts owed to Labb transfer to, and are assumed by, the new owner.~~ Fastest Labs agrees to gain sign-off from Labb that all debts to Labb are paid by existing owner and will not allow a transfer to take place unless all debts are paid as of that sign-off.

- **We can accept this change.**

- ~~**Franchisee payment guarantee:** Fastest Labs guarantees the payment obligations owed to Labb by any franchisee that closes, or whose territory remains closed or unoccupied.~~

- If a franchise closes and the assets and property of that franchisee is taken by the home office then they become liable for the debt also. But this should be limited cases – if any – since all POCT is paid for at time of order and all Platform Fees are paid "forward".

- **Strategic competition by Fastest Labs:** Fastest Labs may not build, acquire, or invest in a competing platform during the term of this Agreement. If Fastest Labs does so: (a) the year-7 ownership transfer is forfeited, and ~~(b) all fixed payments due under the Agreement through the remainder of the term become immediately due and payable.~~

- **Cannot accept this deletion. This basically allows you to do anything you want with no penalty. On the day this is signed – and the old Agreemnt that is currently IN FORCE is canceled – you could go buy another program and then just walk away saying "oh well" I guess we wont own anything. Plus, the fact that if this is a 7 year agreement there is no ownership at the end of the term.**

- **General commercial termination:** either party may terminate for the standard commercial reasons (sustained non-performance, insolvency, or repeated SLA breach) that remain uncured. In the event of termination by either party, the technology shall not transfer to Fastest Labs.

- **Key-partner failure:** if the Cynergy relationship (or any successor relationship then providing the same function) is terminated, lapses, or otherwise fails, and Labb does not, within 90 days of such failure, source and place into production an alternative partner that restores the same core ordering and lab-site filtering connectivity available immediately prior to the failure, a triggering event shall be deemed to have occurred.

**Not accepted.** We are not in the lab business. We are there to make the introduction. The agreement is with you and those other partners on the ONE by Labb platform. We will connect anyone you bring to us. IF those relationships then fail that is on you, not us.

- **Loss of core features:** if Labb removes, disables, or fails to maintain any of the core features from the baseline scope delivered under the Platform as set forth in Section 1, and does not restore such feature within the general cure period, a triggering event shall be deemed to have occurred.

Not accepted. We addressed this above.

- **Remedy for the Key Partner Failure and Loss of Core Features triggers:** upon a triggering event under either of the two provisions above, the remedy available to Fastest Labs shall be determined by when the triggering event occurs:
- If the triggering event occurs at any time during years 1 through 2 of the term, Fastest Labs may terminate this Agreement and walk away at any point thereafter, with no ownership transfer, no continued payment or performance obligation, and no penalty to either party.
- If the triggering event occurs on or after the first day of year 3 of the term, Fastest Labs may exit this Agreement with accelerated ownership of its then-current Fastest Labs instance of the Platform, transferred on the same ownership-and-license terms set forth in Section 1, and Fastest Labs' continued payment and exclusivity obligations shall cease as of the effective date of such accelerated transfer.

There is no ownership of the program under a sever year deal. All that can happen is a termination of the Agreement. This should be restored to original language with exclusion of the ownership. Unless this is moved to a 10 year deal then the original language is used.

- ~~**Successor obligation:** monthly fees due under this Agreement remain due and payable regardless of a change in ownership or control of either party, including a merger, acquisition, or sale of substantially all assets, and are owed to whichever entity succeeds to the company and its assets.~~

- **This is restored.** Agreement goes on and obligations of both parties remain. Or neither of us have an Agreement that is binding.

- **General cure period:** all breaches under the Agreement must be cured within 60 days of notice of the breach. Should a breach not be cured within the 60-day period, the consequences of such uncured breach, including any acceleration, termination, or forfeiture remedies, shall be as set forth in the definitive Agreement~~, which Labb shall prepare through its counsel.~~

**We can accept this deletion. But note that we will be preparing the Agrement with our counsel and then it will go to you for red line on language. Terms agreed to here cannot be renegotiated at that time.**

- Definitive Agreement: The definitive Agreement shall be prepared collaboratively by the parties and their respective counsel.

- See above comment.

**SECTION 4 – FEES AND BILLING**

**Note: the Revenue Based Fee is a revenue based fee. It is linked to the revenue of the franchisee location. (Whether that revenue comes from a local account or a corporate account.) It is not an accounting module fee since the accounting module is part of the core features. The Revenue Fee is based on the fact that the platform costs – AWS, Maint., expansion, AI, etc all go up as its use goes up – which happens as revenue goes up. This pricing is almost universally implemented in the software world today, Thus, the description of REVENUE BASED OPERATIONAL FEE is correct.**

- **Pricing overview:** the Platform Base Monthly Fee is $249.00 per month per location ~~with a 3.5% annual escalator on September 1 of each year of the agreement~~, and the Revenue-Based Operational Fee is $149.00 per $10,000 of revenue ~~with a 3.5% escalator on September 1 of each year of the agreement.~~

All fees are prepaid (e.g., fees paid on the 1st and 15th of June are for June). The Revenue-Based Operational Fee is based on the prior month's revenue.

- **An escalator is absolutely required.** We cannot go into an agreement for 7 or 10 years with a fixed price. Costs will go up over that time period on everything. Labor, web services, hosting etc. The increases proposed are reasonable per virtually any agreement and are below the rate of inflation. We will concede to no increase on the REVENUE BASED FEE – since natural increases are build in based on revenue. But on the core program fee still will require an escalator.

- **Revenue reporting:** ~~Fastest Labs Corporate will provide Labb a monthly report of per-location revenue, sent by the 10th of each month, to allow Labb to calculate the supplemental invoice for Revenue-Based Fees.~~

- **Deletion NOT accepted.** You have to report revenue by location for the proceeding month or we cannot bill the Franchisees.

- **Payment on file:** all franchisees must keep a valid form of payment on file with their account: a checking/savings account for ACH, or a credit/debit card.

- **Billing structure for Software:** Labb will provide each franchisee two SaaS bills per month, each automatically charged to the franchisee. The first "Core" platform bill/auto-debit shall occur on the 1st of each month at $249.00 ~~with a 3.5% escalator each September 1~~, and the ~~Finance~~ Accounting Module Revenue-Based Fee of $149.00 ~~with a 3.5% escalator~~, which covers the first $10,000 revenue tier. The second bill/auto-debit is on the 15th of each month and includes the Supplemental Revenue-Based Fee, reflecting the amount owed based on revenue reported above the first $10,000 tier for the previous month.

**See Above comments on escalator.** Also, it is a Revenue Based Fee – NOT AN ACCOUNTING MODULE FEE.

- **FTFS National Accounts:** For the avoidance of doubt, FTFS National Accounts will be run independent of the franchisees. FTFS National Accounts will be managed by FTFS under its own existing entity. FTFS revenue, and the revenue that it produces for franchisees, will not be subject to Accounting Module Fees. FTFS would pay for a One by Labb Workplace seat to manage these customers.

- No, if FTFS maintains National Accounts then they to are subject to the same fee structure. All that business and activity is also being put through the system – even if it is at the local franchisee level. The Revenue Based Fee is not for the accounting module. It is a fee to cover the costs associated with the increased work load on the "system" that is the result of increased revenue. We cannot exclude system activity because it is a FTFS held account.

- **Payment method fees:** franchisees that provide a checking/savings account and authorize ACH payment of monthly fees are charged no processing fee. Franchisees that pay by debit or credit card are charged a 2.5% processing fee added to the account.

- **Due dates:** the first debit is due on the 1st of the month; the second debit is due on the 15th of the month.

- **Failed payment charge:** a $25.00 charge applies if a payment fails to process (e.g., invalid card, card denied, insufficient funds for ACH), in addition to (and not in lieu of) the underlying fee that failed to process.

**Commented [JS10]:** This language throughout needs to shift to show that this fee is for the accounting module and the work that that module does - not a revenue based fee for the workplace health module.

**Commented [JS11]:** This section needs to be designed to incorporate the accounting/finance module and what all it can help with. Example: if you have no way to facilitate the billing to TPAs (escreen, FADV, Disa, etc.) then franchisees will be forced to manually manage that, which we will not pay accounting module fees for. Covering the accounting module fees in Section 1 will help this.

**Commented [JS12]:** This section needs to be designed to incorporate the accounting/finance module and what all it can help with. Example: if you have no way to facilitate the billing to TPAs (escreen, FADV, Disa, etc.) then franchisees will be forced to manually manage that, which we will not pay accounting module fees for. Covering the accounting module fees in Section 1 will help this.

**Commented [JS13]:** reword for FTFS paying the $249 per month directly to Labb for each open office.

● **Late fee:** a $50.00 late fee applies to any amount not paid within 10 days after its due date, for both the first and second debits, in addition to (and not in lieu of) the underlying fee owed.

● **POCT and Laboratory Drug Test Pricing:** the $2.25/cup confimation fee is unbundled and confirmation fees will be set at pass through rates from the respective laboratory. The following rates for POCT cups are:

○ 6 Panel: $3.75

○ 13 Panel: $5.75

○ 16 Panel: $6.75

○ 17 Panel: $7.00

○ 18 Panel: $7.25

○ 23 Panel: 10.50

○ 14 Panel OR: $6.5

○ 31 Panel OR: $8.50

These prices are not correct. We previously gave pricing based on a set of conditions and agreements. Those conditions and agreements have changed. Not sure where these prices came from .

Actual prices are in RED.

~~○~~

○ **Laboratory Pricing:** All laboratory pricing of any kind, and MRO services, sold by Labb to Fastest Labs will be at pass-through pricing, defined as the set price given to Labb by the laboratory.

**Not accepted since we are not contracting with you for lab services.** All lab services are contracted by Fastest Labs directly with the lab of your choosing or Cynergy or other platform partners.

○ Processing fees and Stripe integration for billing clients: define these fees and the structure (including what Labb Pay / Single Payer is).

????

**SECTION 5 – CHANNEL PARTNER PROGRAM (CPP) AND MARKETING**

● **CPP membership:** Fastest Labs shall have the right to determine in its sole discretion at the start of the agreement if CPP membership by franchisees is optional or mandatory.

**Commented [JS14]:** We expect these rates to be virtually pass through from Stripe. We are only interested in Stripe being the payment processor. So, if Labb intends to change that, we need the ability to use stripe or be involved in those discussions. We are not interested in Labb being the clearinghouse/processor without an outside processor, which Labb has mentioned they can or intend to do in the future.

○ In the event that the CPP membership is optional, Labb reserves the right to withhold membership from any Fastest Labs franchisee as well as decide in Labb's sole discretion not to renew a franchisee's CPP Membership.

○ In the event that the CPP membership is mandatory, Labb shall not have the right to withhold membership from any Fastest Labs franchisee and must renew all compliant franchisees into the CPP each year.

- **CPP Marketing Fee:** franchisees who enroll in the CPP Program shall pay a monthly Marketing Fee of $699.00, due and payable on the 1st of each month. Labb shall be obligated to spend at least 80% of all funds collected on direct hard cost marketing programs such as ad agencies, PPC, SEO, display ads, tradeshows, marketing materials and other direct costs for the CPP program.

- **Marketing Program Agreement condition:** In the event the CPP is mandatory and all franchisees are CPP members, Labb shall direct 100% of all CPP leads to Fastest Labs for distribution to franchisees at Fastest Labs' sole discretion. Fastest Labs shall be responsible for the complete adjudication of all territory disputes and Labb shall have no role in CPP lead distribution or account assignment.

- **Custom CPP lead-dispersal dashboard (optional):** Labb shall build at Fastest Labs' request a custom CPP dashboard allowing Fastest Labs to direct all leads, by ZIP code, to a specific franchisee. The cost of building this custom dashboard is Fastest Labs' responsibility, and Labb will provide a firm, fixed quote for the work. Absent the Marketing Program Agreement, Labb controls lead dispersal.

- **CPP rule continuity:** all existing rules of the CPP Program remain in force under the definitive Agreement, unless specifically modified in that Agreement. Labb reserves the right to modify all future CPP agreements in Labb's sole discretion. Fastest Labs shall have the right to withdraw from the CPP at the end of any CPP agreement term.

- BEFORE any modification or discussion on this can occur we need to understand the first point. Is CPP going to be mandated to all franchisees or is it optional. If mandated we can then discuss Fastest Labs controlling the leads nationwide and routing how you wish. If optional then we must maintain control since only franchises in the program can be given any leads. In the end, either way the CPP program is a LABB program and the Franchisees participating in the program – either mandated or optional – must still sign a CPP agreement and abide by those terms. The CPP program Agreement is not benign negotiated as part of this agreement.

**SECTION 6 – CUSTOM FEATURES AND DASHBOARDS**

- **Custom modules:** custom modules may be added under agreed work orders, billed at a firm, fixed price per work order.

- **Custom features:** Fastest Labs has the right to request that Labb build custom features. Any feature built at Fastest Labs' request is exclusive to Fastest Labs. If such a feature is required by law, or becomes available on ~~any other platform~~ 2/3 of the following platforms: eScreen 123, Formfox Marketplace, i3 Screen, Labb may offer it to all clients, with ~~no repayment to~~100% of the total build cost being refunded to Fastest Labs. Before making any such feature available to others, Labb will give Fastest Labs six months' notice and provide evidence that the feature is required by law or is available on ~~another platform~~2/3 of the following platforms: eScreen 123, Formfox Marketplace, i3 Screen.

- ?????

**Commented [JS15]:** Need guidelines around this and understand for what reasons Labb would withhold or non-renew a compliant franchisee into the CPP.

**Commented [JS16]:** Without marking through this individually: our goal is for all CPP leads to come to FTL HQ regardless of if they participate or not. If not, we will manage it on our own or through the nearest FL office until an office opens up in that area.

Through the CPP, the owners have ended up selling in other's territories consistently. We need to clear that up by managing these leads all around and also ensuring the leads are closed - too many leads are left unclosed, unfavorable to both labb and fastest labs.

We can't make all of them pay into the monthly fee. But we can do something like "if you don't pay into the CPP program you dont get the inbound leads" which would then force it to the next nearest office or we manage the relationship there --- but they have to still have the outbound reseller capability.

- **One by Labb Custom Dashboard:** should Fastest Labs want a custom dashboard beyond the planned standard dashboard already included with the Platform, with capability beyond the Platform's planned scope, Labb agrees to build it and add it to the program for Fastest Labs. Fastest Labs agrees to pay for this custom work on a firm, fixed time/cost basis.

## ACKNOWLEDGED AND AGREED

This term sheet reflects the parties' current understanding of proposed terms. It is intended to be non-binding as to deal terms not yet reduced to a definitive, signed Agreement, except as to confidentiality, exclusivity of negotiation, and governing law, which the parties intend to be binding upon execution below, pending review by counsel. This term sheet and the underlying negotiations are confidential and governed by the existing non-disclosure agreement(s) already in place between the parties.

**Governing Law:** This term sheet and the definitive Agreement are both governed by the laws of the Commonwealth of Virginia, without regard to its conflict-of-laws principles.

| **RAMSEY DIAGNOSTICS CORPORATION, d/b/a Labb** | **FASTEST LABS FRANCHISING, LLC** |
|---|---|
| Signature: ______________________ | Signature: ______________________ |
| Name: ______________________ | Name: Matt Kunz, CEO |
| Date: ______________________ | Date: ______________________ |

# Exhibit JK-7B

Outlook

## Re: Checking In on Term Sheet

**From** John Smith <john@fastestlabs.com>
**Date** Thu 7/23/2026 3:18 PM
**To** Jeff Konecke <jeff.Konecke@labb.com>
**Cc** Matt Kunz <matt@fastestlabs.com>

1 attachment (22 KB)
Responses to Jeff's Red Lines and 6.20 Email - John.docx;

Jeff - here are my responses in a single word document. I note each bullet point for ease of read.

Thanks

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Thu, Jul 23, 2026 at 9:47 AM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi John
>
> Wanted to check in and see how's it is going on the term sheet and my comments.
>
> Thank You
>
> Jeff Konecke
> President - Labb

**Contract Term:** My mistake on thinking past discussions were for 7 years. It has been 10 since at least my last visit to James. 10 is fine.

**Revenue Module Fee (bullets throughout):** your positioning of this fee as a separate fee on its own, not tied to the Accounting Module, and the Accounting Module being a *core feature* is new. Since the first discussions between Labb and Fastest Labs, we expected the price of the Accounting Module to be tied to that feature. In any case, we must ensure the features of Accounting Module, regardless of what it falls under, are good and useful. We cannot in good conscience simply pay such a high fee just because. We agree and understand rising costs come with added burden, but not at $150/$10k. The Accounting Module itself was supposed to be worth that amount of money to us. As of now, we have very limited idea of what the Accounting Module even does.

**Workplace Health Bullet + Key Partner Failure Bullet + Laboratory Pricing Bullet:** are you not offering the Quest direct pass through pricing then as well as Omega? If so, that has not been mentioned until now. I have been clear about our need to ensure that multiple SAMHSA labs, preferably CRL, are online and usable. If you cannot guarantee that through Cynergy, or otherwise, then why would any partner sign a 10 year deal, or even a 1 year deal? We still owe the money if all connections fail and we can't do drug testing? My below requested edits in the previous document are reasonable assuming we are locked in to paying these rates for drug testing management software: the core features of the product shall include rapid drug testing, laboratory testing, confirmation and MRO coordination, full eCCF for DOT urine and Breath Alcohol, network testing via eCCF on the Quest and Formfox networks. as well as connections to two SAMHSA laboratories at all times. All functionality added to One by Labb – Workplace Health shall be incorporated into the base functionality once launched.

Specific to the **Key Partner Failure Bullet**, "if those relationships fail, that is on you" is particularly concerning. Your entire software is designed to sit in between me and labs. Why am I responsible for that relationship and not you? I'm talking about big names here, not small labs. Relationships being smooth to your technology should not be my responsibility.

**Platform Phase Out:** I will agree to Labb not being liable after 6 months. Customers need time to move – franchisees might be compellable, but customers need runway.

**Built-in-support:** all I am asking here is that your AI kick questions that are genuinely for a lab over to that lab: list their phone number or email or something.

**Account Manager:** knowing that getting a hold of Labb and getting help has been a chief concern we have gotten pelted on in every survey for the last 5 years, 7.5 hours of support window across 12 hours of business time coast to coast is not enough.

Software to ArcPoint and Any Lab Test Now: your original draft said, “Labb reserves the right to build entirely new technology for ArcPoint and Any Lab Test Now, provided that such technology does not include a rapid-testing reader.” --- that is not a reasonable amount of exclusivity to Fastest Labs – it allows you to literally sell a copy of One by Labb without rapid reader. We will not accept anything close to this. We have been abundantly clear about the exclusivity we seek.

**Data Ownership:** we will not accept Labb owning our customer data and that is not a standard software practice. Any simple research into top SaaS companies will show that. It is generally customer owned data licensed to the software provider for the purpose of using the software.

**Future Proofing:** if your position is that we are to be signing a 10 year deal with no simple understanding of what future improvements should come or how we might address said changes, then we do not have a path to a deal. I am not asking for guarantees or rabbit holes. My request was for *framework*. Please see my comment. If this technology is useless in 3 years, I will not continue paying for it for another 7. However, I *would* be willing to agree to how we might assess the landscape should things change. A better analogy would be multi year deals with top SaaS companies: if I agree to a 3 year deal, I reap the benefit of the continued updates for those years. Then, at the end, we renegotiate the price. The assertion that we should sign this and that it is for past build is not the stance that any SaaS company I have ever signed a deal with takes, nor is it one I will start accepting.

**Exclusive bullet:** I’m not trying to use this until I find something else. This bullet is unnecessary if we are promising to pay the platform fees for the duration. If we are paying, what do you care if we need to supplement the tech with something else to serve a need?

**POCT Exclusivity – bullets throughout:** Your changes as they stand are not something we can work with. Why am I giving you exclusivity on something you don't make, don't know if you can make, haven't negotiated a cost, etc.? My latest evidence of it not working is the cotinine strips. Labb says they carry them now and starts quoting a price that we have not discussed, which happens to be ~4X of what they can get it for outside of Labb. That doesn't work. We are not going to blindly agree to 10 years of exclusivity with mountains of unknowns. Same core issue as future proofing.

**Covenant against direct competition; reservation of rights:** I assume you are ok with this if we are ok with a 10 year deal.

**Audits:** What words do you suggest in lieu of "definitive evidence." It cannot be whatever logic Labb used for the July audits. It was presented to Fastest Labs that there was a lot of wrongdoing, including our top franchisee, and after the fact we are learning the issue was not that expansive, including the claim that the top franchisee was in violation being totally false.

**Acquisition, merger, or spin-off of Labb:** If you will draft another version incorporating my changes, understanding that we wouldn't get to keep the software if we left, I'd like to review it. What I seek is protection should you sell to a top competitor, which is just as likely as a PE sale.

**Strategic Competition by Fastest Labs:** again as above, if we are paying, why do you care if we need to source or build something that One by Labb doesn't or cannot do?

**Loss of Core Features:** if Labb is not willing to guarantee that this platform will keep core features and not go backwards on functionality, we will never reach a deal.

**Successor Obligation:** I can't tell if I deleted this or you, but we do agree with the obligation to continue paying if we sell.

**Pricing Overview:** we never discussed an escalator. We are not willing to pay one. Every year that we open more offices, and increase revenue going through the system, Labb gets more money. Not paying an escalator on top of that.

**Revenue Reporting:** this is not needed. If your accounting module does the accounting, you will know what the revenue is. In fact, we were expecting for that to be the source of truth for us for all testing revenue that goes through it. That being said, I will reiterate that we do not plan to pay fees on revenue that the accounting module does not facilitate.

**FTFS National Accounts:** These were never discussed with Labb. The TPA business that FTFS is building is not going to be subject to paying additional fees. That is not negotiable for us.

**POCT Cups:** you did previously give pricing that was never decreased from existing. The agreement was that POCT pricing was going to decrease. I have mentioned this multiple times since you sent the PDF of that excel file. Removal of the $2.25 confirmation fee is not a reduction in POCT cost. The numbers I offered here were reductions.

**Processing fees and Stripe integration:** Noting your question marks. The platform runs on Stripe as the payment processor. We need to agree on processing fees unless we are using our own stripe account(s). I understand from James that the single payer technology is dependent on using your Stripe account. That's fine, but I want to ensure the interchange rates are pass through, also giving FTFS the ability to add extra fees there if needed.

**Custom Features:** noting question marks. What I'm saying is that I'm agreeing that if such a feature is required by law or if it becomes available on two or more of the following platforms: eScreen 123, FormFox Marketplace, i3 Screen, Labb may offer it to all clients, with 100% of the total build cost being refunded to Fastest Labs. That gives us the protection if we have a good idea or feature first, others innovate, Labb capitalizes on that innovation, FTFS gets a refund.

**CPP:** I need to circle back after the rest of these points are ironed out.

---

Responses to your July 20 email: Term Sheet Comment clarifications

1. Fixed the above back to 10 years
2. If you are getting rid of the pass through pricing including Quest and Omega, the software is no longer worth anywhere near the rates we have previously considered.
3. I added some comments above. I don't care if some of the product we must buy elsewhere cannot be eTests and must be DRTs, but the *you have to buy everything from Labb with MOQs etc., etc.,* will not work. Sometimes people need to just buy 100 or 500 cups or strips of some kind to get a job done. I will never tie my franchisees hands behind their back and not allow them to make money like that.
4. By mandatory do you mean that every office has to pay the $799? If so, the answer will be no. But, we do need to figure out some kind of way to funnel leads for our franchisees through the Home Office. Right now they are clearly servicing in each other's territories which is an issue I need to resolve.
5. This is materially different than what was originally discussed. For us to pay that fee, we are going to need to see real value from the accounting technology. As of now, I'm losing trust in the current fee structure. At 250 units and $40M of revenue Labb's revenue off of Fastest Labs is $1.3M per year. I need to see $1.3M of value. Right now all I see is a bunch of reasons to not sign.

# Exhibit JK-8

Outlook

## Responses to John's Comments on Term Sheet

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Fri 7/24/2026 2:38 PM
**To** Matt Kunz <matt@fastestlabs.com>; John Smith <john@fastestlabs.com>

1 attachment (39 KB)
Labb-Response-Fastest-Labs-Term-Sheet-Comments.docx;

Goo Afternoon Matt and John

Attached please find our comments back to Fastest Labs. This is based off the last comments sent over by John.

Thank You

Jeff Konecke
President - Labb

# Exhibit JK-9

Outlook

## Action Required: Drug Test Kit Purchasing Compliance

**From** Matt Kunz <matt@fastestlabs.com>
**Date** Mon 7/13/2026 4:46 PM
**To** Matt Kunz <matt@fastestlabs.com>
**Cc** Karen Tenney <karen@labb.com>; Kelly Ray <kelly.ray@labb.com>; Jeff Konecke <jeff.Konecke@labb.com>

1 attachment (114 KB)
Labb POCT Exclusivity Notice.pdf;

Hello Owners,

The attached memorandum is response to our recent finding that many owners are using drug test kits purchased from vendors other than Labb. This memorandum serves as a formal cease and desist notice regarding this activity for those franchisees.

Please take the time to carefully review the attached memorandum from Matt Kunz and Jeff Konecke, President of Labb, which outlines the matter and the required actions moving forward.

Thank you for your attention to this matter.

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which

is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

Outlook

**Re: Followup on your Call**

**From** Matt Kunz <matt@fastestlabs.com>
**Date** Fri 7/10/2026 2:29 PM
**To** Jeff Konecke <jeff.Konecke@labb.com>
**Cc** John Smith <john@fastestlabs.com>

Jeff,

Thank you for time today. As discussed here are some bullet points to change the timeline and tone of a notice to the system.

Please review and if needed let's jump on another call.

We are moving forward towards a new agreement and new software. While we have been digging into data, we have discovered violations of the exclusive POCT requirement with Labb. This is unacceptable and must be corrected. We need all franchise owners to become compliant and stay compliant going forward for this relationship with a key vendor and Fastest Labs to remain on good standing.

- Violations of the exclusive purchase requirement with Labb found after July 31st 2026 will result in:
  - A default of their franchise agreement subject to an audit of that owners purchase history going back as far as December 2022.
  - Violations found in this audit will result in payments due by the offending franchisee to Labb at a rate of $5 per each laboratory test purchased through a third-party vendor.
  - Failure to cure this default and audit could result in additional defaults up to termination of the franchise agreement.

This is all easily avoidable by just getting into compliance and staying in compliance by July 31, 2026.

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Friday, July 10, 2026 at 11:39 AM
**To:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Followup on your Call

I'm available 1:15 et if that works

Jeff

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Friday, July 10, 2026 12:26 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Subject:** Re: Followup on your Call

Jeff,

Let me know when we can jump on a call please.

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Friday, July 10, 2026 at 8:40 AM
**To:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Followup on your Call

Matt,

I saw your message last night. I had already left to help with move-in and wasn't able to call back — apologies for the delay.

First, let me be clear: I am not trying to start a war with the franchisees. But the more I have  Kelly and Karen dig into the numbers, the more the extent of the violations come into focus.  When you and I began working on the Amendment, we assumed the use of outside labs like CRL and USDTL, was the core issue. However, what I'm finding is that was just the tip of the iceberg.

Many franchisees are routinely buying POCT products from vendors other than LABB. (Clearly documented by the huge discrepancy between the number of tests in the system and the number of tests actually purchased.) That's a direct violation of the current Agreement. (POCT Exclusivity is in the current and will remain in any new agreement. That is what the LABB system was designed and built for.) To be clear, All POCT products must be purchased from LABB - that point isn't negotiable.

As I am seeing, however, is that is not the reality on the ground.  The franchisees know they are in violation,n and corporate knows they are in violation. (Since the issue was raised with John and Dave in the past.) What I know is it has to stop NOW.  The only way that happens though is if corporate steps in and tells them directly. But that is the issue, we've had multiple franchisees reach out to us this week, saying they were told by the home office they could use other labs and tests - in one case, that they were even given specific pricing guidance of what the pricing from a vendor should be.

To be clear on where things stand now: YES, we have agreement on pricing that goes into effect September 1and we are working toward a new term sheet that will result in a new agreement. The New pricing and amendment addresses lab issue and takes that

problem off the table by permitting outside labs. It does not, however, permit outside POCT products to be used. That exclusivity remains in place now and in the any future agreement.

The memo I sent you was designed to address the POCT issue. It has not gone to franchisees, nor has it been shared with any franchisee in detail. The intent is to bring franchisees into compliance now, not on September 1 or whenever a new agreement is signed. This was sent to you first to bring you into the loop and get your assistance dealing with the POCT problem. (But dealing with it now - since every month this goes on LABB is losing money.)

IT should be noted that even though nothing has been sent, just the rumor that something is coming has already produced some reactions. Including:

1. A few franchisees placing orders in noticeably higher quantities than their recent history.
2. Franchisees calling to help adjust system inventory because they "found" some tests.
3. Franchisees calling to explain why they'd been using other products and who told them they could.

These are all good signs - the word is getting out that compliance with the existing Agreement is required. But it is just a start. What we ultimately send to the franchisees will be absolute. Get into compliance now, correct the past violations and stay in compliance moving forward. (Do that and we all grow and proser together.)

I sent you that memo to show you what we're proposing. The goal is to bring franchisees into compliance and help them cure past and current issues, not to punish them. We're giving them a chance to acknowledge what happened and correct it. In the end, it costs them nothing. Any amount determined to be owed is credited back to them to use toward product purchases. But requiring the admission, and requiring the product purchase, gives us assurance that they won't continue buying POCT elsewhere and that we won't have to revisit this same fight later, under either the current agreement or the new one.

I also want to be clear: we know this isn't all of the franchisees. It's concentrated in a segment of the franchisee base. But the ones in violation have influence and do affect what other franchisees do. By violating the Agreement they are cheating us, you, and every franchisee who's playing by the rules.

Jeff

---

Outlook

## Re: Followup on Calls and Memo

**From** Matt Kunz <matt@fastestlabs.com>
**Date** Fri 7/10/2026 6:21 PM
**To** Jeff Konecke <jeff.Konecke@labb.com>
**Cc** John Smith <john@fastestlabs.com>

Jeff,

I'd like to see this written up in a revised memo.

Couple points.

- I'm fine moving the date to immediate compliance expectation.
- I'm also fine leaving in the unannounced audits; however, I don't think you realize how much of a pain in the butt and expense doing them really is. But the threat should be enough to help with compliance.
- Send me the data on the three identified and will begin the audit notification process. Just a heads up, our franchise agreement gives them 30 days to gather and present requested information.
    - Luis is in the middle of a transfer that will close soon.
- Regarding turning off Direct Read, while I understand the reasoning, this will affect remote onsite so the process to turn it on needs to be quick and efficient.
- We cannot agree to amnesty for lost royalties, once that is said, we lose the agreement given right to audit anyone prior to the date of this notice. We have an ongoing random and select audit practice that specifically looks for unreported revenue.

Once we have the updated notice, we can get it queued up for a late Monday afternoon send.

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Friday, July 10, 2026 at 2:31 PM
**To:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Followup on Calls and Memo

HI Matt

Here is were we are at.

First the items related to the LAB Violations are removed from the conversation right now. We have the agreement in place and as long as that is completed in a timely manner as layed out that issue is solved. There was the thought to collect that so the $100K does not come from corporate - but we are fine leaving topic to rest.

Second - the issue of the POCT compliance. We can be in agreement that the timeline given for self reporting, auditing etc is short and potentially unreasonable. (Even though I have seen and been subject to shorter.) But giving them until July 31 to continue to violate the agreement and use outside POCT products is not reasonable either. When you break the law and the cops catch you you, you have to stop. Then not 19 days later.

Thus, the memo going out has to include that they must immediately cease and desist using any other non-LABB POCT device. IF they have nonLABB POCT in their facilities, they must be disposed of. (Cost of violation.)

We are turning off direct read capability in the system. This eliminated the potential to use nonLabb products. (Unless of course they work completely off line and does not enter or record the result anywhere else.) IF there is a site that legitimately needs direct read, they can call and request it. We will then look at their history and as long as it does not show a pattern that looks like using nonLabb products we will turn it back on.

In the agreement, we have the right to audit if we feel there is an issue. Home office will support us in those efforts and if a violation is suspected moving forward. Audits are subject to a full review back to the start date.

Three of the violators that are "standout violators" we do feel need to be pursued.
Louis Ramariz - 1133 more tests run then purchased
Ilan Dascalu - 2717 more tests run then purchased
Rachel George - 1080 more tests run then purchased
These three we feel need to be sent the warning and the chance to come clean and settle up.

In the review we have also noticed a spike in Lab Confirmations. In the past year the confirmation rate has more then doubled. (This is outside the range that would be expected and that labs have seen from others.) Because we provide a bundled price, we suspect, but cannot prove, that nonLabb POCT is used and if positive put into our cup and sent to lab. This has got to stop. And another reason why they are not going to be given till July 31 to get compliant. They must do it now.

Franchises will be reminded of the Positive rate build into the bundled pricing. If they go over this rate then they will be billed. (This will help prevent use of outside tests and then transfer to our cups.)

Come July 31 we are going to begin to track purchases, results entered and inventory levels at sites. This will be done on a random basis. If we see any pattern that would lead us to believe they are using nonLabb POCT then we provide that to you and expect home office support of a full audit as described above.

Your language in your email would also be included in the email along with the above.
Only with the threat of losing their business can the policy have any force and any new agreement have force.

We also would ask to put in and have home office support that we have the right under the agreement to do onsite inspections - without notice - to confirm and ensure no products that are banned are being used.

Lastly, for all practical purposes - with the exception of the three names above that appear to be the major violators - we are offering amnesty to the franchisees. They cease and desist their violations now and do not violate in the future. Just the three listed have cost LABB $60-70K this year. (Maybe more if our belief they were using our kits for confirmation only) That extrapolated out over all the franchises could amount to hundreds of thousands in lost revenue this year alone. With that in mind we have mentioned before that it was our belief that you guys should also be concerned about the lost royalties due to nonLabb product use. Thus, we are will to provide this "amnesty" for past transgressions - provided that Fastest Labs corporate also provides a similar amnesty for transgressions revealed as a result of information given to or learned through this exercise.

We know we cant stop it all, but we are going to make every effort to stop this practice now. The new platform will also have things build in to further prevent this in the future.

Let me know your thoughts on above compromise and I will draft a new memo. I want something going to every franchise Monday. And to the above three on Monday also.

Jeff

Outlook

## Re: Followup on Calls and Memo

**From** Matt Kunz <matt@fastestlabs.com>
**Date** Sat 7/11/2026 11:36 AM
**To** Jeff Konecke <jeff.Konecke@labb.com>
**Cc** John Smith <john@fastestlabs.com>

Jeff,

Okay, we have to word this carefully to protect our rights under the franchise agreement. Go ahead and revise the memo and send it over.

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Friday, July 10, 2026 at 6:19 PM
**To:** Matt Kunz <matt@fastestlabs.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** Re: Followup on Calls and Memo

Hi Matt

Concerning the audit. Thisnis specific to data or info derived from us. Basically if we can't use the data we found then reciprocal. Not taking away anything you do on your own or in any other aspect of your business.
Not looking to take ability for you to enforce your stuff.

Jeff

Get Outlook for iOS

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Friday, 10 July 2026 18:20:54
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** Re: Followup on Calls and Memo

Jeff,

I'd like to see this written up in a revised memo.

Couple points.

- I'm fine moving the date to immediate compliance expectation.
- I'm also fine leaving in the unannounced audits; however, I don't think you realize how much of a pain in the butt and expense doing them really is. But the threat should be enough to help with compliance.
- Send me the data on the three identified and will begin the audit notification process. Just a heads up, our franchise agreement gives them 30 days to gather and present requested information.
    - Luis is in the middle of a transfer that will close soon.
- Regarding turning off Direct Read, while I understand the reasoning, this will affect remote onsite so the process to turn it on needs to be quick and efficient.
- We cannot agree to amnesty for lost royalties, once that is said, we lose the agreement given right to audit anyone prior to the date of this notice. We have an ongoing random and select audit practice that specifically looks for unreported revenue.

Once we have the updated notice, we can get it queued up for a late Monday afternoon send.

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105

San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Friday, July 10, 2026 at 2:31 PM
**To:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Followup on Calls and Memo

HI Matt

Here is were we are at.

First the items related to the LAB Violations are removed from the conversation right now. We have the agreement in place and as long as that is completed in a timely manner as layed out that issue is solved. There was the thought to collect that so the $100K does not come from corporate - but we are fine leaving topic to rest.

Second - the issue of the POCT compliance.  We can be in agreement that the timeline given for self reporting, auditing etc is short and potentially unreasonable. (Even though I have seen and been subject to shorter.) But giving them until July 31 to continue to violate the agreement and use outside POCT products is not reasonable either. When you break the law and the cops catch you you, you have to stop. Then not 19 days later.

Thus, the memo going out has to include that they must immediately cease and desist using any other non-LABB POCT device. IF they have nonLABB POCT in their facilities, they must be disposed of. (Cost of violation.)

We are turning off direct read capability in the system. This eliminated the potential to use nonLabb products. (Unless of course they work completely off line and does not enter or record the result anywhere else.) IF there is a site that legitimately needs direct read, they can call and request it. We will then look at their history and as long as it does not show a pattern that looks like using nonLabb products we will turn it back on.

In the agreement, we have the right to audit if we feel there is an issue. Home office will support us in those efforts and if a violation is suspected moving forward. Audits are subject to a full review back to the start date.

Three of the violators that are "standout violators" we do feel need to be pursued.
Louis Ramariz - 1133 more tests run then purchased
Ilan Dascalu - 2717 more tests run then purchased
Rachel George - 1080 more tests run then purchased
These three we feel need to be sent the warning and the chance to come clean and settle up.

In the review we have also noticed a spike in Lab Confirmations. In the past year the confirmation rate has more then doubled. (This is outside the range that would be expected and that labs have seen from others.) Because we provide a bundled price, we suspect, but cannot prove, that nonLabb POCT is used

and if positive put into our cup and sent to lab. This has got to stop. And another reason why they are not going to be given till July 31 to get compliant. They must do it now.

Franchises will be reminded of the Positive rate build into the bundled pricing. If they go over this rate then they will be billed. (This will help prevent use of outside tests and then transfer to our cups.)

Come July 31 we are going to begin to track purchases, results entered and inventory levels at sites. This will be done on a random basis. If we see any pattern that would lead us to believe they are using nonLabb POCT then we provide that to you and expect home office support of a full audit as described above.

Your language in your email would also be included in the email along with the above.
Only with the threat of losing their business can the policy have any force and any new agreement have force.

We also would ask to put in and have home office support that we have the right under the agreement to do onsite inspections - without notice - to confirm and ensure no products that are banned are being used.

Lastly, for all practical purposes - with the exception of the three names above that appear to be the major violators - we are offering amnesty to the franchisees. They cease and desist their violations now and do not violate in the future. Just the three listed have cost LABB $60-70K this year. (Maybe more if our belief they were using our kits for confirmation only) That extrapolated out over all the franchises could amount to hundreds of thousands in lost revenue this year alone. With that in mind we have mentioned before that it was our belief that you guys should also be concerned about the lost royalties due to nonLabb product use. Thus, we are will to provide this "amnesty" for past transgressions - provided that Fastest Labs corporate also provides a similar amnesty for transgressions revealed as a result of information given to or learned through this exercise.

We know we cant stop it all, but we are going to make every effort to stop this practice now. The new platform will also have things build in to further prevent this in the future.

Let me know your thoughts on above compromise and I will draft a new memo. I want something going to every franchise Monday. And to the above three on Monday also.

Jeff

# Exhibit JK-9A

Outlook

## Re: Direct Read

**From** Matt Kunz <matt@fastestlabs.com>
**Date** Wed 7/15/2026 1:45 PM
**To** Jeff Konecke <jeff.Konecke@labb.com>
**Cc** John Smith <john@fastestlabs.com>

Thank you Jeff.

Why would an owner be directed back to me or the Home Office for these request? It's not our policy, nor do we have access to data to make a determination, nor do we have the ability to turn it back on?

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Wednesday, July 15, 2026 at 12:18 PM
**To:** Matt Kunz <matt@fastestlabs.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** Re: Direct Read

I have checked on them and they look good. I have turned them on.

Jeff

Get Outlook for iOS

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Wednesday, 15 July 2026 12:25:57

**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** FW: Direct Read

Jeff,

Unless you have evidence that you can share supporting Cory purchasing outside, can you please turn their direct read back on?

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** "Cory, Christine, & Casey Potts" <potts@fastestlabs.com>
**Date:** Wednesday, July 15, 2026 at 10:15 AM
**To:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Direct Read

Mr. Kunz,
James, with Labb, suggested that i speak directly with you concerning the direct read function. We have only used Labb branded rapid test kits since day 1 of ownership as we were definitely aware of that protocol. We rely on the direct read function during onsite testing for client quarterly randoms (when it is an obvious negative) when we have a line of donors waiting to be tested. Internet or signal strength can be spotty a lot of times during onsites and utilizing the direct read feature for obvious negatives significantly speeds up the process when buffering issues occur, which can happen for several minutes per test or just continue to buffer. Can you enable direct read for specific franchise locations like ours, that have always followed protocol so we are not penalized for the locations that have not? The amount of time and additional administrative work to request any result changes and facilitate the updated result would be innefficient and delay results. Although the majority of our rapids are processed using the camera, direct read is very beneficial at times and a feature that we need to have the option to use. I'm sure it can be confirmed that we only use Labb branded rapid kits by the amount of our Labb supply orders. Thank you for your time.

**It is our pleasure to serve,**

**Cory, Christine, & Casey Potts | Operating Team**
Office: (972) 685-2795

Fax: (972) 685-2692
potts@fastestlabs.com

Image removed by sender.

**Fastest Labs of Addison**
4021 Belt Line Road, Suite 207 | Addison, TX 75001
http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information that is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

# Exhibit JK-9B

Outlook

## Memo to Franchisees

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Mon 7/13/2026 1:30 PM
**To** John Smith <john@fastestlabs.com>
**Cc** Matt Kunz <matt@fastestlabs.com>

1 attachment (113 KB)
POCT_Exclusivity_Notice July 13 2026.pdf;

Hi John

Please see the attached memo.  Please send this out ASAP. (Also since it has deadlines.) We have gotten some calls from franchisees, and this should go out to help and answer questions.

Please let me know if any questions.

Thank You

Jeff

# MEMORANDUM

**TO:** All Fastest Labs Franchisees
**FROM:** Matt Kunz and John Smith, Fastest Labs Home Office
Jeff Konecke, President, Ramsey Diagnostics Corporation, d/b/a Labb
**DATE:** July 13, 2026
**RE:** Adherence to the Agreement between Labb and Fastest Labs Regarding POCT Exclusivity

---

This memorandum is issued jointly by the Fastest Labs Home Office and Labb, and it serves as a formal **cease and desist notice**.

We want to begin by recognizing the strong, long-standing partnership between Fastest Labs and Labb, and the many franchisees who operate every day in full compliance with our agreements. This notice is not a reflection of your effort or your intentions. It concerns a specific contractual requirement that must be honored across the entire network so that every location, and the Fastest Labs brand itself, stays protected. We are writing because that requirement is not being met everywhere, and it needs to be corrected right away.

**Current audit and review**

Labb is conducting internal audits and reviews of the point of care (POCT) testing performed by Fastest Labs franchisees. This work draws on data from multiple sources, including information provided by the Fastest Labs Home Office. The purpose is straightforward: to identify any location that is not operating in compliance with the platform terms of service and with Labb's exclusive supply agreement with Fastest Labs.

The current audit is limited to the past twelve months. Please understand, however, that Labb reserves the right to extend its review to all testing, not only rapid testing, going back to the date of the Agreement in December 2022. Continued non-compliance after this notice may cause both the audit period and its scope to be expanded.

**The requirement**

To leave no room for doubt, the Agreement in force between Labb and Fastest Labs requires that 100 percent of all rapid and lab-based tests used by Fastest Labs and its franchisees be purchased through Labb, exclusively. Purchasing or using POCT products from any other supplier is a serious breach of that Agreement.

If your location is using non-Labb POCT products, please understand what is at stake. This practice exposes both your franchise and Fastest Labs to legal risk, has caused and continues to cause financial harm to Labb, and creates potential liability for everyone involved. In addition, where clients have been told that your facility uses proprietary reader technology, including as described in the Fastest Labs on-hold recordings, delivering something different may amount to a misrepresentation of the services those clients believe they are receiving.

Because of the seriousness of these issues, this memorandum is the final cease and desist notice Labb intends to send before referring the matter to counsel.

**Required immediate action**

To prevent further harm, every location that is out of compliance must take the following steps without delay:

1. Stop using any non-Labb POCT products or devices. There are no exceptions. Continued use after receipt of this notice will require Labb to take further steps to prevent additional violations.
2. Remove all non-Labb POCT products from service. They may not be used with or without the Labb Station or Lab Fusion systems.
3. Inform your staff of this notice and instruct them that only Labb-branded (or Lab Fusion) POCT products purchased from Labb may be used.
4. If you do not have Labb inventory on hand, place an order immediately so that your supply matches your testing volume.

**System changes**

To ensure that only POCT products purchased from Labb are used, the following changes are being made within the Labb system, effective immediately:

5. All POCTs must be scanned into the system. Any test entered without being scanned will be treated as a violation. This includes uploading rapid test result documentation. Use of the document upload feature for this purpose will result in suspension of that feature.
6. Direct Read capability has been turned off for all Fastest Labs locations. Only results read from a device purchased from Labb will be accepted by the system.
7. As permitted under the Agreement, Labb will begin random, periodic compliance reviews. Where discrepancies are found, Labb will conduct a comprehensive audit covering the full term of the current contract. This includes sending "secret shoppers" into franchise locations to verify which rapid test kits are being used.

**Compliance and consequences**

Compliance with the Agreement is mandatory. Labb will begin tracking compliance effective immediately. After today, if any non-Labb POCT product is found to have been used at your facility, that facility will be subject to a full comprehensive audit covering the period from December 2022 forward (approximately three and a half years). Violations identified in that audit could result in:

- Labb seeking the full purchase price for every rapid test kit found to be in violation.
- Termination of your Channel Partner Program (CPP) Agreement for cause, and/or suspension from future CPP programs.
- Formal notice that your franchise is in default of its Agreement with Labb and of the terms of your Franchise Agreement. A failure to cure that default could lead to further defaults and, ultimately, to termination of your Franchise Agreement.

**A clear path forward**

We would much rather help you come into compliance than pursue any of the steps described above. If your location is affected, the fastest way to resolve this is simple: stop using non-Labb products today and place your Labb order. Labb is ready to accept your order and ship POCT products to your facility right away.

If you have any questions about this notice, please contact Labb or the Fastest Labs Home Office. We are here to help you get this right.

Respectfully,

Jeff Konecke
President
Ramsey Diagnostics Corporation, d/b/a Labb

Outlook

## Re: Proposed Term Sheet - ONE by LABB - Workplace

**From** John Smith <john@fastestlabs.com>
**Date** Mon 7/13/2026 1:36 PM
**To** Jeff Konecke <jeff.Konecke@labb.com>

Yes I did. Got both. Thank you. Reviewing amendment now. I expect to get it out EOD as discussed.

Thanks!

John Smith
Fas-Tes Franchise Systems

On Mon, Jul 13, 2026 at 12:32 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Thanks John
>
> Also I just sent over the memo to go out to franchisees.
>
> Lastly, did you see the document I sent over from the Franchisee that created a result form that shows a nonLABB POCT test?
>
> Jeff
>
> ---
>
> **From:** John Smith <john@fastestlabs.com>
> **Sent:** Monday, July 13, 2026 1:28 PM
> **To:** Jeff Konecke <jeff.Konecke@labb.com>
> **Cc:** Matt Kunz <matt@fastestlabs.com>; James Ramsey <james@labb.com>
> **Subject:** Re: Proposed Term Sheet - ONE by LABB - Workplace
>
> Thanks Jeff - I'll begin reviewing this and get with Matt and get back to you. He and I won't be able to sit down until tomorrow afternoon to discuss. Plan to have comments to you by EOD tomorrow.
>
> **It is our pleasure to serve,**
>
> **John Smith** / Executive Vice President
>
> Office: 210-641-2058
>
> **Fas-Tes Franchise Systems LLC**
>
> 5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
> www.fastestlabs.com
>
> https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Mon, Jul 13, 2026 at 8:14 AM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi Matt and John
>
> Here is our first cut on the Term Sheet. Please take a look and comment, add etc. I have sent this as a red line so please keep that on and track changes.
>
> Thank You
>
> Jeff

Outlook

## Final Memo

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Mon 7/13/2026 3:49 PM
**To** John Smith <john@fastestlabs.com>; Matt Kunz <matt@fastestlabs.com>

1 attachment (113 KB)
POCT_Exclusivity_Notice Final.pdf;

Hi John

Here is memo.  Please send tis ASAP.

I took out the two words.

Jeff

# MEMORANDUM

**TO:** All Fastest Labs Franchisees
**FROM:** Matt Kunz and John Smith, Fastest Labs Home Office
Jeff Konecke, President, Ramsey Diagnostics Corporation, d/b/a Labb
**DATE:** July 13, 2026
**RE:** Adherence to the Agreement between Labb and Fastest Labs Regarding POCT Exclusivity

---

This memorandum is issued jointly by the Fastest Labs Home Office and Labb, and it serves as a formal **cease and desist notice**.

We want to begin by recognizing the strong, long-standing partnership between Fastest Labs and Labb, and the many franchisees who operate every day in full compliance with our agreements. This notice is not a reflection of your effort or your intentions. It concerns a specific contractual requirement that must be honored across the entire network so that every location, and the Fastest Labs brand itself, stays protected. We are writing because that requirement is not being met everywhere, and it needs to be corrected right away.

**Current audit and review**

Labb is conducting internal audits and reviews of the point of care (POCT) testing performed by Fastest Labs franchisees. This work draws on data from multiple sources, including information provided by the Fastest Labs Home Office. The purpose is straightforward: to identify any location that is not operating in compliance with the platform terms of service and with Labb's exclusive supply agreement with Fastest Labs.

The current audit is limited to the past twelve months. Please understand, however, that Labb reserves the right to extend its review to all testing, not only rapid testing, going back to the date of the Agreement in December 2022. Continued non-compliance after this notice may cause both the audit period and its scope to be expanded.

**The requirement**

To leave no room for doubt, the Agreement in force between Labb and Fastest Labs requires that 100 percent of all rapid tests used by Fastest Labs and its franchisees be purchased through Labb, exclusively. Purchasing or using POCT products from any other supplier is a serious breach of that Agreement.

If your location is using non-Labb POCT products, please understand what is at stake. This practice exposes both your franchise and Fastest Labs to legal risk, has caused and continues to cause financial harm to Labb, and creates potential liability for everyone involved. In addition, where clients have been told that your facility uses proprietary reader technology, including as described in the Fastest Labs on-hold recordings, delivering something different may amount to a misrepresentation of the services those clients believe they are receiving.

Because of the seriousness of these issues, this memorandum is the final cease and desist notice Labb intends to send before referring the matter to counsel.

**Required immediate action**

To prevent further harm, every location that is out of compliance must take the following steps without delay:

1. Stop using any non-Labb POCT products or devices. There are no exceptions. Continued use after receipt of this notice will require Labb to take further steps to prevent additional violations.
2. Remove all non-Labb POCT products from service. They may not be used with or without the Labb Station or Lab Fusion systems.
3. Inform your staff of this notice and instruct them that only Labb-branded (or Lab Fusion) POCT products purchased from Labb may be used.
4. If you do not have Labb inventory on hand, place an order immediately so that your supply matches your testing volume.

**System changes**

To ensure that only POCT products purchased from Labb are used, the following changes are being made within the Labb system, effective immediately:

5. All POCTs must be scanned into the system. Any test entered without being scanned will be treated as a violation. This includes uploading rapid test result documentation. Use of the document upload feature for this purpose will result in suspension of that feature.
6. Direct Read capability has been turned off for all Fastest Labs locations. Only results read from a device purchased from Labb will be accepted by the system.
7. As permitted under the Agreement, Labb will begin random, periodic compliance reviews. Where discrepancies are found, Labb will conduct a comprehensive audit covering the full term of the current contract. This includes sending "secret shoppers" into franchise locations to verify which rapid test kits are being used.

**Compliance and consequences**

Compliance with the Agreement is mandatory. Labb will begin tracking compliance effective immediately. After today, if any non-Labb POCT product is found to have been used at your facility, that facility will be subject to a full comprehensive audit covering the period from December 2022 forward (approximately three and a half years). Violations identified in that audit could result in:

- Labb seeking the full purchase price for every rapid test kit found to be in violation.
- Termination of your Channel Partner Program (CPP) Agreement for cause, and/or suspension from future CPP programs.
- Formal notice that your franchise is in default of its Agreement with Labb and of the terms of your Franchise Agreement. A failure to cure that default could lead to further defaults and, ultimately, to termination of your Franchise Agreement.

**A clear path forward**

We would much rather help you come into compliance than pursue any of the steps described above. If your location is affected, the fastest way to resolve this is simple: stop using non-Labb products today and place your Labb order. Labb is ready to accept your order and ship POCT products to your facility right away.

If you have any questions about this notice, please contact Labb or the Fastest Labs Home Office. We are here to help you get this right.

Respectfully,

Jeff Konecke
President
Ramsey Diagnostics Corporation, d/b/a Labb

Outlook

## Revised Final with FROM Updated.

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Mon 7/13/2026 4:03 PM
**To** Matt Kunz <matt@fastestlabs.com>; John Smith <john@fastestlabs.com>

1 attachment (114 KB)
POCT_Exclusivity_Notice Final.pdf;

See attached

Change made

Jeff

# MEMORANDUM

**TO:** All Fastest Labs Franchisees
**FROM:** Matt Kunz President & CEO Fastest Labs
Jeff Konecke, President, Ramsey Diagnostics Corporation, d/b/a Labb
**DATE:** July 13, 2026
**RE:** Adherence to the Agreement between Labb and Fastest Labs Regarding POCT Exclusivity

---

This memorandum is issued jointly by the Fastest Labs Home Office and Labb, and it serves as a formal **cease and desist notice**.

We want to begin by recognizing the strong, long-standing partnership between Fastest Labs and Labb, and the many franchisees who operate every day in full compliance with our agreements. This notice is not a reflection of your effort or your intentions. It concerns a specific contractual requirement that must be honored across the entire network so that every location, and the Fastest Labs brand itself, stays protected. We are writing because that requirement is not being met everywhere, and it needs to be corrected right away.

**Current audit and review**

Labb is conducting internal audits and reviews of the point of care (POCT) testing performed by Fastest Labs franchisees. This work draws on data from multiple sources, including information provided by the Fastest Labs Home Office. The purpose is straightforward: to identify any location that is not operating in compliance with the platform terms of service and with Labb's exclusive supply agreement with Fastest Labs.

The current audit is limited to the past twelve months. Please understand, however, that Labb reserves the right to extend its review to all testing, not only rapid testing, going back to the date of the Agreement in December 2022. Continued non-compliance after this notice may cause both the audit period and its scope to be expanded.

**The requirement**

To leave no room for doubt, the Agreement in force between Labb and Fastest Labs requires that 100 percent of all rapid tests used by Fastest Labs and its franchisees be purchased through Labb, exclusively. Purchasing or using POCT products from any other supplier is a serious breach of that Agreement.

If your location is using non-Labb POCT products, please understand what is at stake. This practice exposes both your franchise and Fastest Labs to legal risk, has caused and continues to cause financial harm to Labb, and creates potential liability for everyone involved. In addition, where clients have been told that your facility uses proprietary reader technology, including as described in the Fastest Labs on-hold recordings, delivering something different may amount to a misrepresentation of the services those clients believe they are receiving.

Because of the seriousness of these issues, this memorandum is the final cease and desist notice Labb intends to send before referring the matter to counsel.

**Required immediate action**

To prevent further harm, every location that is out of compliance must take the following steps without delay:

1. Stop using any non-Labb POCT products or devices. There are no exceptions. Continued use after receipt of this notice will require Labb to take further steps to prevent additional violations.
2. Remove all non-Labb POCT products from service. They may not be used with or without the Labb Station or Lab Fusion systems.
3. Inform your staff of this notice and instruct them that only Labb-branded (or Lab Fusion) POCT products purchased from Labb may be used.
4. If you do not have Labb inventory on hand, place an order immediately so that your supply matches your testing volume.

**System changes**

To ensure that only POCT products purchased from Labb are used, the following changes are being made within the Labb system, effective immediately:

5. All POCTs must be scanned into the system. Any test entered without being scanned will be treated as a violation. This includes uploading rapid test result documentation. Use of the document upload feature for this purpose will result in suspension of that feature.
6. Direct Read capability has been turned off for all Fastest Labs locations. Only results read from a device purchased from Labb will be accepted by the system.
7. As permitted under the Agreement, Labb will begin random, periodic compliance reviews. Where discrepancies are found, Labb will conduct a comprehensive audit covering the full term of the current contract. This includes sending "secret shoppers" into franchise locations to verify which rapid test kits are being used.

**Compliance and consequences**

Compliance with the Agreement is mandatory. Labb will begin tracking compliance effective immediately. After today, if any non-Labb POCT product is found to have been used at your facility, that facility will be subject to a full comprehensive audit covering the period from December 2022 forward (approximately three and a half years). Violations identified in that audit could result in:

- Labb seeking the full purchase price for every rapid test kit found to be in violation.
- Termination of your Channel Partner Program (CPP) Agreement for cause, and/or suspension from future CPP programs.
- Formal notice that your franchise is in default of its Agreement with Labb and of the terms of your Franchise Agreement. A failure to cure that default could lead to further defaults and, ultimately, to termination of your Franchise Agreement.

**A clear path forward**

We would much rather help you come into compliance than pursue any of the steps described above. If your location is affected, the fastest way to resolve this is simple: stop using non-Labb products today and place your Labb order. Labb is ready to accept your order and ship POCT products to your facility right away.

If you have any questions about this notice, please contact Labb or the Fastest Labs Home Office. We are here to help you get this right.

Respectfully,

Jeff Konecke
President
Ramsey Diagnostics Corporation, d/b/a Labb

Outlook

## Final Memo

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Mon 7/13/2026 4:05 PM
**To** Matt Kunz <matt@fastestlabs.com>; John Smith <john@fastestlabs.com>
**Cc** James Ramsey <james@labb.com>

1 attachment (114 KB)
POCT_Exclusivity_Notice Final.pdf;

See attached.

Not sure if attached correctly to last email.

Jeff

# MEMORANDUM

**TO:** All Fastest Labs Franchisees
**FROM:** Matt Kunz President & CEO Fastest Labs
Jeff Konecke, President, Ramsey Diagnostics Corporation, d/b/a Labb
**DATE:** July 13, 2026
**RE:** Adherence to the Agreement between Labb and Fastest Labs Regarding POCT Exclusivity

---

This memorandum is issued jointly by the Fastest Labs Home Office and Labb, and it serves as a formal **cease and desist notice**.

We want to begin by recognizing the strong, long-standing partnership between Fastest Labs and Labb, and the many franchisees who operate every day in full compliance with our agreements. This notice is not a reflection of your effort or your intentions. It concerns a specific contractual requirement that must be honored across the entire network so that every location, and the Fastest Labs brand itself, stays protected. We are writing because that requirement is not being met everywhere, and it needs to be corrected right away.

**Current audit and review**

Labb is conducting internal audits and reviews of the point of care (POCT) testing performed by Fastest Labs franchisees. This work draws on data from multiple sources, including information provided by the Fastest Labs Home Office. The purpose is straightforward: to identify any location that is not operating in compliance with the platform terms of service and with Labb's exclusive supply agreement with Fastest Labs.

The current audit is limited to the past twelve months. Please understand, however, that Labb reserves the right to extend its review to all testing, not only rapid testing, going back to the date of the Agreement in December 2022. Continued non-compliance after this notice may cause both the audit period and its scope to be expanded.

**The requirement**

To leave no room for doubt, the Agreement in force between Labb and Fastest Labs requires that 100 percent of all rapid tests used by Fastest Labs and its franchisees be purchased through Labb, exclusively. Purchasing or using POCT products from any other supplier is a serious breach of that Agreement.

If your location is using non-Labb POCT products, please understand what is at stake. This practice exposes both your franchise and Fastest Labs to legal risk, has caused and continues to cause financial harm to Labb, and creates potential liability for everyone involved. In addition, where clients have been told that your facility uses proprietary reader technology, including as described in the Fastest Labs on-hold recordings, delivering something different may amount to a misrepresentation of the services those clients believe they are receiving.

Because of the seriousness of these issues, this memorandum is the final cease and desist notice Labb intends to send before referring the matter to counsel.

**Required immediate action**

To prevent further harm, every location that is out of compliance must take the following steps without delay:

1. Stop using any non-Labb POCT products or devices. There are no exceptions. Continued use after receipt of this notice will require Labb to take further steps to prevent additional violations.
2. Remove all non-Labb POCT products from service. They may not be used with or without the Labb Station or Lab Fusion systems.
3. Inform your staff of this notice and instruct them that only Labb-branded (or Lab Fusion) POCT products purchased from Labb may be used.
4. If you do not have Labb inventory on hand, place an order immediately so that your supply matches your testing volume.

**System changes**

To ensure that only POCT products purchased from Labb are used, the following changes are being made within the Labb system, effective immediately:

5. All POCTs must be scanned into the system. Any test entered without being scanned will be treated as a violation. This includes uploading rapid test result documentation. Use of the document upload feature for this purpose will result in suspension of that feature.
6. Direct Read capability has been turned off for all Fastest Labs locations. Only results read from a device purchased from Labb will be accepted by the system.
7. As permitted under the Agreement, Labb will begin random, periodic compliance reviews. Where discrepancies are found, Labb will conduct a comprehensive audit covering the full term of the current contract. This includes sending “secret shoppers” into franchise locations to verify which rapid test kits are being used.

**Compliance and consequences**

Compliance with the Agreement is mandatory. Labb will begin tracking compliance effective immediately. After today, if any non-Labb POCT product is found to have been used at your facility, that facility will be subject to a full comprehensive audit covering the period from December 2022 forward (approximately three and a half years). Violations identified in that audit could result in:

- Labb seeking the full purchase price for every rapid test kit found to be in violation.
- Termination of your Channel Partner Program (CPP) Agreement for cause, and/or suspension from future CPP programs.
- Formal notice that your franchise is in default of its Agreement with Labb and of the terms of your Franchise Agreement. A failure to cure that default could lead to further defaults and, ultimately, to termination of your Franchise Agreement.

**A clear path forward**

We would much rather help you come into compliance than pursue any of the steps described above. If your location is affected, the fastest way to resolve this is simple: stop using non-Labb products today and place your Labb order. Labb is ready to accept your order and ship POCT products to your facility right away.

If you have any questions about this notice, please contact Labb or the Fastest Labs Home Office. We are here to help you get this right.

Respectfully,

Jeff Konecke
President
Ramsey Diagnostics Corporation, d/b/a Labb

Outlook

## Memo - Final

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Mon 7/13/2026 4:13 PM
**To** John Smith <john@fastestlabs.com>; Matt Kunz <matt@fastestlabs.com>
**Cc** James Ramsey <james@labb.com>

1 attachment (114 KB)
POCT_Exclusivity_Notice Final.pdf;

Here is final one more time with Matt added as signer at bottom.

Thank You

Jeff Konecke

# MEMORANDUM

**TO:** All Fastest Labs Franchisees
**FROM:** Matt Kunz President & CEO Fastest Labs
Jeff Konecke, President, Ramsey Diagnostics Corporation, d/b/a Labb
**DATE:** July 13, 2026
**RE:** Adherence to the Agreement between Labb and Fastest Labs Regarding POCT Exclusivity

---

This memorandum is issued jointly by the Fastest Labs Home Office and Labb, and it serves as a formal **cease and desist notice**.

We want to begin by recognizing the strong, long-standing partnership between Fastest Labs and Labb, and the many franchisees who operate every day in full compliance with our agreements. This notice is not a reflection of your effort or your intentions. It concerns a specific contractual requirement that must be honored across the entire network so that every location, and the Fastest Labs brand itself, stays protected. We are writing because that requirement is not being met everywhere, and it needs to be corrected right away.

**Current audit and review**

Labb is conducting internal audits and reviews of the point of care (POCT) testing performed by Fastest Labs franchisees. This work draws on data from multiple sources, including information provided by the Fastest Labs Home Office. The purpose is straightforward: to identify any location that is not operating in compliance with the platform terms of service and with Labb's exclusive supply agreement with Fastest Labs.

The current audit is limited to the past twelve months. Please understand, however, that Labb reserves the right to extend its review to all testing, not only rapid testing, going back to the date of the Agreement in December 2022. Continued non-compliance after this notice may cause both the audit period and its scope to be expanded.

**The requirement**

To leave no room for doubt, the Agreement in force between Labb and Fastest Labs requires that 100 percent of all rapid tests used by Fastest Labs and its franchisees be purchased through Labb, exclusively. Purchasing or using POCT products from any other supplier is a serious breach of that Agreement.

If your location is using non-Labb POCT products, please understand what is at stake. This practice exposes both your franchise and Fastest Labs to legal risk, has caused and continues to cause financial harm to Labb, and creates potential liability for everyone involved. In addition, where clients have been told that your facility uses proprietary reader technology, including as described in the Fastest Labs on-hold recordings, delivering something different may amount to a misrepresentation of the services those clients believe they are receiving.

Because of the seriousness of these issues, this memorandum is the final cease and desist notice Labb intends to send before referring the matter to counsel.

**Required immediate action**

To prevent further harm, every location that is out of compliance must take the following steps without delay:

1. Stop using any non-Labb POCT products or devices. There are no exceptions. Continued use after receipt of this notice will require Labb to take further steps to prevent additional violations.
2. Remove all non-Labb POCT products from service. They may not be used with or without the Labb Station or Lab Fusion systems.
3. Inform your staff of this notice and instruct them that only Labb-branded (or Lab Fusion) POCT products purchased from Labb may be used.
4. If you do not have Labb inventory on hand, place an order immediately so that your supply matches your testing volume.

**System changes**

To ensure that only POCT products purchased from Labb are used, the following changes are being made within the Labb system, effective immediately:

5. All POCTs must be scanned into the system. Any test entered without being scanned will be treated as a violation. This includes uploading rapid test result documentation. Use of the document upload feature for this purpose will result in suspension of that feature.
6. Direct Read capability has been turned off for all Fastest Labs locations. Only results read from a device purchased from Labb will be accepted by the system.
7. As permitted under the Agreement, Labb will begin random, periodic compliance reviews. Where discrepancies are found, Labb will conduct a comprehensive audit covering the full term of the current contract. This includes sending “secret shoppers” into franchise locations to verify which rapid test kits are being used.

**Compliance and consequences**

Compliance with the Agreement is mandatory. Labb will begin tracking compliance effective immediately. After today, if any non-Labb POCT product is found to have been used at your facility, that facility will be subject to a full comprehensive audit covering the period from December 2022 forward (approximately three and a half years). Violations identified in that audit could result in:

- Labb seeking the full purchase price for every rapid test kit found to be in violation.
- Termination of your Channel Partner Program (CPP) Agreement for cause, and/or suspension from future CPP programs.
- Formal notice that your franchise is in default of its Agreement with Labb and of the terms of your Franchise Agreement. A failure to cure that default could lead to further defaults and, ultimately, to termination of your Franchise Agreement.

**A clear path forward**

We would much rather help you come into compliance than pursue any of the steps described above. If your location is affected, the fastest way to resolve this is simple: stop using non-Labb products today and place your Labb order. Labb is ready to accept your order and ship POCT products to your facility right away.

If you have any questions about this notice, please contact Labb or the Fastest Labs Home Office. We are here to help you get this right.

Respectfully,

Jeff Konecke
President
Ramsey Diagnostics Corporation, d/b/a Labb

And

Matt Kunz
President & CEO
Fastest Labs

Outlook

## Memo

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Mon 7/13/2026 4:39 PM
**To** John Smith <john@fastestlabs.com>

Hi

Please let me know when the memo goes out so I can let Karen and Kelly know.

Thank you
Jeff

Get Outlook for iOS

Outlook

## Re: Memo

**From** John Smith <john@fastestlabs.com>
**Date** Mon 7/13/2026 4:46 PM
**To** Jeff Konecke <jeff.Konecke@labb.com>; Matt Kunz <matt@fastestlabs.com>

Jeff - email was just sent. It was BCC'd to every Fastest Labs email address.

Thank you -

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Mon, Jul 13, 2026 at 3:39 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi
>
> Please let me know when the memo goes out so I can let Karen and Kelly know.
>
> Thank you
> Jeff
>
> Get Outlook for iOS

# Exhibit JK-10

Outlook

## Follow-up on call

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Thu 7/2/2026 12:22 PM
**To** Matt Kunz <matt@fastestlabs.com>; John Smith <john@fastestlabs.com>

Good morning,

After our call this morning, I sat down with Kelly (Finance), James, and Karen to fully understand the scope of the issue before responding with a revised proposal. What Kelly and Karen laid out for me, frankly, was striking.

A few examples:

- Your Henderson franchisee logged 2,700 POC tests into the system over the past 12 months, but zero POC tests were purchased from LABB during that period. That was just one of his locations.
- Multiple franchisees with monthly revenues over $30K paid us only the $109 platform fee - no product purchases, no lab work, nothing beyond that.
- Franchisees in Seattle, New Jersey, and Houston, with monthly revenues in the $40 - 90K range, paid us only $400 - $600/month. Net of the $109 fee, that implies roughly 25 tests a month were done. Far below what the revenue supports.
- Multiple franchisees have told Karen that they use USDTL for all their hair simply because it is cheaper and if we lowered our price, they would use us.

I don't point out the above to relitigate the whys and wherefores for this occurring. Nor to re-argue the technical side of what is or isn't permitted by the agreement. (Those discussions and arguments have already been done.) But the data supplied, clearly shows that while many of your franchisees are operating - for the most part - within the terms of the Agreement, ( I suspect you already know who these franchisees are.) it's just as clear that a significant number are not. (I suspect you have a pretty good sense of who those franchisees are also.) In the end, the franchisees who aren't compliant are costing LABB real revenue, and ultimately those costs get absorbed by the franchisees who are playing by the rules.

In coming to an equitable solution, the scale of the problem does matter. Fastest Labs' average monthly revenue over the trailing 12 months is roughly $3M. Even if this issue is only half as widespread as I believe the data suggests, LABB is losing somewhere between $100K and $170K per month.

With that context, and taking into account Matt's point about giving franchisees proper notice before any price increase and needing to delay any increase until September 1, 2026, I'm prepared to modify our offer as follows:

1. **Pricing.** Effective September 1, 2026, monthly software pricing for the existing platform - for each Franchise location - increases to $249.00 per month, plus $149.00 per month for every $10K of revenue.
    - Fastest Labs will notify franchisees of this change within 5 days of this agreement.
    - LABB will follow up with its own notification within 3 days of your notification date.
2. **Platform continuity.** This pricing structure carries forward to the new ONE by LABB platform (and NEW AGREEMENT) as well as the current platform, so that franchisees do not see any additional price increase as the NEW platform launches. (Excluding if FASTEST LABS Corporate wants some additional capability and it is mutually agreed that it will result in an increased monthly cost.)
3. **Past and interim damages.** To resolve damages incurred to date and those we believe we are suffering now and through full implementation of the new pricing in September, Fastest Labs agrees to pay LABB

$100,000. (This payment also will resolve all claims LABB might have to any past damages we may feel have occurred.) To ease the impact, we're willing to spread this payment over four months.

4. **Going forward.** Once the above is agreed and implemeted, franchisees are free to use any services or labs they choose without being in violation of the current Agreement - with the exception of POCT, which remains exclusive to LABB per the terms of the current Agreement.

Matt, John - I believe this is a fair compromise and resolution given everything the data shows, and it lets us move past this and focus on finalizing the new Agreement and launching ONE by LABB.

If you're in agreement, let me know and I'll have the letter of agreement drafted.

Thank you,
Jeff Konecke
President — LABB

Outlook

## Re: Follow-up on call

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Thu 7/2/2026 6:01 PM
**To** Matt Kunz <matt@fastestlabs.com>

Hi Matt

Yes I am for a call. But no computer for teams or zoom.

Jeff

Get [Outlook for iOS]

---

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Thursday, 02 July 2026 17:03:16
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** John Smith <john@fastestlabs.com>
**Subject:** Re: Follow-up on call

Jeff,

I just tried to call you but got voicemail and message saying the mailbox was full.  Are you available for a quick call?

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Thursday, July 2, 2026 at 1:15 PM
**To:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Follow-up on call

Thank you Matt. I appreciate your attention to this and to getting this "out to bed" before the weekend.

Jeff

---

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Thursday, July 2, 2026 1:41 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>; John Smith <john@fastestlabs.com>
**Subject:** Re: Follow-up on call

Jeff,

Thank you for sending this over. I am circling up on our side at 3 pm today CT. That is the earliest I can get everyone together. I expect to get back to you before the end of the day.

Thank you,

**Matt Kunz** / President & CEO
Office: 210-641-2058
Cell: 815-739-1218
matt@fastestlabs.com
Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd
Suite 105
San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

**From:** Jeff Konecke <jeff.Konecke@labb.com>
**Date:** Thursday, July 2, 2026 at 11:22 AM
**To:** Matt Kunz <matt@fastestlabs.com>, John Smith <john@fastestlabs.com>
**Subject:** Follow-up on call

Good morning,

After our call this morning, I sat down with Kelly (Finance), James, and Karen to fully understand the scope of the issue before responding with a revised proposal. What Kelly and Karen laid out for me, frankly, was striking.

A few examples:

- Your Henderson franchisee logged 2,700 POC tests into the system over the past 12 months, but zero POC tests were purchased from LABB during that period. That was just one of his locations.
- Multiple franchisees with monthly revenues over $30K paid us only the $109 platform fee - no product purchases, no lab work, nothing beyond that.
- Franchisees in Seattle, New Jersey, and Houston, with monthly revenues in the $40 - 90K range, paid us only $400 - $600/month. Net of the $109 fee, that implies roughly 25 tests a month were done. Far below what the revenue supports.
- Multiple franchisees have told Karen that they use USDTL for all their hair simply because it is cheaper and if we lowered our price, they would use us.

I don't point out the above to relitigate the whys and wherefores for this occurring. Nor to re-argue the technical side of what is or isn't permitted by the agreement. (Those discussions and arguments have already been done.) But the data supplied, clearly shows that while many of your franchisees are operating - for the most part - within the terms of the Agreement, ( I suspect you already know who these franchisees are.) it's just as clear that a significant number are not. (I suspect you have a pretty good sense of who those franchisees are also.) In the end, the franchisees who aren't compliant are costing LABB real revenue, and ultimately those costs get absorbed by the franchisees who are playing by the rules.

In coming to an equitable solution, the scale of the problem does matter. Fastest Labs' average monthly revenue over the trailing 12 months is roughly $3M. Even if this issue is only half as widespread as I believe the data suggests, LABB is losing somewhere between $100K and $170K per month.

With that context, and taking into account Matt's point about giving franchisees proper notice before any price increase and needing to delay any increase until September 1, 2026, I'm prepared to modify our offer as follows:

1. **Pricing.** Effective September 1, 2026, monthly software pricing for the existing platform - for each Franchise location - increases to $249.00 per month, plus $149.00 per month for every $10K of revenue.
   - Fastest Labs will notify franchisees of this change within 5 days of this agreement.
   - LABB will follow up with its own notification within 3 days of your notification date.
2. **Platform continuity.** This pricing structure carries forward to the new ONE by LABB platform (and NEW AGREEMENT) as well as the current platform, so that franchisees do not see any additional price increase as the NEW platform launches. (Excluding if FASTEST LABS Corporate wants some additional capability and it is mutually agreed that it will result in an increased monthly cost.)
3. **Past and interim damages.** To resolve damages incurred to date and those we believe we are suffering now and through full implementation of the new pricing in September, Fastest Labs agrees to pay LABB $100,000. (This payment also will resolve all claims LABB might have to any

past damages we may feel have occurred.) To ease the impact, we're willing to spread this payment over four months.

4. **Going forward.** Once the above is agreed and implemeted, franchisees are free to use any services or labs they choose without being in violation of the current Agreement - with the exception of POCT, which remains exclusive to LABB per the terms of the current Agreement.

Matt, John - I believe this is a fair compromise and resolution given everything the data shows, and it lets us move past this and focus on finalizing the new Agreement and launching ONE by LABB.

If you're in agreement, let me know and I'll have the letter of agreement drafted.

Thank you,
Jeff Konecke
President — LABB

# Exhibit JK-10A

Outlook

## Followup to Call

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Wed 6/24/2026 6:26 PM
**To** Matt Kunz <matt@fastestlabs.com>; John Smith <john@fastestlabs.com>
**Cc** Kelly Ray <kelly.ray@labb.com>
**Bcc** James Ramsey <james@labb.com>

Good Afternoon Matt and John,

Thank you both for your time this week. I believe our calls have been productive.  We now have a clear picture of where things stand today and a shared understanding of where we are headed.

We have worked through all of the points John raised in his email prior to our first call, as well as the additional items that came up during our conversations. With that groundwork behind us, we will begin drafting a Binding Term Sheet for the ONE by LABB platform and will circulate it to you for comment and discussion.

My goal is to have a finalized term sheet in place by early July, at which point we can move it to legal counsel for formal contract drafting. Time is of the essence, we want to move efficiently through platform review and testing and it is important that the contract be executed and in place at the time ONE by LABB launches to market.

Matt, thank you in advance for providing the franchisee revenue data - monthly, by franchisee, for the trailing twelve months. Once we have that, we will cross-reference it against our platform revenue records to identify franchisees we believe are out of compliance, and who would accordingly be subject to the additional fee of $499.00 per month on top of their current costs.

If you could have that information emailed to both me and Kelly by end of day tomorrow, Wednesday, June 25th, we can review it over the weekend and address the compliance matter promptly, allowing us to move forward with this resolved.

Thank you both again. We are looking forward to getting this across the finish line.

Best regards,

Jeff Konecke
President | LABB

Outlook

## Re: Checking Back on Discussion

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Wed 7/1/2026 7:11 PM
**To** John Smith <john@fastestlabs.com>
**Cc** Matt Kunz <matt@fastestlabs.com>
**Bcc** James Ramsey <james@labb.com>

Good Evening Matt and John,

Thank you for your response and for the effort to work toward a resolution to the situation we are in. That said, I have to respectfully decline the offer as proposed.

Since our conversation, I've had Kelly and Karen continue analyzing the data you provided. Unfortunately, the picture doesn't improve as we look back further - if anything, it gets worse. At this point, the data shows that a significant majority of your franchisees are not operating within the terms of the Agreement. Their operating outside the terms has and is causing LABB significant financial losses. Losses that continue now, even as we try to work towards a resolution.

The offer I presented yesterday was a fair and reasonable path forward given where things stand. It was structured specifically so you could position the increased cost positively with your franchisees, with several provisions built in to help frame that value.

To be clear: under the current contract terms, Fastest Labs franchisees are required to use LABB for all POCT and lab services. The data provided is revealing that a substantial portion of them are not using LABB exclusively per the terms of the agreement. This is a situation that didn't need to happen - since franchisees had the option to bypass certain requirements by paying a $499.00 monthly upcharge in addition to their standard rate. (An option that a couple franchisees did accept.) That option, nor the basic requirement to simply be in full compliance with the agreement has been followed by a large percentage of your franchisees. As a result, LABB has absorbed real financial impact.

Since yesterday's offer didn't work for you, here's what LABB is going to need:

1. Compliance or upcharge, effective July 1 billing**.** Franchisees should either come into full compliance with the Agreement or begin paying the $499.00 monthly upcharge in addition to their standard fees. I'd ask that you notify your franchisees by July 5, 2026, that they must either return to compliance with the terms of the agreement OR begin to pay the agreed upon monthly upcharge.

2. Provide additional historical data. Provide us additional sales/revenue data for franchisees to help us understand the full scope of the problem. I'd also ask that you provide the same data previously shared with LABB, for the periods January-June 2025, all of 2024, and all of 2023.

3. That you sign and return the Authorization of Release of Information sent to you by LABB to allow us to obtain information from certain vendors and allow LABB to conduct a full audit of the franchisees to verify the scope of the problem.

John, I want to be straightforward with you: the current situation we are in is not sustainable. Franchisees have an opbligation to follow the terms of the agreement and the Franchisor has an obligation to enforce those terms if franchisees are not in complaince. I believe the options presented to you - either the new pricing or the upcharge - are fair. Especially since they both are structured to allow

little to no disruption to the franchisees - other then a slight increase in costs. (While giving LABB nothing to address the past harm caused by the lack of compliance.)

I am available tomorrow morning if you have any questions.

Thank you,

Jeff Konecke
President – LABB

---

**From:** John Smith <john@fastestlabs.com>
**Sent:** Wednesday, July 1, 2026 4:14 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Checking Back on Discussion

Jeff,

While, we want to move forward on a new agreement, we have two very different views of the past and the current agreement. I've heard all of your comments, many of which I have heard before. We have a lens of our own that is different than yours. It is not worth our time debating this. Further, it only gets you and I on a worse start than we need to be.

I do not believe that we have sufficient evidence to assume that up to 200 offices are in violation of the agreement. Getting to a legal threshold to make that claim will be difficult. It certainly can't be done in less than 90 days. We also cannot force 250 offices to increase $150 in fees in 14 days, even if they will save most or all of it. The optics of that will destroy the very thing that we are all trying to do together.

I want to reach a solution before you leave EOD on Thursday. In pursuit of this new relationship I'd like to offer $10,000 per month from FTFS until the launch of One by Labb, starting no later than next Friday. The $10,000 would be paid July, August, and September by FTFS. At launch at Conference, we both hope to catch 60% of the franchise with honey - showcasing the new technology. Regardless of what buy in we get, starting January 1, 2027 we will mandate the new fee of $250 per month for One by Labb and $150 per month per $10,000 in revenue for the finance module as we have discussed. The future of October forward is obviously subject to a binding term sheet and full contract being signed. We need to agree to have a contract done by 9/30/2026. Part of that term sheet will include us accepting a substantially complete software package and an agreement upon the core features.

Simple breakdown:
$10,000 from FTFS September, October, November 2026
Launch of One by Labb and system adoption 10/01/2026 - 12/31/2026
Full mandated fees as agreed starting 1/1/2027, with the $250 license fee portion being paid in full by FTFS

Look forward to hearing back from you. I remain excited about the opportunities we have together.
**It is our pleasure to serve,**
**John Smith** / Executive Vice President
Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**
5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

FASTEST LABS® CLEAN FAST TESTING




NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Wed, Jul 1, 2026 at 1:15 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi John
>
> Checking back on when you want to have a call to follow-up on yesterday's call. We are off here on Friday for the 4th of July Holiday and we need to reach resolution on this matter.
>
> Sorry for the pressure.
>
> Jeff

Outlook

## Re: Checking Back on Discussion

**From** John Smith <john@fastestlabs.com>
**Date** Wed 7/1/2026 4:15 PM
**To** Jeff Konecke <jeff.Konecke@labb.com>
**Cc** Matt Kunz <matt@fastestlabs.com>

Jeff,

While, we want to move forward on a new agreement, we have two very different views of the past and the current agreement. I've heard all of your comments, many of which I have heard before. We have a lens of our own that is different than yours. It is not worth our time debating this. Further, it only gets you and I on a worse start than we need to be.

I do not believe that we have sufficient evidence to assume that up to 200 offices are in violation of the agreement. Getting to a legal threshold to make that claim will be difficult. It certainly can't be done in less than 90 days. We also cannot force 250 offices to increase $150 in fees in 14 days, even if they will save most or all of it. The optics of that will destroy the very thing that we are all trying to do together.

I want to reach a solution before you leave EOD on Thursday. In pursuit of this new relationship I'd like to offer $10,000 per month from FTFS until the launch of One by Labb, starting no later than next Friday. The $10,000 would be paid July, August, and September by FTFS. At launch at Conference, we both hope to catch 60% of the franchise with honey - showcasing the new technology. Regardless of what buy in we get, starting January 1, 2027 we will mandate the new fee of $250 per month for One by Labb and $150 per month per $10,000 in revenue for the finance module as we have discussed. The future of October forward is obviously subject to a binding term sheet and full contract being signed. We need to agree to have a contract done by 9/30/2026. Part of that term sheet will include us accepting a substantially complete software package and an agreement upon the core features.

Simple breakdown:
$10,000 from FTFS September, October, November 2026
Launch of One by Labb and system adoption 10/01/2026 - 12/31/2026
Full mandated fees as agreed starting 1/1/2027, with the $250 license fee portion being paid in full by FTFS

Look forward to hearing back from you. I remain excited about the opportunities we have together.

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Wed, Jul 1, 2026 at 1:15 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi John
>
> Checking back on when you want to have a call to follow-up on yesterday's call. We are off here on Friday for the 4th of July Holiday and we need to reach resolution on this matter.
>
> Sorry for the pressure.
>
> Jeff

Outlook

## Re: Checking Back on Discussion

**From** John Smith <john@fastestlabs.com>
**Date** Thu 7/2/2026 8:05 AM
**To** Jeff Konecke <jeff.Konecke@labb.com>
**Cc** Matt Kunz <matt@fastestlabs.com>

930et works

John Smith
Fas-Tes Franchise Systems

On Thu, Jul 2, 2026 at 6:52 AM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi John
>
> How does 9:30et work. Early meeting off site before.
>
> Jeff
>
> ---
>
> **From:** John Smith <john@fastestlabs.com>
> **Sent:** Wednesday, July 1, 2026 8:08 PM
>
> **To:** Jeff Konecke <jeff.Konecke@labb.com>
> **Cc:** Matt Kunz <matt@fastestlabs.com>
> **Subject:** Re: Checking Back on Discussion
>
> Matt and I are free at 9am ET. Does that work for you?
>
> Who are the top 5 offenders you suspect?
>
> **It is our pleasure to serve,**
>
> **John Smith** / Executive Vice President
>
> Office: 210-641-2058
>
> **Fas-Tes Franchise Systems LLC**
>
> 5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
> www.fastestlabs.com
>
> https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/
>
> NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you

are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Wed, Jul 1, 2026 at 6:11 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

Good Evening Matt and John,

Thank you for your response and for the effort to work toward a resolution to the situation we are in. That said, I have to respectfully decline the offer as proposed.

Since our conversation, I've had Kelly and Karen continue analyzing the data you provided. Unfortunately, the picture doesn't improve as we look back further - if anything, it gets worse. At this point, the data shows that a significant majority of your franchisees are not operating within the terms of the Agreement. Their operating outside the terms has and is causing LABB significant financial losses. Losses that continue now, even as we try to work towards a resolution.

The offer I presented yesterday was a fair and reasonable path forward given where things stand. It was structured specifically so you could position the increased cost positively with your franchisees, with several provisions built in to help frame that value.

To be clear: under the current contract terms, Fastest Labs franchisees are required to use LABB for all POCT and lab services. The data provided is revealing that a substantial portion of them are not using LABB exclusively per the terms of the agreement. This is a situation that didn't need to happen - since franchisees had the option to bypass certain requirements by paying a $499.00 monthly upcharge in addition to their standard rate. (An option that a couple franchisees did accept.) That option, nor the basic requirement to simply be in full compliance with the agreement has been followed by a large percentage of your franchisees. As a result, LABB has absorbed real financial impact.

Since yesterday's offer didn't work for you, here's what LABB is going to need:

1. Compliance or upcharge, effective July 1 billing. Franchisees should either come into full compliance with the Agreement or begin paying the $499.00 monthly upcharge in addition to their standard fees. I'd ask that you notify your franchisees by July 5, 2026, that they must either return to compliance with the terms of the agreement OR begin to pay the agreed upon monthly upcharge.

2. Provide additional historical data. Provide us additional sales/revenue data for franchisees to help us understand the full scope of the problem. I'd also ask that you provide the same data previously shared with LABB, for the periods January-June 2025, all of 2024, and all of 2023.

3. That you sign and return the Authorization of Release of Information sent to you by LABB to allow us to obtain information from certain vendors and allow LABB to conduct a full audit of the franchisees to verify the scope of the problem.

John, I want to be straightforward with you: the current situation we are in is not sustainable. Franchisees have an opbligation to follow the terms of the agreement and the Franchisor has an obligation to enforce those terms if franchisees are not in complaince. I believe the options presented to you - either the new pricing or the upcharge - are fair. Especially since they both are structured to allow little to no disruption to the franchisees - other then a slight increase in costs. (While giving LABB nothing to address the past harm caused by the lack of compliance.)

I am available tomorrow morning if you have any questions.

Thank you,

Jeff Konecke
President – LABB

**From:** John Smith <john@fastestlabs.com>
**Sent:** Wednesday, July 1, 2026 4:14 PM
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Checking Back on Discussion

Jeff,

While, we want to move forward on a new agreement, we have two very different views of the past and the current agreement. I've heard all of your comments, many of which I have heard before. We have a lens of our own that is different than yours. It is not worth our time debating this. Further, it only gets you and I on a worse start than we need to be.

I do not believe that we have sufficient evidence to assume that up to 200 offices are in violation of the agreement. Getting to a legal threshold to make that claim will be difficult. It certainly can't be done in less than 90 days. We also cannot force 250 offices to increase $150 in fees in 14 days, even if they will save most or all of it. The optics of that will destroy the very thing that we are all trying to do together.

I want to reach a solution before you leave EOD on Thursday. In pursuit of this new relationship I'd like to offer $10,000 per month from FTFS until the launch of One by Labb, starting no later than next Friday. The $10,000 would be paid July, August, and September by FTFS. At launch at Conference, we both hope to catch 60% of the franchise with honey - showcasing the new technology. Regardless of what buy in we get, starting January 1, 2027 we will mandate the new fee of $250 per month for One by Labb and $150 per month per $10,000 in revenue for the finance module as we have discussed. The future of October forward is obviously subject to a binding term sheet and full contract being signed. We need to agree to have a contract done by 9/30/2026. Part of that term sheet will include us accepting a substantially complete software package and an agreement upon the core features.

Simple breakdown:
$10,000 from FTFS September, October, November 2026
Launch of One by Labb and system adoption 10/01/2026 - 12/31/2026
Full mandated fees as agreed starting 1/1/2027, with the $250 license fee portion being paid in full by FTFS

Look forward to hearing back from you. I remain excited about the opportunities we have together.

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Wed, Jul 1, 2026 at 1:15 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi John
>
> Checking back on when you want to have a call to follow-up on yesterday's call. We are off here on Friday for the 4th of July Holiday and we need to reach resolution on this matter.
>
> Sorry for the pressure.
>
> Jeff

# Exhibit JK-11

Outlook

## Summary on Franchise Location

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Tue 7/14/2026 1:58 PM
**To** John Smith <john@fastestlabs.com>

Hi John

I wanted to send you the final numbers we came up with for one of the sites on the short list.

This is sites owned by Monica Wilson for the 12 months ending June 30, 2026.

**Miami Airport**

Total Tests Run - 1904 (1686 Direct Read)

Negative - 1827
NonNegative - 50
Other - 27

**West Miami**

Total Tests Run - 228 (179 Direct Read)

Negative - 210
NonNegative - 13
Other - 4

**COMBINED**

Total Tests Run - 2132 Tests Combined (Direct Read 1864)

Negative = 2037
NonNegative = 67
Other = 29

She has ordered/purchased 775 Tests during the last 14 months - Ending June 30, 2026

Here Labb System shows she has 742 Tests in her inventory as of June 30, 2026

[Not sure how she ran 2132 tests and only depleted inventory by 32 tests.]

John, I did try to reach out to her to set up a call to discuss - especially since she asked Karen to turn Direct Read back on - but she blew me off and said she had no time until the week of the 29th.

I have Karen and Kelly going through the others on the short list to ensure the numbers I give you are correct.

Thank You

Jeff

# Exhibit JK-11A

Outlook

## Numbers for Ilan in Henderson, NV

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Wed 7/15/2026 1:06 PM
**To** John Smith <john@fastestlabs.com>

Hi John

Here are the numbers for Ilan in Nevada.

2 Sites.
Number of Tests and Number of Direct Read are for 12 months ending June 30, 2026
Purchases are for the 14 months ending June 30, 2026

**Site 1**

Tests Performed - 1,396

Tests Purchased - 275

Direct Read - 1,349

---

**Site 2**

Tests Performed - 1,596

Test Purchased - 50

Direct Read - 1,539

**Combined 1&2**

Total Tests Performed - 2,992
Total Test Purchased - 325
Direct Read - 2,888

Plus his inventory still shows 699 Test Kits.

So the question is how he can have so many kits if he only bought 325 from us in 14 months. Plus, ran almost 3000 tests.

Thank You

Jeff

# Exhibit JK-12

Outlook

**Re: Update on Goerges**

**From** Jeff Konecke <jeff.Konecke@labb.com>
**Date** Tue 7/21/2026 7:11 AM
**To** John Smith <john@fastestlabs.com>
**Cc** Matt Kunz <matt@fastestlabs.com>

Hi

John
We did not continue going through anymore at this point. When the amendment to agreement was signed we told you we wanted to pursue three. Those were the ones I gave you. With Ilana md Monica left.

At this point we have an agreement so I am not going further since we stated what we would do.

Jeff

Get [Outlook for iOS](#)

---

**From:** John Smith <john@fastestlabs.com>
**Sent:** Monday, 20 July 2026 21:00:38
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Cc:** Matt Kunz <matt@fastestlabs.com>
**Subject:** Re: Update on Goerges

You said below you finished looking at 160 other offices?

I'll talk to Monica. She told me y'all had a call set up.

John Smith
Fas-Tes Franchise Systems

On Mon, Jul 20, 2026 at 7:22 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi John
>
> We only worked on three. George's we have determined could be accounted for in the numbers.
>
> However Ilan was not sorted out. The pictures he sent do not explain the vast difference we found. Plus the "inventory" he had then has not changed compared to amount of tests done. Thus we stand behind the numbers we found.

Concerning Monica we provided the numbers and are looking to you for more info on her numbers and how she explains them to you.

Thank you
Jeff

Get [Outlook for iOS]

---

**From:** John Smith <john@fastestlabs.com>
**Sent:** Monday, 20 July 2026 18:03:25
**To:** Jeff Konecke <jeff.Konecke@labb.com>
**Subject:** Re: Update on Goerges

Jeff, we need to understand where things stand on the audits. From our vantage point, not much has come of them. Ilan was sorted out with James about 2 months ago. Monica is the only one I don't know about. Can you outline what you've actually found and what remains outstanding?

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

FASTEST LABS®
CLEAN FAST TESTING




NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Wed, Jul 15, 2026 at 2:27 PM Jeff Konecke <jeff.Konecke@labb.com> wrote:

> Hi John
>
> Please remove the Georges from the "short list"
>
> We have finished doing a further "deep dive" into their clinics. Between - Passports, Document/Test Uploads, Labs, breath alcohol and Actual Tests. There is explanations for what they did. When this was combined with a full analysis of purchases going back the 14 months and review of current inventory, their site seems to be in compliance.

Final numbers show sufficient inventory purchased and inventory to account for and accommodate the revised "test numbers".

We have also finished looking at about 160 other sites. The difference - if any - between tests run, direct reads and purchases are minor.

Thank You

Jeff

# Exhibit JK-13

Outlook

## Fw: Fastest Labs forms & supplies

**From** Kelly Ray <kelly.ray@labb.com>
**Date** Thu 9/3/2026 2:54 PM
**To** James Ramsey <james@labb.com>
**Cc** Jeff Konecke <jeff.Konecke@labb.com>

1 attachment (153 KB)
Fastest Labs Forms & Supplies.xlsx;

Please see information shared by Quest, thank you.

Best regards,
Kelly Ray

Labb®
Operations Director

877-868-9967 | 757-271-6529
kelly.ray@labb.com
labb.com

2115 Granby Street
Norfolk, VA. 23517

---

**From:** Long, Trisha N <Trisha.N.Long@questdiagnostics.com>
**Sent:** Thursday, September 3, 2026 02:36 PM
**To:** Kelly Ray <kelly.ray@labb.com>
**Subject:** Fastest Labs forms & supplies

Hello Kelly,

We have noticed Fastest Labs is ordering more urine kits and CCF forms than the samples they are sending to Quest.

From the attachment you can see the testing volume we have received and then the number of kits and forms they are ordering. We understand the kits and forms will not match as majority are electronically collecting the samples. The alarming number is the kits compared to the test we are receiving. The Quest kits they ordering need to be used for Quest only. The cost of the kits is built into the testing of the sample, but it appears they are ordering more kits than samples they are sending into Quest.

Please contact these sites to ensure they are only using kits they order from Quest for samples they are sending into Quest.

Effective 10/1 Quest will be charging .50 for each form and $1.50 for each kit ordered. I will send over an amendment, I would like to also mention I was able to hold off our finance team from back billing for the

kits and forms that have been ordered and not sent back to us. They wanted to charge $24,589.50 for kits and $11,776.50 for forms.

If you have any questions, please let me know.

Thank you,

Trisha N. Long
Senior Key Account Manager

Quest Diagnostics | Employer Solutions | Action from Insight | 10101 Renner Blvd. | Lenexa, KS 66219 USA | phone 913.895.2540 | trisha.n.long@questdiagnostics.com | QuestDiagnostics.com

---

The contents of this message, together with any attachments, are intended only for the use of the person(s) to which they are addressed and may contain confidential and/or privileged information. Further, any medical information herein is confidential and protected by law. It is unlawful for unauthorized persons to use, review, copy, disclose, or disseminate confidential medical information. If you are not the intended recipient, immediately advise the sender and delete this message and any attachments. Any distribution, or copying of this message, or any attachment, is prohibited.

# Exhibit JK-14

Outlook

## 573TX (La Porte) - Opening Date 2/1/25

**From** FL Onboarding <onboarding@fastestlabs.com>
**Date** Tue 12/31/2024 4:09 PM
**To** Charlie Reeves-Fastest Labs <charlie.reeves@fastestlabs.com>; Houston Ship Channel Billing <htxsc@fastestlabs.com>

Hi Charlie and Maredith, please see the information below regarding Vendor Setup responsibilities - let me know if you have any questions!

Expected Opening Date: I know you mentioned 2/1/25 but since that is Saturday, can we push it to the following Monday, 2/3/25?
Clinic Address:
110 N. Broadway Street #C
La Porte, TX 77571
Clinic Phone Number: (346) 499-5227
Initial Shipping Address for supplies to be delivered to:
10902 Interstate 10 E
Baytown, TX 77523

**If your location is delayed past the Expected Opening Date above, you must reach out to both Labb and Scorpion directly to make adjustments for payment/drafting.**

Home Office Responsibilities:

- @Robert Robinson - will be helping in setting up your QBO.
- @On-Boarding - will assist in setting up USDTL, DDC, CRL, CrimCheck, Expertox, & DNA Solutions. Your PandaDoc and JotForms have all been sent to the vendors.

Franchisee Responsibilities:

- You will need to initiate the Insurance Process via The Gallagher Group:
  - If you are adding this location under your existing entity then contact: jill_tovar@ajg.com
  - Once you receive your Certificate of Insurance, please forward it over to onboarding@fastestlabs.com
- I have notified Labb about your upcoming location.
  - When it comes to Labb, they will need to have another email address that is specific to the La Porte location for their system.
    - I have added the following alias email(s) under charlie.reeves@fastestlabs.com:
      - charlie.lp@fastestlabs.com
    - In the instance that you do have an employee from the Houston Ship Channel location who floats to the La Porte location, we will have to create an alias email for them to utilize Labb similar to what I referenced above.
    - Don't forget that although I gave Labb a heads-up, you will still need to reach out to them to set up your account.

- I have also notified Scorpion but like Labb, you will still need to reach out to them to set up your account.
    - Your website url will reflect: fastestlabs.com/la-porte
- Your clinic email has been activated today:
    - Username: laporte@fastestlabs.com
    - Password: password123
        - Update your Clinic Signature Block
- All other vendors will be under the responsibility of the franchisee to set up:
    - Labb (they will set up your MRO, Omega, & Quest)
    - Scorpion
    - Lifeloc
    - Fastest Labs Store
    - TPA's

Please note, that it may take some lead time to get your accounts set up so please start to initiate your processes and sign your contracts as soon as possible.

*In observance of the New Year Holiday, our offices will be closed on Wednesday, January 1st and I will be personally out of the office from the 2nd until Tuesday, January 7th.*

**It is our pleasure to serve,**

**Waiikaleina Luna | Director of Onboarding**

Office: (210) 641-2058

onboarding@fastestlabs.com

FASTEST LABS®
CLEAN FAST TESTING

**Fas-Tes Franchise Systems, LLC**

5718 University Heights Blvd., Suite 105 | San Antonio, TX 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information that is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the

intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

# Exhibit JK-14A

**From:** Waiikaleina Luna <waiikaleina@fastestlabs.com>
**To:** Jennifer Eddy <jennifer.e@fastestlabs.com>
**Cc:** On-Boarding <onboarding@fastestlabs.com>
**Bcc:** karen@labb.com
**Date:** Thu, 31 Oct 2024 15:31:08 -0500
**Subject:** Re: quick question
**Message-ID:** <CAHZN89jzcfgFUwzR7ZwCqg6nzQrtkyGbd65qOFFYWe2VJQdeUw@mail.gmail.com>

**Attachments:** none

Happy Thursday Jennifer!

I can assist you with certain parts of vendor setup for your new clinic location.

- Labb - which they will, in turn, setup quest, omega, and cynergy.
- Scorpion
- Expertox
- DNA Solutions
- DDC
- CRL
- USDTL
- CrimCheck
- Gallagher Insurance - will send in a separate email.

Can you please do me a favor and provide me with the following information:

Expected Opening Date:
Clinic Address (if applicable, do not forget the suite number!):
Clinic Phone Number: (502) 901-4560 - will this still stay the same or are you changing it?
Fax Number: if applicable, but not mandatory
Initial Shipping Address for supplies to be delivered to: do you want the new chains to be shipped to your current location or maybe even a home address? FedEx and UPS will not be able to deliver to an unopen location.

Once you have an executed lease agreement for the space, please send it right over.

Let me know if you have any additional questions!

**It is our pleasure to serve,**

**Waiikaleina Luna | Director of Onboarding**

Office: (210) 641-2058

waiikaleina@fastestlabs.com

**Fas-Tes Franchise Systems, LLC**

5718 University Heights Blvd., Suite 105 | San Antonio, TX 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information that is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended

recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Thu, Oct 31, 2024 at 12:16 PM Jennifer Eddy <jennifer.e@fastestlabs.com> wrote:

> Hi Waiikaleina!
> Mark and I are moving our location in Louisville due to losing our original lease. Please let us know if any specifications for the locations have changed since we set up 5 years ago. Thank you!
>
> **It is our pleasure to serve,**
>
> **Jennifer Eddy, Managing Owner**
> East Louisville
>
> jennifer.e@fastestlabs.com
>
> **https://www.fastestlabs.com/east-louisville**
>
> **Fastest Labs of East Louisville**
>
> **Main (502)901-4560**
>
> Efax(502)208-2155
>
> 2130 Watterson Trail, Suite B, Louisville, KY 40299
>
> http://fastestlabs.com/east-louisville
>
> NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

**From:** Waiikaleina Luna <waiikaleina@fastestlabs.com>
**To:** Eric Bontrager <eric.b@fastestlabs.com>
**Cc:** On-Boarding <onboarding@fastestlabs.com>, Robert Robinson <rob@fastestlabs.com>
**Bcc:** karen@labb.com
**Date:** Thu, 05 Sep 2024 15:51:08 -0500
**Subject:** 266FL (Tampa Airport) - Opening October 1st, 2024
**Message-ID:** <CAHZN89ihV__LTT=cuDU6qap=LSATG4=YBwxP2hKhmiyipuDSrg@mail.gmail.com>

**Attachments:** none

Hi Eric & Camille, please see the information below regarding Vendor Setup responsibilities - let me know if you have any questions!

Expected Opening Date: October 1st, 2024
Clinic Address:
5936 Benjamin Road
Tampa, FL 33634
Clinic Phone Number: (813) 320-0700
Initial Shipping Address for supplies to be delivered to:
13555 Automobile Blvd., Suite 550
Clearwater, FL 33762

## Home Office Responsibilities:

- @Robert Robinson - will be helping in setting up your QBO.
- @On-Boarding - will assist in setting up USDTL, DDC, CRL, CrimCheck, Expertox, & DNA Solutions. Your PandaDoc and JotForms have all been sent to the vendors.

## Franchisee Responsibilities:

- You will need to initiate the Insurance Process via The Gallagher Group:
  - If you created a new entity for this specific location then contact: ashley_thomas@ajg.com - or - randy_reid@ajg.com
  - If you are adding this location under your existing entity then contact: jill_tovar@ajg.com
- I have notified Labb about your upcoming location.
  - When it comes to Labb, they will need to have another email address that is specific to the Tampa Airport location for their system.
    - I have added the following alias email(s) under bontrager@fastestlabs.com:
      - eric.tampaairport@fastestlabs.com
      - camille.tampaairport@fastestlabs.com
    - In the instance that you do have an employee from the Clearwater location who floats to the Tampa Airport location, we will have to create an alias email for them to utilize Labb similar to what I referenced above.
    - Don't forget that although I gave Labb a heads-up, you will still need to reach out to them to set up your account.
- I have also notified Scorpion but like Labb, you will still need to reach out to them to set up your account.
  - Your website url will reflect: fastestlabs.com/tampa-airport
- Your clinic email has been activated today:
  - Username: tampaairport@fastestlabs.com
  - Password: password123
    - Update your Clinic Signature Block
- All other vendors will be under the responsibility of the franchisee to set up:
  - Labb (they will set up your MRO, Omega, & Quest)
  - Scorpion
  - Lifeloc
  - Cynergy-specific account for ONLY USDTL
  - Fastest Labs Store via Darter (info. is under suppliers in FranConnect)
  - TPA's

Please note, that it may take some lead time to get your accounts set up so please start to initiate your processes and sign your contracts as soon as possible.

**It is our pleasure to serve,**

**Waiikaleina Luna | Director of Onboarding**

Office: (210) 641-2058

waiikaleina@fastestlabs.com

**Fas-Tes Franchise Systems, LLC**

5718 University Heights Blvd., Suite 105 | San Antonio, TX 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information that is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Thu, Sep 5, 2024 at 9:11 AM Eric Bontrager <eric.b@fastestlabs.com> wrote:

> Waiikaleina,
>
> We are responsible for ordering our Labb tablet, Lifeloc BAT machine, and any other lab setup/supplies that were not on the PandaDoc we signed yesterday, correct?
>
> Or is there a list in FranConnect I can access? This would be for our Tampa Airport location.
>
> **Please leave a 5 star review here**
>
> **It is our pleasure to serve,**
>
> **Eric Bontrager | Owner-Operator**
>
> eric.b@fastestlabs.com
>
> Office: 727-827-2804
>
> Fax: (727) 827-2855
>
> **Servicing Pinellas, Hillsborough and Manatee Counties**

**Fastest Labs of Clearwater**

13555 Automobile Blvd, #550

Largo, FL 33762

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information that is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

Outlook

## 327VA (Springfield-VA) - Opening Date Mid-November 2024

**From** Waiikaleina Luna <waiikaleina@fastestlabs.com>
**Date** Thu 10/17/2024 7:01 AM
**To** Brian Katcher <brian.k@fastestlabs.com>
**Cc** On-Boarding <onboarding@fastestlabs.com>; Sarah Katcher <sarah.k@fastestlabs.com>

Hi Brian, please see the information below regarding Vendor Setup responsibilities - let me know if you have any questions!

Expected Opening Date: Originally you had planned for an October 23rd opening date, however since we received the PandaDoc documents on October 15th, we will need to give our vendors a full month's notice to get everything set up. I have tentatively put the new date as November 15th.
Clinic Address:
7011 Calamo Street, Suite 104,
Springfield, VA 22150
Clinic Phone Number:
Initial Shipping Address for supplies to be delivered to:
13890 Braddock Road, Suite 301
Centreville, VA 2012

**Important: Confirm all the information above is correct, if there is an error after vendor setup has been completed, then you will need to reach out to the vendors individually.**

**If your location is delayed past the Expected Opening Date above, you must reach out to both Labb and Scorpion directly to make adjustments for payment/drafting.**

Home Office Responsibilities:

- @Robert Robinson - will be helping in setting up your QBO.
- @On-Boarding - will assist in setting up USDTL, DDC, CrimCheck, Expertox, & DNA Solutions. Your PandaDoc and JotForms have all been sent to the vendors.

Franchisee Responsibilities:

- You will need to initiate the Insurance Process via The Gallagher Group:
    - If you created a new entity for this specific location then contact: ashley_thomas@ajg.com - or - randy_reid@ajg.com
    - If you are adding this location under your existing entity then contact: jill_tovar@ajg.com
- I have notified Labb about your upcoming location.
    - When it comes to Labb, they will need to have another email address that is specific to the Springfield-VA location for their system.
        - I have added the following alias email(s) under brian.k@fastestlabs.com:
            - brian.springfield-va@fastestlabs.com
        - I have added the following alias email(s) under sarah.k@fastestlabs.com:

        - sarah.springfield-va@fastestlabs.com
        - In the instance that you do have an employee from the Centreville location who floats to the Springfield-VA location, we will have to create an alias email for them to utilize Labb similar to what I referenced above.
        - Don't forget that although I gave Labb a heads-up, you will still need to reach out to them to set up your account.
- I have also notified Scorpion but like Labb, you will still need to reach out to them to set up your account.
    - Your website url will reflect: fastestlabs.com/springfield-va
- Your clinic email has been activated today:
    - Username: springfield-va@fastestlabs.com
    - Password: password123
        - Update your Clinic Signature Block
- All other vendors will be under the responsibility of the franchisee to set up:
    - Labb (they will set up your MRO, Omega, & Quest)
    - Scorpion
    - Lifeloc
    - Fastest Labs Store
    - TPA's

Please note, that it may take some lead time to get your accounts set up so please start to initiate your processes and sign your contracts as soon as possible.

**It is our pleasure to serve,**

**Waiikaleina Luna | Director of Onboarding**

Office: (210) 641-2058

waiikaleina@fastestlabs.com

FASTEST LABS®
CLEAN FAST TESTING

**Fas-Tes Franchise Systems, LLC**

5718 University Heights Blvd., Suite 105 | San Antonio, TX 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information that is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

**From:** Waiikaleina Luna <waiikaleina@fastestlabs.com>
**To:** Doug Dickstein <doug.dickstein@fastestlabs.com>
**Cc:** Robert Robinson <rob@fastestlabs.com>
**Bcc:** karen@labb.com
**Date:** Fri, 24 May 2024 16:12:22 -0500
**Subject:** Multi-Unit Location: 346CA (Santa Clarita) - Opening June 3rd, 2024
**Message-ID:** <CAHZN89i8P=VFgwByiAZeVfvjq=sOQvom=rdnC+1MaAxegG=9AQ@mail.gmail.com>

---

**Attachments:** none

---

Hi Doug, please see the information below regarding Vendor Setup responsibilities - let me know if you have any questions!

Expected Opening Date:
Clinic Address:
25856 Tournament Rd
Santa Clarita, CA 91355
Clinic Phone Number: (661) 476-5707
Initial Shipping Address for supplies to be delivered to:
7257 Owensmouth Ave, Ste A
Canoga Park, CA 91303

## Home Office Responsibilities:

- @Robert Robinson - will be helping in setting up your QBO.
- @On-Boarding - will assist in setting up USDTL, DDC, CRL, & DNA Solutions. Your PandaDoc and JotForms have all been sent to the vendors.

## Franchisee Responsibilities:

- You will need to initiate the Insurance Process via The Gallagher Group:
  - If you created a new entity for this specific location then contact: @Ashley_Thomas@ajg.com - or - @Randy Reid
  - If you are adding this location under your existing entity then contact: @Jill Tovar
- I have notified Labb about your upcoming location.
  - When it comes to Labb, they will need to have another email address that is specific to the Santa Clarita location for their system.
    - I have added the following alias email under the santaclarita@fastestlabs.com
      - doug.santaclarita@fastestlabs.com
    - In the instance that you do have an employee from the Woodland Hills location who floats to the Santa Clarita location, we will have to create an alias email for them to utilize Labb similar to what I referenced above.
    - Don't forget that although I gave Labb a heads-up, you will still need to reach out to them to set up your account.
- I have also notified Scorpion but like Labb, you will still need to reach out to them to set up your account.
  - Your website url will reflect: fastestlabs.com/santa-clarita
- All other vendors will be under the responsibility of the franchisee to set up:
  - Labb (they will set up your MRO, Omega, & Quest)
  - Scorpion
  - Lifeloc
  - Fastest Labs Store
  - TPA's

Please note, that it may take some lead time to get your accounts set up so please start to initiate your processes and sign your contracts as soon as possible.

**It is our pleasure to serve,**

**Waiikaleina Luna | Director of Onboarding**

Office: (210) 641-2058

waiikaleina@fastestlabs.com

**Fas-Tes Franchise Systems, LLC**

5718 University Heights Blvd., Suite 105 | San Antonio, TX 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information that is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

Outlook

## Transfer Launch Call: Hobby Airport + Webster

**From** Waiikaleina Luna <waiikaleina@fastestlabs.com>
**Date** Wed 11/6/2024 2:06 PM
**To** Jason Simon <jason.s@fastestlabs.com>; Admin Khan <khan@fastestlabs.com>
**Cc** On-Boarding <onboarding@fastestlabs.com>

Good Afternoon Jason & Muhammad!

I have received official documentation for the sale of Hobby Aiport and Webster. I have been working on the back end of things in getting this location set up and would like to also have a 30-minute Transfer Launch Call Presentation altogether. This would be via Google Meet. I do have availability tomorrow and Friday.

- Thursday, Nov. 7th: 9 am - 3 pm
- Friday, Nov. 8th: 12 pm - 3 pm

You all can pick a day/time and I will send an invite. In the presentation call, we will cover email setup/access and vendor setup.

To give a brief glimpse of the vendor setup, I will notify:

- Labb - which will in turn get your Quest, Omega, and Cynergy set up
- Scorpion
- Expertox
- CRL
- DNA Solutions
- QBO
- DDC
- USDTL
- DISA (background check only)

More information to be covered during our call.

Thank you!

**It is our pleasure to serve,**

**Waiikaleina Luna | Director of Onboarding**

Office: (210) 641-2058

waiikaleina@fastestlabs.com

FASTEST LABS®
CLEAN FAST TESTING

**Fas-Tes Franchise Systems, LLC**

5718 University Heights Blvd., Suite 105 | San Antonio, TX 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information that is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

**From:** Waiikaleina Luna <waiikaleina@fastestlabs.com>
**To:** Sharee King <sharee.king@fastestlabs.com>, On-Boarding <onboarding@fastestlabs.com>
**Cc:** Tamica Mosley <tamica.mosley@fastestlabs.com>, Robert Robinson <rob@fastestlabs.com>
**Bcc:** karen@labb.com
**Date:** Wed, 13 Mar 2024 16:44:01 -0500
**Subject:** South Akron (293OH) - Opening April 1st, 2024
**Message-ID:** <CAHZN89jCZJwYPnxBoswOBhjftWX1wF6PnoHJFHza9qF6vNANEg@mail.gmail.com>

---

**Attachments:** none

---

Hi Sharee - there will be several moving parts that involve different people in getting this location opened and I want to walk you through this process.

First, I did confirm that the clinic zip code belongs to your South Akron location and not your North Akron. I have changed the login to your customer-facing email to reflect southakron@fastestlabs.com. I have also edited your Panda Doc form to reflect the correct location and franchise id number.

Expected Opening Date: 04-01-2024
Clinic Address:
1557 Vernon Odom Blvd, Suite 205
Akron, OH 44320
Clinic Phone Number: (330) 422-4922
Initial Shipping Address for supplies to be delivered to:
11180 Apache Dr., Apt. 304
Parma Heights, OH 44130

## Home Office Responsibilities:

- @Robert Robinson - will be helping in setting up your QBO.
- @On-Boarding - will assist in setting up Expertox, USDTL, DDC, CRL, CrimCheck, & DNA Solutions. The PandaDoc forms will be sent to sharee.king@fastestlabs.com for you to fill out electronically.

## Franchisee Responsibilities:

- You will need to initiate the Insurance Process via The Gallagher Group:
  - If you created a new entity for this specific location then contact: @Ashley_Thomas@ajg.com - or - @Randy Reid
  - If you are adding this location under your existing entity then contact: @Jill Tovar
- I will notify Labb about your upcoming location.
  - When it comes to Labb, they will need to have another email address that is specific to the South Akron location for their system.
    - I have added the following alias email under the sharee.king@fastestlabs.com email address: sharee.southakron@fastestlabs.com
    - In the instance that you do have an employee from any of your Ohio locations who "float", we will have to create an alias email for them to utilize Labb similar to what I referenced above.
    - Don't forget that although I will give Labb a heads-up, you will still need to reach out to them to set up your account.
- I have also notified Scorpion but like Labb, you will still need to reach out to them to set up your account.
  - Your website url will reflect: fastestlabs.com/south-akron
- Update your Center Profile Information in FranConnect
- All other vendors will be under the responsibility of the franchisee to set up:
  - Labb
  - Scorpion
  - Lifeloc
  - Fastest Labs Store - please be sure to order your Start-Up Kit for this location

Please note, that it may take some lead time to get your accounts set up so please start to initiate your processes and sign your contracts as soon as possible.

Let us know if you have any additional questions!

**It is our pleasure to serve,**

**Waiikaleina Luna | Director of Onboarding**

Office: (210) 641-2058

waiikaleina@fastestlabs.com

**Fas-Tes Franchise Systems, LLC**

5718 University Heights Blvd., Suite 105 | San Antonio, TX 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information that is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

# Exhibit JK-15

Outlook

## Fwd: Urgent: Labb Invoice Increase

**From** Spencer Davidson <spencer.d@fastestlabs.com>
**Date** Tue 9/1/2026 11:56 AM
**To** Jeff Konecke <jeff.Konecke@labb.com>; James Ramsey <james@labb.com>

FYI

**It is our pleasure to serve,**


**Spencer Davidson | Sales Director**

Office: (208) 967-0515

spencer.d@fastestlabs.com

**Fastest Labs of Draper**
Address

9551 S. 700 E. STE. 100

sandy, Utah 84070

http://fastestlabs.com/


NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information that is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---------- Forwarded message ---------
From: **Matt Kunz** <matt@fastestlabs.com>
Date: Tue, Sep 1, 2026 at 9:37 AM
Subject: Urgent: Labb Invoice Increase
To: Matt Kunz <matt@fastestlabs.com>
CC: John Smith <john@fastestlabs.com>, Cat Koehler <cat@fastestlabs.com>

Hello Owners,

I'm writing to address something urgent that many of you received today: invoices from Labb reflecting a significant, unauthorized price increase.

As you know from our last update, we notified you that negotiations with Labb had broken down and that we would continue under our current agreement, with no increase on September 1. Despite this, and despite multiple direct communications from us to Labb confirming that pricing would not change, owners today received invoices showing rates jumping from $109 to $249, along with a new revenue-based fee

This is not something we authorized and raises serious concerns about their conduct in this process. We are actively working with our legal team to resolve this with Labb.

What we recommend:

- Do not sign or agree to anything from Labb reflecting these new terms.
- If you have questions about a specific invoice, reach out to your FBC, and we will help you directly.

We know this is frustrating, especially after we worked hard to protect you from exactly this kind of change. Please know that we are treating this with urgency and will not allow Labb to impose terms on you that we have not agreed to. We will update you as soon as we have more information from legal.

Thank you,

**Matt Kunz** / President & CEO

Office: 210-641-2058

Cell: 815-739-1218

Book Time With Me

FASTEST LABS®
CLEAN FAST TESTING

5718 University Heights Blvd

Suite 105

San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

# Exhibit JK-16

Outlook

## Fw: Important Update Regarding Our Labb Partnership

**From** James Ramsey <james@labb.com>
**Date** Mon 8/3/2026 11:28 AM
**To** Jeff Konecke <jeff.Konecke@labb.com>

Fastest Labs response

**James Ramsey**
CEO
Labb

(o) 877 868 9967 | (d) 757 805 9652
James@Labb.com
labb.com
2115 Granby Street
Norfolk VA 23517

---

**From:** Spencer Davidson <spencer.d@fastestlabs.com>
**Sent:** Monday, August 3, 2026 11:26 AM
**To:** James Ramsey <james@labb.com>
**Subject:** Fwd: Important Update Regarding Our Labb Partnership

**It is our pleasure to serve,**

**Spencer Davidson | Sales Director**
Office: (208) 967-0515
spencer.d@fastestlabs.com

**Fastest Labs of Draper**
Address
9551 S. 700 E. STE. 100
sandy, Utah 84070
http://fastestlabs.com/
NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information that is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---------- Forwarded message ---------
From: **Matt Kunz** <matt@fastestlabs.com>
Date: Mon, Aug 3, 2026 at 10:24 AM

Subject: Important Update Regarding Our Labb Partnership
To: <spencer.d@fastestlabs.com>

Hello Owners,

Over the past several months, we've worked on behalf of the Fastest Labs system to negotiate a new agreement with Labb for One by Labb. When we last updated you, we believed we were working toward a shared vision for the future. Since then, those negotiations have taken a significant turn.

At this point, we no longer believe a mutually beneficial agreement is achievable under Labb's current proposal. While we remain open to meaningful revisions, we are actively pursuing alternative strategies rather than relying on an agreement that does not adequately serve and protect you, the Franchisee.

Here's why we've reached that conclusion:

- **Exclusivity requirement for Point-of-Care Testing (POCT) with no pricing guidance or protections –** The proposal requires all FTL owners to purchase 100% of POCT from Labb as long as Labb supplies it, and buy it at whatever price and in whatever quantity they demand.
- **POCT pricing –** Originally, the plan was to see a meaningful reduction in POCT costs. As of the sending of this message, we have not been offered prices lower than current rates, except for the unbundling of the rapids from confirmation fees.

- **Revenue-based fees –** Labb's proposal calculates its fees on total franchise revenue, not just revenue processed through its platform via the accounting module which would be expected to greatly improve workflows.
- **Significantly higher costs –** The proposed software costs are approximately three times our current expense, and significantly higher than market standards, without sufficient clarity or commitment regarding future functionality.
- **Escalation fees –** We differ widely on when escalator fees should and should not exist.
- **National Account Revenue –** Labb is holding firm that they want the same $150 per $10,000 in revenue, making it more difficult to win tight-margin large-scale deals to pass as much revenue as possible to you.
- **Future Proofing –** We maintain that under a long-duration contract, our price should guarantee us the best new technology possible and the latest updates from the partner. Labb's proposal does not currently come from this angle.
- **Working relationship –** Throughout negotiations, the relationship has been consistently difficult, making it challenging to establish the level of trust and collaboration needed for a long-term strategic partnership.

So, what's next? We will continue with our current Labb agreement and expect all parties to continue to comply with the requirements. We will continue to work with Labb to ensure our business needs are met as well as explore other technologies and services to fulfill any unmet needs.

This also means that monthly fees for LabFusion will remain the same, and we will not experience the previously communicated increase on September 1. Normal annual increases will continue per the current agreement.

Separately, regarding the previously announced amendment addressing historical financial matters, our audit has identified only minor discrepancies to date, some of which Labb had already discovered and

corrected. We are awaiting the final audit results before determining any next steps and are prepared to defend Fastest Labs' position if necessary.

The most important message we want to share is this: we cannot, in good conscience, sign the agreement in its current form. If we are going to ask you to live under the terms of a long-term technology partnership, we have a responsibility to ensure those terms protect your business — not just today, but for years to come.

Our responsibility is not simply to reach an agreement; it is to reach the right agreement. If we cannot negotiate terms we would confidently sign on behalf of every Fastest Labs franchisee, we won't sign them.
We will continue to keep you informed and provide updates throughout the process.

It's our pleasure to serve,

Matt Kunz
CEO

Fastest Labs, 5718 University Heights Blvd, Suite 105, San Antonio, Texas 78249, United States, (210) 641-2051
Unsubscribe Manage preferences

# Exhibit JK-16A

Outlook

## Re: LabbOne Update

**From** John Smith <john@fastestlabs.com>
**Date** Mon 5/18/2026 11:32 AM
**To** James Ramsey <james@labb.com>
**Cc** Matt Kunz <matt@fastestlabs.com>; Jeff Konecke <jeff.Konecke@labb.com>

Can't wait to see it!

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Mon, May 18, 2026 at 8:53 AM James Ramsey <james@labb.com> wrote:

> John,
>
> I think you will be surprised how advanced the system is when it comes to scheduling and triaging walk-in's vs scheduled donors. The check-in kiosk can be a tablet on a stand, QR code to check-in online, or both. I think you will be surprised what LabbOne replaces.
>
> We just added in platform video-teleconferencing last week. It not only has random selecting, but SMS, email and call-in notification for donors to help keep them showing up on time and at the correct location. We are working this week on proctored testing. This will allow the home office to sell testing services in highly remote areas. You will be able to ship an oral fluid test to a donor and the AI system will monitor the entire collection process, facial recognition of the donor with their ID, and read the test result. It non-negative, walks the donor through the confirmation process.
>
> That will be live next week in LabbPO in proportion for the California Bid requirements. This will be the first proctored testing platform at scale. By the time it gets to LabbOne, it will be fully vetted.

James

**James Ramsey**
President
Labb

mobilePhone (o) 877 868 9967 | (d) 757 527 8253
emailAddress James@Labb.com
website labb.com
address 2115 Granby Street
Norfolk VA 23517

---

**From:** John Smith <john@fastestlabs.com>
**Sent:** Monday, May 18, 2026 9:22 AM
**To:** James Ramsey <james@labb.com>
**Cc:** Matt Kunz <matt@fastestlabs.com>; Jeff Konecke <jeff.Konecke@labb.com>
**Subject:** Re: LabbOne Update

This is awesome James. Sorry for my delay too, and I'm glad you are better. We are back to full steam here as well.

To your questions:

1. The scenarios you listed are all great, real-world examples. I bet this is on your list, but an effortless ability to pause mid-flow after the breath alcohol test would be key. It's really common for someone to be ready for the BAT but then unable to provide a urine specimen. The event for BAT needs to completely close, and the system must re-reference that there is now a second event to complete, versus the second event being tethered to the first. I think this should cover most scenarios, but I'm sure there'll be edge cases to identify later.
2. Yes, walk-in upsell capability at the reader is still needed. Collectors will handle payments directly on their tablets, so I don't think we need a separate system for check-in. In my view, if we need that, we can just station another tablet there. The highest priority for me is integrating tracking from phone calls and appointments set on the website. For example: a tracked call comes in through the website, books a service (e.g., 5-panel hair test) in our scheduling software, which then notifies the lab. Right now, this hits a google calendar. I would rather it hit LabbOne showing the team what has been scheduled (alongside B2B orders placed for that day.) Post-sale and event, this lets us trace the order back to the original phone number and measure upsell success, lead attribution, true RPL vs CPL, etc. I think all I need here is API access and Scorpion can point the appointment there.
3. I think this walk-in check-in kiosk would be awesome. I imagine it being able to track and alert which of the personal tests have arrived and which B2B tests (both scheduled and unscheduled) have arrived. The next level of awesome would be the ability for even a TPA client with standard Quest, E-Screen, or FormFox barcodes to scan in, which would alert that a third-party test has arrived as well. System wouldn't need to know what all barcode types are out there - just that a given barcode is not *our* barcode, so it is considered a Third Party Collection. That way, as an example, there could be a dashboard showing you've got 10 tests waiting:
    - 3 are B2C
    - 4 are B2B
    - 3 are TPA

I hope I answered everything you were looking for. I can get on a call tomorrow through Thursday to chat if we need to.

Looking forward to the demo and Alpha!

**It is our pleasure to serve,**

**John Smith** / Executive Vice President

Office: 210-641-2058

**Fas-Tes Franchise Systems LLC**

5718 University Heights Blvd Suite 105 San Antonio, Texas 78249
www.fastestlabs.com

https://whova.com/web/sarGsao2Qf8hVyHeoBeZh3rAK9mu4y%40P1WaLp0xMaYE%3D/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you

are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

On Tue, May 12, 2026 at 2:55 PM James Ramsey <james@labb.com> wrote:

Matt,

We are moving forward and value the feedback. We will continue on the current path and then if we need to change the technology to better fit Fastest Labs better, we will adjust. We are finalizing the app and POS structure. Anytime next week would be great. One of the benefits of what we have created is the ability to customize the technology to fit each client accurately. I would like the app to fit Fastest Labs well from the start. (not v2)

James

**James Ramsey**
President
Labb

mobilePhone (o) 877 868 9967 | (d) 757 527 8253

emailAddress James@Labb.com

website labb.com

address

2115 Granby Street
Norfolk VA 23517

---

**From:** Matt Kunz <matt@fastestlabs.com>
**Sent:** Tuesday, May 12, 2026 3:40 PM
**To:** James Ramsey <james@labb.com>; John Smith <john@fastestlabs.com>
**Cc:** Jeff Konecke <jeff.Konecke@labb.com>
**Subject:** Re: LabbOne Update

James,

I'm glad you are getting back to normal!

How soon are you looking for this feedback? I ask because this week is slammed and John will be out Thursday and Friday. These are good topics that deserve full attention in answering and I want to make sure we can give that to you.

Thank you,

**Matt Kunz** / President & CEO

Office: 210-641-2058

Cell: 815-739-1218

matt@fastestlabs.com

Book Time With Me

5718 University Heights Blvd

Suite 105

San Antonio, Texas 78249

http://fastestlabs.com/

NOTICE OF CONFIDENTIALITY The documents accompanying this electronic mail message contain information which is confidential and/or legally privileged. The information is intended only for the individual or entity named on this transmission. If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this information is prohibited. If you have received this electronic mail message in error, please notify us by telephone immediately.

---

**From:** James Ramsey <james@labb.com>
**Date:** Tuesday, May 12, 2026 at 1:50 PM
**To:** John Smith <john@fastestlabs.com>
**Cc:** Matt Kunz <matt@fastestlabs.com>, Jeff Konecke <jeff.Konecke@labb.com>
**Subject:** LabbOne Update

Hi John,

First, an apology for the silence on my end. I came down with something that hit unusually hard — today is day 12, and I'm finally back to about 80%. Normally a cold knocks me out for a day or two at most, so this one was a real outlier. Unfortunately, it meant I had to miss Friday's MRO meeting and today's session with the lab. The good news is our lab partner meeting has been rescheduled to the first week of June, which actually works in our favor — we'll be live in Alpha testing by then.

Today the team met to walk through the POS solution workflow inside the LabbOne reader app. Before we open LabbOne up for a broader look, I'd really value your feedback on the reader flow specifically from a POS perspective. I want to make sure it fits the way Fastest Labs actually operates day-to-day.

A few specific areas where your input would help:

**Bundled events (TOX + BAC).** Breath alcohol is a known pain point, and we've seen third-party platforms handle it poorly or skip it entirely. I want the workflow to be flexible enough to cover every real-world scenario — BAT then TOX, TOX then BAT, different collectors, different times, locked and unlocked sequences. If there are edge cases you've run into that we should be designing for, I'd love to hear them.

**Walk-in upsell at the reader.** Dave mentioned a while back that walk-ins often show up requesting one test, and the collector needs to be able to upsell or change the test before payment is processed. He also wanted payment to be available at both the reader and during check-in. We've built toward that, but I want to confirm it matches what you and Dave envisioned.

**Self-check-in kiosk for high-volume facilities.** The new app includes both a scheduler and a walk-in queue. One of our larger clients — who isn't running quite as efficiently as Fastest Labs — has asked for a self-check-in kiosk to help move donors through faster. It would be the same hardware as Labb's old self-testing kiosk, but Fastest Labs-branded and for use with check-in only. It loads the walk-in queue, cross-references the scheduler, and quietly alerts your team when someone checks in so they don't have to break from what they're doing. Is this something Fastest Labs would want to offer franchisees?

Thanks for your patience while I've been out. Looking forward to getting this reader in front of you first and then the entire solution.

Best, James


**James Ramsey**

President

Labb

Image removed by sender. mobilePhone (o) 877 868 9967 | (d) 757 527 8253

Image removed by sender. emailAddress James@Labb.com

Image removed by sender. website labb.com

Image removed by sender. address 2115 Granby Street
Norfolk VA 23517


***IMPORTANT:*** *AI helped me draft this message so I could get it to you faster. I've given it a careful read, but if anything seems unclear or inaccurate, please don't hesitate to ask — I'm always happy to clarify.*