**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

**FAS-TES FRANCHISE SYSTEMS, LLC,**

***Plaintiff,***

v. Case No. 2:26-cv-961

**RAMSEY DIAGNOSTICS CORP., d/b/a LABB,**

***Defendant.***

**MEMORANDUM IN SUPPORT OF DEFENDANT RAMSEY DIAGNOSTICS CORP.'S MOTION TO DISMISS**

Now comes Defendant Ramsey Diagnostics Corp. d/b/a Labb ("Labb"), by counsel, and files its Memorandum in Support of its Motion to Dismiss pursuant to FRCP Rule 12(b)(6) all counts asserted in Plaintiff's Complaint (Dkt. No. 1) as follows:

## I. Introduction.

Plaintiff seeks to transform a commercial dispute between sophisticated contracting parties into claims for breach of contract, fraud, rescission, declaratory relief, restitution, and injunctive remedies. However, the written agreements between the parties, which were attached to the Complaint, defeat the claims Plaintiff attempts to assert.

Plaintiff asserts (1) Labb allegedly failed to provide software meeting Plaintiff's expectations, (2) Labb implemented a fee structure contained in a written amendment[1] executed by both parties, and (3) Plaintiff later became dissatisfied with that amendment and now seeks to avoid it. None of these allegations state a plausible claim for relief under federal pleading standards.

[1] Plaintiff attached the parties' fully executed "Amendment No. 1 to the Exclusive Supplier and Modified Software Development Agreement" (Doc 1-3) to the Complaint. Plaintiff falsely calls the executed amendment a "letter of intent."

Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), a complaint must contain sufficient factual matter to state a plausible claim for relief on its face. Conclusory allegations and legal conclusions masquerading as facts are insufficient. *Ashcroft* 556 U.S. at 678-79; *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 585–588 (4th Cir. 2015). The Complaint in this case falls well short of that standard.

## II. Standard of review.

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Courts need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

Where a complaint relies upon written contracts attached as exhibits, the Court may consider those documents, and the documents control over contrary allegations. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-67 (4th Cir. 2016) ("the exhibit prevails in the event of a conflict between an attached exhibit and the allegations of a complaint"). Similarly, the court may also consider "a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166.

For causes of action asserting fraud, the plaintiff must satisfy the heightened pleading requirements of Rule 9(b), requiring a plaintiff to plead the "time, place, and contents" of the alleged misrepresentation, as well as the identity of the speaker and what was obtained thereby.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). These heightened pleading standards serve at least four purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. … Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Id.*

## III. Argument.

### A. Count I fails to state a claim for breach of contract.

Under Virginia law, a plaintiff asserting breach of contract must allege: 1) a legally enforceable obligation; 2) Defendant's breach; and 3) resulting damages. *Filak v. George*, 267 Va. 612, 619 (2004). Plaintiff identifies an agreement, but it fails plausibly to allege any actionable breach.

The Complaint does not identify a specific contractual provision requiring the software capabilities Plaintiff demands. Plaintiff alleges Labb's software does not include certain features Plaintiff considers "industry standard" and cannot accommodate all third-party collection sites. (Dkt. No. 1 ¶¶ 15-16.) The Complaint does not identify what industry standards were not met, and the Agreement contains no provision requiring compatibility with third-party collection vendors, non-Labb equipment, or every operational preference of Plaintiff's franchisees. The Complaint merely asserts that such features should exist without any factual basis.

The Complaint never identifies contractual language requiring: 1) compatibility with non-Labb cups; 2) compatibility with third-party collection software; 3) accommodation of any

specific operational model alleged by Plaintiff. Accordingly, Count I fails to plead breach of a specific contractual obligation.

The express terms of the Agreement refute Plaintiff's claim One by Labb must be provided under the parties' existing agreement. Plaintiff alleges One by Labb necessarily constitutes software that Labb was already obligated to license. (Dkt. No. 1-2 ¶ 19.) Until the end of the term, the Agreement expressly provides that Labb remains the sole owner of both the Core Software and Modified Software (Dkt. No. 1-2 at 13) and that any development or new software developed using the development fees remain Labb's sole property (Doc 1-2 at 16). The Agreement further grants Labb authority during Years One through Four to determine how development funds are spent and what technology is developed. *Id.* The Agreement does not require Labb to provide every future software platform it develops. Plaintiff's assertion that One by Labb automatically falls within existing licensing rights is a conclusion unsupported by contractual text and insufficient under *Iqbal*.

Plaintiff cannot validly assert One by Labb automatically falls within the gambit of Modified Software. The term Modified software is defined in the contract as software created by Labb to be developed at an unspecified future date that would be "a specialized adaptation of the Core Software with additional unique and proprietary software, source code, and inferencing engine in order to address the specific needs of FL." (Dkt. No. 1-2 at 1.) The Complaint fails to allege Labb breached the agreement by failing to develop or provide the Modified Software. Similarly, the Complaint fails to allege facts supporting the conclusion One by Labb was modified software. There are no facts alleged supporting the proposition One by Labb was developed to "address the specific needs of FL" or what those needs included. Rather, the allegations establish One by Labb is something else. Plaintiff does not, because it cannot,

directly allege One by Labb was Modified Software. At most they allege One by Labb was "developed in conjunction with the Modified Software." (Doc 1 ¶ 19.) Something developed in conjunction with the Modified Software is not the Modified Software. Plaintiff does not identify any relevant contract provision whereby Labb is obligated to provide access to every product or service developed by Labb in conjunction with the Core Software or the Modified Software.

**B. Count I as alleged is barred by the Agreement's exclusive-remedy provisions.**

The Agreement contains comprehensive warranty and limitation-of-liability provisions. Section 3(c) provides the exclusive remedies for nonconforming products and services: 1) replacement; 2) reperformance; 3) refund; or 4) credit. Section 3(d) further provides these remedies are the "sole and exclusive remedy" and expressly excludes lost profits, consequential damages, and other special damages. That section, in all caps states:

> (d) ***Limitation of Section 3 Remedies and Liability***. FL'S AND EACH OF THE CURRENT AND FUTURE FL FRANCHISEES' SOLE AND EXCLUSIVE REMEDY FOR DEFECTIVE PRODUCTS AND/OR SERVICES SHALL BE REFUND, CREDIT, OR REPLACEMENT/RE-PERFORMANCE AS PROVIDED HEREINABOVE IN SECTION 3.(c). IN NO EVENT SHALL LABB BE LIABLE FOR THE COST OF PROCUREMENT OF SUBSTITUTE PRODUCTS OR SERVICES, LOSS OF PROFITS, OR ANY OTHER SPECIAL, PUNITIVE, CONSEQUENTIAL, OR INCIDENTAL DAMAGES, HOWEVER CAUSED, EVEN IF LABB HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IF A COURT OF COMPETENT JURISDICTION FINDS THE FOREGOING LIMITATION INAPPLICABLE, UNENFORCEABLE OR UNLAWFUL FOR ANY REASON, THEN LABB'S LIABILITY TO FL AND/OR TO ANY OF THE CURRENT AND FUTURE FL FRANCHISEES FOR ANY CAUSE OF ACTION ARISING UNDER THIS AGREEMENT, SPECIFICALLY INCLUDING, BUT NOT LIMITED TO, BREACH OF WARRANTY SHALL NOT EXCEED THE RESPECTIVE TOTAL MONETARY AMOUNT WHICH THE AFFECTED FRANCHISEE INDIVIDUALLY AND SEVERALLY PAID TO LABB PURSUANT TO THIS AGREEMENT DURING THE SIX (6) MONTHS IMMEDIATELY PRECEDING THE DATE SUCH CAUSE OF ACTION AROSE.

Under the common law, Virginia courts have long enforced negotiated limitation of remedies clauses. *See e.g., C. E. Wright & Co. v. Shackleford*, 152 Va. 635, 648, 148 S.E. 807, 811 (1929). The Uniform Commercial Code also recognizes the enforceability to damage limitation or exclusion clauses like the one here. Va. Code § 8.2-719. The annotations to this

statute make it clear, "parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect."

Plaintiff seeks damages exceeding $533,000, declaratory relief excusing future obligations, restitution, and other relief not authorized by the contract. The Agreement expressly forecloses such damages. Accordingly, Count I should be dismissed.

Plaintiff's allegations of damages are speculative and conclusory. The Complaint asserts damages of "at least $533,010" but provides no factual basis for the calculation. Under *Twombly* and *Iqbal*, damages, like other necessary elements, must be plausibly alleged, and cannot be pled through bare conclusory statements devoid of supporting facts. The Complaint contains no calculation, identification of lost contracts, description of lost customers, or explanation of the asserted amount. Therefore, the damage allegations are insufficient.

**C. Count II Fails to State a Claim for Fraudulent Inducement**

Count II independently fails for several reasons. First, the Complaint does not satisfy Rule 9(b). Fraud must be pled with particularity under Rule 9(b). The Fourth Circuit requires a plaintiff to plead who made the statement, what was said, when it was said, where it was said, and why it was false. *Harrison*, 176 F.3d at 784. The Complaint generally alleges Labb represented some franchisees had breached exclusivity provisions. (Dkt. No. 1 at 10.) It does not allege any of the facts required by *Harrison*, and the lack of such allegations fails to satisfy Rule 9(b).

Second, Plaintiff alleges only future contractual negotiations, not actionable fraud. Virginia law distinguishes actionable fraud from statements regarding future contractual performance. Plaintiff alleges Labb concocted exclusivity violations by franchisees and used the threat of enforcement to negotiate the Amendment. (Dkt. No. 1 at 9-11.) Plaintiff goes on to

allege Labb's threat of direct intervention with the franchisees in the future, such as conducting audits, was the reason why it was defrauded. "A claim of fraud cannot ordinarily be predicated on unfulfilled promises or statements regarding future events." *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 362 (2010). The Complaint centers on negotiations leading to the July 2026 amendment and future dealings between the parties. These allegations concern expected contractual outcomes, not independently actionable misrepresentations of existing fact.

Third, the fraud claim is barred by Virginia's economic loss rule. Virginia maintains a strict distinction between contract and tort. A tort claim cannot proceed where the duty allegedly violated arises solely from contractual obligations. *Filak*, 267 Va. at 618. "[W]hen a plaintiff alleges and proves nothing more than disappointed economic expectations, the law of contracts, not the law of torts, provides the remedy for such economic losses." *Id.*

The alleged fraud here concerns the contractual exclusivity provisions, the negotiation of contract amendments, and the parties respective contractual rights and obligations. All of these duties arise from the parties' agreements. Accordingly, Plaintiff impermissibly seeks tort remedies for a contract dispute.

Fourth, Plaintiff has not plausibly alleged reliance. The Virginia Supreme Court, in applying the test of justifiable reliance has said:

> that parties to a settlement agreement that [are] in an adversarial relationship and represented by counsel at the time of negotiation and settlement . . . will be *strictly held to this reasonable reliance standard* under Virginia law when seeking to vitiate the settlement based on claims of detrimental reliance on the misrepresentations and/or omissions of information by the adversary.

*Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 384, 820 S.E.2d 596, 606 (2018) (emphasis added).

The Amendment here expressly states the parties would work toward a term sheet, the parties would work toward a definitive agreement, and provided payment and release obligations which were contingent on future events. Taking a strict look at the actions of the Plaintiff in relying upon what it asserts to be unfounded breach allegations by Labb, the Complaint fails to set forth a plausible set of facts that reliance was reasonable or justified. Plaintiff, a sophisticated business entity represented by management and experienced in franchise operations, signed the Amendment itself while the parties were negotiating over alleged breaches of the Contract with the specter of litigation looming. Moreover, Plaintiff asserts Laab made unfounded allegations of exclusivity breaches by the franchisees, but Plaintiff is the party with the duty to conduct an audit. Plaintiff cannot plausibly argue it was deceived when it was the party that was supposed to have or obtain the information supporting or negating evidence of such breaches. The Complaint does not plausibly explain how reliance on unspecified statements was reasonable in light of the written amendment's express terms. Count II should therefore be dismissed.

**D. COUNT III FAILS TO STATE A CLAIM FOR DECLARATORY JUDGMENT.**

Permitting Count III to proceed would improperly transform virtually every contract dispute into a declaratory-judgment action, contrary to the intended purpose of the Act. The Declaratory Judgment Act does not create an independent cause of action. 28 U.S.C. § 2201 says the court *may* provide declaratory relief where an underlying justiciable controversy exists. Because the statute says *may*, the court’s jurisdiction to issue declaratory relief is discretionary. *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937). Declaratory relief is an extraordinary remedy designed to resolve uncertainty about rights before they have fully matured into an accrued cause of action. *Id.* The court should decline to exercise its discretion to provide

declaratory relief simply to obtain a second adjudication of an already accrued contract dispute. *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937) (finding the court's discretion "should not be exercised for the purpose of trying issues involved in cases already pending, especially where they can be tried with equal facility in such cases.") When "another remedy" is available to a party that is "more effective or appropriate…it is neither necessary nor proper to issue the declaration." *Id.* at 325-26.

Plaintiff asserts Laab breached the parties' agreement and utilized fraud to obtain the Amended Agreement, both of which are denied, and Plaintiff has already asserted remedies to resolve the dispute in the form of its first two counts for breach of contract and fraudulent inducement. Plaintiff alleges Labb already breached the contract and seeks damages for that breach. A declaration resolving exactly the same contractual issue generally adds no prospective function. The requested declaration will resolve precisely the same contractual issues this Court must decide in adjudicating the plaintiff's breach of contract and fraud claims. Every declaration sought by Plaintiff merely restates issues already embedded in Counts I and II: 1) whether Labb breached the Agreement, 2) whether the amendment is enforceable, 3) whether fees were authorized, and 4) whether Plaintiff may terminate obligations.

Resolution of the substantive claims necessarily resolves these issues. Declaratory relief here serves no useful or independent purpose, will not resolve any additional uncertainty between the parties, and should therefore be dismissed or declined under the discretionary standard established by the Fourth Circuit. Accordingly, Count III serves no independent purpose and should be dismissed.

**E. The Amendment is an enforceable modification to the parties' Agreement.**

Plaintiff is wrong in its arguments that the Amendment is unenforceable because it either lacked consideration or that it was merely an agreement to agree. No additional consideration was required for the Amendment, and the Amendment was a divisible contract.

**1. No additional consideration was required for the Amendment.**

The Agreement is subject to modification by the parties if there is assent from both parties. *Gustafson v. Southland Life Ins. Co.*, 885 F. Supp. 854, 858 (E.D. Va. 1995) (citing *Stanley's Cafeteria Inc. v. Abramson*, 226 Va. 68, 72 (1983) ("In Virginia, however, parties can mutually assent to modify a contract.")). Generally, consideration is required for the modification of a contract. *Jones v. Kessler*, 98 W. Va. 1, 16 (1925). However, when a controversy of law or fact arises between the parties under the existing contract and they adjust the terms, the new or modified contract is not without consideration and it is not admissible to go behind it to ascertain which party was right in that contention. *Producers' Coal Co. v. Mifflin Coal Mining Co.*, 82 W. Va. 311, 317 (1918). Moreover, under the UCC, no consideration for the modification of the Agreement is required. Va. Code §8.2-209(1) ("An agreement modifying a contract within this title needs no consideration to be binding.")

Here, the parties entered into the Agreement which required Defendant to supply Plaintiff with both goods and services. The Agreement was later modified by the Amendment. The circumstances behind the Amendment, as alleged by Plaintiff, was that Plaintiff agreed to the Amendment because Defendant had asserted multiple breaches of the exclusivity provision. An assertion Plaintiff disputed. Under these circumstances and pursuant to *Producer's Coal*, not only is there no need for consideration, but the court is not to consider and determine which party was right in their competing contentions about exclusivity breaches.

**2. The Amendment is divisible, and the failure or unenforceability of one provision does not invalidate its independent provisions or the underlying agreement.**

Plaintiff's position appears to assume the Amendment must be treated as an indivisible whole because the parties did not reach the "final definitive agreement" contemplated by Sections 2 and 3, none of the Amendment may have continuing effect. Virginia law does not support that conclusion. Under Virginia law, whether a contract containing multiple promises is entire or divisible turns principally on the parties' intent, determined from the language they used and the subject matter of their agreement. *Eschner v. Eschner*, 146 Va. 417, 421-22 (1926). *Eschner* explains that divisibility of the subject matter, although not conclusive, is an important circumstance in determining that intent. *Id.* More recently, the Supreme Court of Virginia applied essentially the same intent-based approach in *Schuiling v. Harris*, 286 Va. 187, 193 (2013). There the Court examined the language employed in the agreement in determining whether a provision identifying a particular arbitration administrator was integral to the parties' bargain or could be severed while leaving their agreement to arbitrate intact. *Id.* at 193-194. The Court held the designation severable and enforced the remaining contractual obligation. *Id.* at 196.

That principle is especially compelling here because the Amendment divides the parties' undertakings into four separately identified sections addressing materially different subjects:

1. Section 1 establishes a new fee structure and addresses announcement of that fee structure to franchisees;
2. Section 2 addresses continued negotiations toward a term sheet and eventual definitive agreement;

3. Section 3 addresses settlement of historical violations of the original Agreement in exchange for a $100,000 payment and contemplated execution of a definitive agreement; and
4. Section 4 expressly provides that the original Agreement remains in full force and effect except insofar as the Amendment specifically modifies it.

Those provisions need not operate as a single, indivisible exchange. Section 1 must be given effect without any court determining what terms the parties might ultimately have negotiated under Section 2. Likewise, obligations arising under the original Agreement must continue under Section 4 regardless of whether Section 2 produced a future agreement. *Eschner* demonstrates why this Amendment should be distinguished from an indivisible contract. There, the Supreme Court found the promises indivisible because a single consideration, the wife's relinquishment of her property rights, supported the husband's several undertakings. *Eschner*, 146 Va. at 421-24. Here, by contrast, the Amendment addresses multiple distinct transactions and performances: new fees, communications to franchisees, future negotiations, settlement of historical claims, payment of $100,000, and preservation of the existing Agreement. That structure strongly supports divisibility rather than one integrated exchange.

**a) Section 4 provides particularly strong evidence that the parties did not intend the Amendment to supplant the Agreement unless a particular provision actually modified it**

The parties expressly agreed that the original Agreement remains "in full force and effect" except to the extent specifically modified by the Amendment. That language defeats any suggestion that unsuccessful negotiations over the contemplated definitive agreement automatically extinguished either the preexisting Agreement or independent modifications

already accomplished by the Amendment. Virginia courts interpret contracts to implement the parties' intention as expressed in their written language. The Amendment must therefore be read not as replacing the original Agreement wholesale, but as making specified modifications while affirmatively preserving everything else.

Section 4 serves two related functions. First, it supplies compelling evidence against indivisibility. If the parties intended the Amendment to constitute one, all or nothing transaction dependent upon execution of a later definitive agreement, there would be little reason to expressly provide that the Agreement continued in full force except where already modified. Second, Section 4 supplies the consequence of the parties' failure to reach a definitive agreement. The parties did not provide that failure to execute that future agreement would terminate the original Agreement. To the contrary, they expressly preserved it as otherwise expressly amended. Plaintiff now asks the Court to invent a new consequence for the failure of later negotiations that conflicts with the contractual language the parties actually chose.

**b) Section 2's potential unenforceability as an "agreement to agree" does not render the amendment's independent provisions unenforceable.**

Section 2 appears materially different from Section 1. Virginia law distinguishes an enforceable present contractual undertaking from an unenforceable promise to reach an agreement in the future. In *W.J. Schafer Associates, Inc. v. Cordant, Inc.*, 254 Va. 514, 519 (1997), the Supreme Court of Virginia held agreements to agree in the future are too vague and indefinite to enforce where the essential terms have not been established. Virginia requires mutual assent to reasonably certain terms before a contractual promise may be enforced. See *Allen v. Aetna Casualty & Surety Co.*, 222 Va. 361, 364 (1981).

These doctrines support, rather than undermine, severability here. Section 2 simply establishes an anticipated negotiating process rather than presently establish the essential terms of the ultimate agreement. If so, the appropriate consequence under *Schafer* is that the Court declines to compel the parties to enter the contemplated definitive agreement. It does not follow that every separate promise appearing in the same Amendment disappears. Section 1 was not contingent upon Section 2. Section 1 contains present and objectively ascertainable duties: a particular fee structure and an obligation concerning announcement of that fee structure. The Amendment therefore resembles contracts containing both presently enforceable undertakings and provisions governing contemplated future arrangements. The fact that the latter never matured into an enforceable contract does not invalidate the former.

**c) Section 3 Contains Distinct Obligations and Conditions That Can Be Analyzed Separately From Section 1**

Section 3 concerns an entirely different subject matter from Section 1, resolution of historical violations of the original Agreement. As described, the contemplated settlement required two events that did not occur, payment of $100,000 and execution of a final definitive agreement governing the parties' future relationship. Neither event occurred. (Dkt. No. 1 ¶24.) Accordingly, the Court can determine the legal consequence of nonperformance under Section 3 without disturbing Section 1. To the extent Section 3 conditioned the release or settlement of past violations on payment of $100,000 and/or execution of a definitive agreement, the failure of those conditions means the contemplated settlement never became operative according to its terms. It does not mean that an unrelated fee modification in Section 1 ceased to exist.

An important distinction from *Eschner* is that the consideration and performance in *Eschner* were intertwined in a single settlement bargain. Here, Sections 1 and 3 can readily be

performed, breached, or enforced independently. The failure of the Section 3 settlement transaction does not require judicial excision of Section 1. Pursuant to Section 4, it simply leaves the parties subject to Agreement with those modifications that actually became effective.

## CONCLUSION

For the foregoing reasons, Defendant Ramsey Diagnostics Corp. d/b/a Labb respectfully requests this Court:

a) Dismiss Counts I, II, and III pursuant to Rule 12(b)(6);

b) Dismiss all requests for declaratory, injunctive, restitutionary, and rescission-based relief;

c) Dismiss the Complaint with prejudice; and

d) Award Defendant costs and fees, including attorney's fees in defending this action as provided by the parties' contract, and

e) Award Defendant such other and further relief as the Court deems just and proper.

Respectfully submitted.

**RAMSEY DIAGNOSTICS CORP.**

By:/s/David B. Oakley
Of Counsel

J. Bryan Plumlee, Esq., VSB No.: 44444
David B. Oakley, Esq., VSB No.: 72226
POOLE BROOKE PLUMLEE PC
4705 Columbus Street, Suite 100
Virginia Beach, VA 23462
Phone: 757-499-1841
Facsimile: 757-552-6016
bplumlee@pbp-attorneys.com
doakley@pbp-attorneys.com
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of October 2026, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will then send the document and a notification of such filing (NEF) to the following party via Electronic Mail:

Jason C, Greaves—jason@binnall.com
Katie L. Raymond—katie@binnall.com

/s/ David B. Oakley
David B. Oakley, Esq., VSB No.: 72226
POOLE BROOKE PLUMLEE PC
4705 Columbus Street, Suite 100
Virginia Beach, VA 23462
Phone: 757-499-1841
Facsimile: 757-552-6016
doakley@pbp-attorneys.com