**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| **FAS-TES FRANCHISE SYSTEMS, LLC,** | ) | |
| ***Plaintiff / Counterclaim Defendant,*** | ) | |
| | ) | **Case No. 2:26-CV-961-RBS** |
| **v.** | ) | |
| **RAMSEY DIAGNOSTICS CORP. D/B/A LABB,** | ) | |
| ***Defendant / Counterclaim Plaintiff.*** | ) | |

**ANSWER AND COUNTERCLAIM**

COME NOW Defendant Ramsey Diagnostics Corporation d/b/a Labb ("Defendant"), by counsel, and for its answer to the Complaint (Dkt. No. 1) filed by Plaintiff Fas-Tes Franchise Systems, LLC, ("Plaintiff"), state as follows:

**ANSWER**

Defendant responds to the specific allegations in the Complaint as follows:

1. In response to the allegations contained in Paragraph 1, Defendant admits only that Plaintiff is a Limited Liability Company incorporated and headquartered in the State of Texas. To the extent that any other facts are alleged in Paragraph 1, Defendant is without sufficient knowledge or information to admit or deny the allegations and accordingly denies all such allegations.

2. Defendant admits the allegations contained in Paragraph 2.

3. Paragraph 3 contains legal conclusions that do not require a response. To the extent that any response is deemed necessary, Defendant does not contest that jurisdiction exists with this Court; however, Defendant denies Plaintiff is entitled to any relief whatsoever.

4. Paragraph 4 contains legal conclusions that do not require a response. To the extent that any response is deemed necessary, Defendant does not contest that jurisdiction exists with this Court; however, Defendant denies Plaintiff is entitled to declaratory relief or any relief whatsoever.

5. In response to Paragraph 5, Defendant only admits that Plaintiff seeks a declaratory judgment; however, Defendant denies Plaintiff is entitled to declaratory relief or any relief whatsoever.

6. Paragraph 6 contains legal conclusions that do not require a response. To the extent that any response is deemed necessary, Defendant does not contest that jurisdiction exists with this Court.

7. Paragraph 7 contains legal conclusions that do not require a response. To the extent that any response is deemed necessary, Defendant does not contest that venue is proper in this Court.

8. In response to Paragraph 8, Defendant admits only that Plaintiff is a drug and DNA testing company and that Plaintiff is a franchisor that maintains a network of franchisees operating across the country. To the extent that any other facts are alleged in Paragraph 8, Defendant is without sufficient knowledge or information to admit or deny the allegations and accordingly denies all such allegations.

9. Defendant admits the allegations contained in Paragraph 9.

10. In response to Paragraph 10, Defendant admits only that Plaintiff and Defendant entered into a written contract entitled the Exclusive Supplier and Modified Software Development

Agreement ("Agreement"). Defendant further admits that Plaintiff has attached a copy of that contract as Exhibit 1 to the Complaint, which the document speaks for itself. Defendant admits only that Plaintiff agreed to exclusively purchase and use Defendant's Products and Services provided for in the Agreement. To the extent that any other facts are alleged in Paragraph 10, Defendant denies all such allegations, and hereby demands strict proof thereof.

11. Defendant admits the allegations contained in Paragraph 11.

12. In response to Paragraph 12, Defendant admits only that Plaintiff and Defendant entered into the Agreement. Defendant further admits that Plaintiff has attached a copy of that contract as Exhibit 1 to the Complaint. Defendant affirmatively alleges that the document speaks for itself and must be read and considered in its entirety. Defendant admits only that Plaintiff agreed to exclusively purchase and use Defendant's Products and Services as provided for in the Agreement. Defendant denies all remaining allegations and hereby demands strict proof thereof.

13. Defendant admits the allegations contained in Paragraph 13.

14. In response to the allegations contained in Paragraph 14, Defendant admits only that Plaintiff and Defendant entered into the Agreement. Defendant further admits that Plaintiff has attached a copy of that contract as Exhibit 1 to the Complaint. Defendant affirmatively alleges that the document speaks for itself and must be read and considered in its entirety. Defendant admits only that the paragraph generally states the development fee segregation requirement as stated in the Agreement but to the extent it varies it is denied. Defendant denies any allegations of Paragraph 14 not specifically admitted and hereby demands strict proof thereof.

15. Defendant denies the allegations contained in Paragraph 15 and hereby demands strict proof thereof.

16. Defendant denies the allegations contained in Paragraph 16 and hereby demands strict proof thereof.

17. Defendant denies the allegations contained in Paragraph 17 and hereby demands strict proof thereof.

18. In response to the allegations contained in Paragraph 18, Defendant admits only that it has been developing a new software platform called “One by Labb.” Defendant denies all remaining allegations.

19. In response to the allegations contained in Paragraph 19, Defendant admits only that Plaintiff and its franchisees may only obtain access to One by Labb through a new agreement. Defendant avers that One by Labb is an entirely different code base from the Modified Software. Defendant denies any allegations of Paragraph 19 not specifically admitted and hereby demands strict proof thereof.

20. In response to the allegations contained in Paragraph 20, Defendant admits only that in the negotiations preceding July 6, 2026, Defendant represented that Plaintiff’s franchisees had committed multiple breaches of the Agreement. Defendant denies all remaining allegations and hereby demands strict proof thereof.

21. In response to the allegations contained in Paragraph 21, Defendant admits only Plaintiff has attached as copy of the Amendment as Exhibit 2 to the Complaint, the Amendment was executed on July 6, 2026, and is an Amendment to the Agreement which speaks for itself and must be read and considered in its entirety. Defendant denies all remaining allegations and hereby demands strict proof thereof.

22. In response to the allegations contained in Paragraph 22, Defendant admits only that the Amendment has a fee structure that applies regardless of which software platform is used.

Defendant admits only that Plaintiff has attached a copy of the Amendment as Exhibit 2 to the Complaint which speaks for itself and must be read and considered in its entirety. Defendant denies any allegations of Paragraph 22 not specifically admitted and hereby demands strict proof thereof.

23. Defendant admits the allegations contained in Paragraph 23, however, the referenced document is not an LOI. Defendant denies all remaining allegations and hereby demands strict proof thereof.

24. In response to the allegations contained in Paragraph 24, Defendant admits only that Plaintiff has attached a copy of the Amendment as Exhibit 2 to the Complaint which speaks for itself and must be read and considered in its entirety. Defendant denies any allegations of Paragraph 24 not specifically admitted and hereby demands strict proof thereof.

25. In response to the allegations contained in Paragraph 25, Defendant admits only that Plaintiff has attached a copy of the Amendment as Exhibit 2 to the Complaint which speaks for itself and must be read and considered in its entirety. Defendant further admits only it implemented the new fees established by the Amendment on September 1, 2026. Defendant denies any allegations of Paragraph 25 not specifically admitted and hereby demands strict proof thereof.

26. In response to the allegations contained in Paragraph 26, Defendant denies the allegations as stated. Defendant avers that Plaintiff agreed to the removal of the direct read function. Defendant further avers that it restored the direct read function whenever a franchisee requested it. Defendant denies any allegations of Paragraph 26 not specifically admitted and hereby demands strict proof thereof.

27. Defendant admits the allegations contained in Paragraph 27.

28. Paragraph 28 contains legal conclusions to which no response is required. To the extent any response is deemed necessary, Defendant denies the allegations in this paragraph and hereby demands strict proof thereof.

29. Defendant re-alleges and incorporates by reference all preceding paragraphs of this Answer as though fully set forth herein.

30. In response to Paragraph 30, Defendant admits only that the Agreement is a valid contract. Defendant denies any allegations of Paragraph 30 not specifically admitted and hereby demands strict proof thereof.

31. In response to Paragraph 31, Defendant admits only that it agreed to provide products and services that conformed to applicable industry standards for functionality and accuracy. Defendant further admits that it agreed to develop and license specialized Modified Software for Plaintiff and its franchisees. Defendant denies any allegations of Paragraph 31 not specifically admitted.

32. Defendant denies the allegations contained in Paragraph 32 and hereby demands strict proof thereof.

33. In response to the allegations contained in Paragraph 33, Defendant admits only that Plaintiff and its franchisees may only obtain access to One by Labb through a new agreement. Defendant denies any allegations of Paragraph 33 not specifically admitted and hereby demands strict proof thereof.

34. Defendant denies the allegations contained in Paragraph 34 and hereby demands strict proof thereof.

35. Defendant denies the allegations contained in Paragraph 35 and hereby demands strict proof thereof.

36. Defendant denies the allegations contained in Paragraph 36 and hereby demands strict proof thereof.

37. In response to the WHEREFORE Paragraph, Defendant denies these allegations and avers that Plaintiff is not entitled to any relief whatsoever under any legal theory whatsoever.

38. Defendant re-alleges and incorporates by reference all preceding paragraphs of this Answer as though fully set forth herein.

39. In response to Paragraph 38, Defendant admits only it notified Plaintiff of exclusivity breaches and negotiated settlements with Plaintiff, which Plaintiff did not pay. Defendant denies any allegations of Paragraph 38 not specifically admitted and hereby demands strict proof thereof.

40. Defendant denies the allegations contained in Paragraph 39 and hereby demands strict proof thereof.

41. Defendant denies the allegations contained in Paragraph 40 and hereby demands strict proof thereof.

42. Defendant denies the allegations contained in Paragraph 41 and hereby demands strict proof thereof.

43. Defendant denies the allegations contained in Paragraph 42 and hereby demands strict proof thereof.

44. Defendant denies the allegations contained in Paragraph 43 and hereby demands strict proof thereof.

45. In response to the WHEREFORE Paragraph, Defendant denies these allegations and avers that Plaintiff is not entitled to any relief whatsoever under any legal theory whatsoever.

46. Defendant re-alleges and incorporates by reference all preceding paragraphs of this Answer as though fully set forth herein.

47. Paragraph 45 contains legal conclusions to which no response is required. To the extent any response is deemed necessary, Defendant denies the allegations in this paragraph and hereby demands strict proof thereof.

48. In response to Paragraph 46, Defendant admits only that this is the contention of Plaintiff but denies that the contention is correct. Defendant denies any allegations of Paragraph 46 not specifically admitted and hereby demands strict proof thereof.

49. In response to Paragraph 47, Defendant admits only that this is the contention of Plaintiff but denies that the contention is correct. Defendant denies any allegations of Paragraph 47 not specifically admitted and hereby demands strict proof thereof.

50. In response to Paragraph 48, Defendant admits only that this is the contention of Plaintiff but denies that the contention is correct. Defendant denies any allegations of Paragraph 48 not specifically admitted and hereby demands strict proof thereof.

51. In response to Paragraph 49, Defendant admits only that the Amendment authorizes new fees as of September 1, 2026, and the Amendment is a valid and enforceable contract. Defendant denies any allegations of Paragraph 49 not specifically admitted and hereby demands strict proof thereof.

52. In response to Paragraph 50, Defendant denies Plaintiff is entitled to the requested relief.

53. In response to the WHEREFORE Paragraph and all subparts thereto, Defendant denies these allegations and avers that Plaintiff is not entitled to any relief whatsoever under any legal theory whatsoever.

54. Any allegation not admitted with specificity herein is hereby denied and Defendant demands that Plaintiff provide strict proof of their claims in accordance with the law.

**Averments and Affirmative Defenses**

Without assuming any burden of proof that by law is not otherwise Defendant's, Defendant asserts the following averments and affirmative defenses:

55. Defendant herein incorporates by reference its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed contemporaneously with its Answer because Plaintiff's Complaint fails to state a claim against the Defendant upon which relief can be granted.

56. Plaintiff has failed to plead its fraud-based claims with the particularity required by Fed. R. Civ. P. 9(b)

57. Plaintiff's claims are barred by its own breaches of the contract.

58. Plaintiff's claims are barred or limited by written agreements.

59. Plaintiff's claims are barred by the Agreement's express limitation-of-remedies provisions.

60. Plaintiff cannot prevail on their declaratory and injunctive relief claims because, as pled, declaratory and injunctive relief are remedies, not an independent cause of action.

61. Plaintiff cannot prevail on their declaratory judgment claim because it is entirely duplicative of the contract claims and seeks declarations that merely mirror issues already presented through Plaintiff's substantive causes of action.

62. Defendant has acted at all times in good faith, in conformity with, and in reliance upon the Agreement and its Amendment.

63. To the extent Plaintiff seeks to recover for periods falling outside the applicable statute of limitations, their claims are barred.

64. Plaintiff failed to plead a basis for recovery of attorneys' fees.

65. Defendant reserves the right to assert any additional and further defenses and affirmative defenses as may be revealed by additional information received or as may be warranted by discovery.

WHEREFORE, having fully answered, Defendant respectfully requests that the Court dismiss Plaintiff's claims with prejudice, award Defendant its costs, award reasonable attorneys' fees as provided for in the Agreement, award Defendant the relief requested in its Counterclaim, and any other relief this Court deems appropriate.

## **COUNTERCLAIM**

Counterclaim Plaintiff, Ramsey Diagnostics Corporation d/b/a Labb, by counsel, files this Counterclaim against Counterclaim Defendant, Fas-Tes Franchise Systems, LLC, on the grounds and in the amount as hereinafter set forth.

### **Parties**

1. Ramsey Diagnostics Corporation d/b/a Labb ("Counterclaim Plaintiff") is a medical technology and software development Virginia stock corporation, organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located at 2115 Granby St, Norfolk, Virginia, 23517, USA.

2. Fas-Tes Franchise Systems, LLC ("Counterclaim Defendant"), is a limited liability company and franchisor, organized and existing under the laws of Texas, with its principal executive office located at 5718 University Heights, Suite 105, San Antonio, Texas, 78249, USA.

## **Jurisdiction and Venue**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332(a) because the amount in controversy exceeds $75,000.00 and the matter is between citizens of different States within the United States, namely Virginia and Texas.

4. This Counterclaim is being filed pursuant to Fed. R. Civ. P. 13 and arises out of the transaction or occurrence that is the subject of Counterclaim Defendant's claim and does not require adding another party over whom the Court cannot acquire jurisdiction.

5. This Court has personal jurisdiction over Counterclaim Defendant pursuant to Virginia Code §8.01-328.1 because the Counterclaim Defendant consented to the exclusive personal jurisdiction and sole venue of the state and federal courts sitting in Norfolk, Virginia in section 8(g) of the Exclusive Supplier and Modified Software Development Agreement. Dkt. No. 1-2, p. 10.

6. Counterclaim Defendant filed this lawsuit and therefore waived personal jurisdiction and venue.

## **Facts**

7. On or about December 21, 2022, Counterclaim Plaintiff and Counterclaim Defendant entered into a valid, binding, and enforceable written contract entitled the Exclusive Supplier and Modified Software Development Agreement (hereinafter "Agreement"). Dkt. No. 1-2.

8. The Agreement is for access to Counterclaim Plaintiff's proprietary software and testing equipment to process employer-submitted drug tests and toxicology screenings.

9. The Agreement secures a limited exclusive license for Counterclaim Defendant's franchisees to use the Counterclaim Plaintiff's software as defined in the Agreement.

10. The Agreement provides a limited exclusive license to exclusively purchase and use Counterclaim Plaintiff's products and services for all drug tests provided to customers by Counterclaim Defendant and its franchisees operated through its Core Software (collectively, the "Products and Services") outlined in Section 1(a) and Exhibit A to the Agreement. *Id*. pp. 2-3, 12.

11. The Agreement provides a limited exclusive license to use a specialized adaptation of the Core Software with additional unique and proprietary software, source code, and inferencing engine in order to address the specific needs of Counterclaim Defendant created after the date of the Agreement resulting from a development fee paid by the Counterclaim Defendant's franchisees. ("Modified Software"). *Id*. at p. 1 (recitals are incorporated at p. 2).

12. The parties agreed within Exhibit B to the Agreement ("Pricing") at section 6(a) that development fees would be used in part to modify, maintain, upgrade and support the Modified Software and that during the first year the focus would be to develop capabilities listed in Exhibit E to the Agreement. *Id*. at p. 17.

13. On or about July 6, 2026, Parties executed Amendment No. 1 to the Agreement (hereinafter "Amendment No. 1"). Dkt. No. 1-3.

14. Amendment No. 1 establishes new software and revenue-based fees for all of the Counterclaim Defendant's franchisees effective September 1, 2026. *Id*. at pp. 1-2.

15. Counterclaim Defendant's franchisees have purchased unauthorized products.

16. Counterclaim Defendant's franchisees have used unauthorized laboratories.

17. Counterclaim Defendant has breached the Agreement.

18. Counterclaim Plaintiff issued a formal Notice of Breach and Request for Cure to Defendant on August 11, 2026 (the "Notice"). Attached hereto as Exhibit 1.

19. The Notice was sent via U.S. mail return receipt requested pursuant to section 8(e) of the Agreement. *Id.*

20. Counterclaim Defendant received the Notice on August 18, 2026. See letter sent via email by counsel for Counterclaim Defendant acknowledging receipt. Attached hereto as Exhibit 2.

21. The Notice triggered a strict thirty (30) day contractual period for Counterclaim Defendant to cure in the manner set forth in the Agreement and Notice.

22. Under section 2(d) of the Agreement, Counterclaim Defendant is required after notice to conduct an audit of the "offending franchisee's records to verify the breach of exclusivity." Dkt. No. 1-2, p. 5.

23. Further, under the cure provision Counterclaim Defendant is required to pay Counterclaim Plaintiff "liquidated damages equal to the price the franchisee would have paid [Counterclaim Plaintiff] had the franchisee purchased and used [Counterclaim Plaintiff's] Products and Services . . ." *Id.* (emphasis added).

24. On or about September 3, 2026, representatives of Counterclaim Plaintiff met with representatives of Counterclaim Defendant at the office of Counterclaim Defendant's counsel in San Antonio, Texas to discuss settlement of the outstanding breaches.

25. Counterclaim Plaintiff CEO James Ramsey once again requested Counterclaim Defendant take action to cure its breach and Counterclaim Defendant, through its counsel, repeatedly asserted an audit was not warranted.

26. Counterclaim Defendant's counsel refused to let Counterclaim Defendant speak and refused to acknowledge Counterclaim Plaintiff providing written documentation of Counterclaim Defendant openly admitting that breaches had occurred, asserting that three

franchisees had openly admitted to breaching, and asserting that when comparing the number of tests purchased from Counterclaim Plaintiff to the number of tests results entered into Counterclaim Plaintiff's system there is clear evidence that not all tests were being purchased from Counterclaim Plaintiff.

27. Counterclaim Defendant failed to cure its breach.

**Counterclaim Defendant's Breach has Damaged Plaintiff in an Amount in Excess of $4,307,648.67**

**Product One: POCT Test Kits**

28. The Point of Care Test ("POCT") kit is a single product type.

29. In accordance with the Agreement section 1(a)(1) and as part of normal operations, all franchisees are required to enter all POCT test results into Counterclaim Plaintiff's proprietary software ("Lab Fusion"). Dkt. No. 1-2, p. 2.

30. Counterclaim Plaintiff is entitled under the Agreement to keep this data as part of its records. *Id*. at Dkt. No. 1-2, p. 11. section 8(k).

31. The entry of this data by franchisees has provided Counterclaim Plaintiff the total number of POCT tests performed by all franchisees ("Tests Performed") during the course of the Agreement.

32. Counterclaim Plaintiff also maintains a database of all POCT test kits ordered by all franchisees directly from Counterclaim Plaintiff ("Test Kits Ordered").

33. Counterclaim Defendant and its franchisees are required to order the POCT test kits exclusively from Counterclaim Plaintiff in accordance with Agreement section 1(a)(2). Dkt. No. 1-2, p. 2.

34. The Tests Performed database is much larger than the Test Kits Ordered database.

35. A large number of POCT test kits were not ordered from Counterclaim Plaintiff in violation of the Agreement.

36. For example, the Henderson, NV and Las Vegas, NV franchisees purchased 325 tests from Counterclaim Plaintiff but entered 2,992 test results into the Lab Fusion software. Ex. 3.

37. Averaging the yearly prices at approximately $7.13 per POCT test kit, the lost revenue of 2,667 tests is $19,013.39 from only these two franchisees.

38. Since December 2022, there have been a total of 995,759 POCT tests performed by franchisees with the results entered.

39. With QR Codes located on Counterclaim Plaintiff's POCT test kits, Counterclaim Plaintiff tracks the usage of authorized test kits.

40. Since December 2022, franchisees have tested only 794,050 POCT test kits purchased from Plaintiff.

41. Franchisees have purchased during the period of the Agreement a total of 850,450 POCT test kits.

42. Counterclaim Plaintiff further maintains a log containing the number of unused POCT test kits purchased by the franchisees.

43. Franchisees maintain a current inventory of approximately 56,400 POCT test kits (adjusted down based upon information and belief that franchisees inaccurately self-adjusted their inventory levels).

44. Each franchisee possesses a Labb testing station to test POCT test kits.

45. To complete the testing process, the franchisee uses the Labb testing station.

46. The Counterclaim Plaintiff's POCT test kit provides immediate results for the franchisee.

47. The Counterclaim Plaintiff's POCT test kit in conjunction with the Labb testing station automatically enters the test result data into the Lab Fusion software.

48. Unauthorized kits are not compatible with the Labb testing station.

49. Franchisees using unauthorized POCT test kits must use a manual, direct read function.

50. Results for unauthorized POCT test kits are then manually entered into the Lab Fusion software.

51. The price of Counterclaim Plaintiff's POCT test kits varies depending on the number of panels.

52. The number of panels dictates the number of substances to be tested for.

53. POCT test kits vary in type from six (6) panel kits to twenty-three (23) panel kits.

54. The types of POCT test kits available have changed over time.

55. The price of the POCT six (6) panel test kit is currently $7.01.

56. The price of the POCT twenty-three (23) panel test kit is currently $13.50.

57. The price of POCT test kits has increased over time.

58. Counterclaim Defendant has agreed to each and every price increase of the POCT test kits. Ex. 4.

59. Franchisees purchase different types of POCT test kits depending on their need.

60. Based on Counterclaim Plaintiff's own POCT revenue received, the average POCT test kit purchase price over the period of the Agreement is approximately $7.13 per POCT test kit.

61. There were 201,709 outside POCT test kits not purchased from Labb that were used and entered into the system by franchisees.

62. Multiplying 201,709 outside POCT test kits by approximately $7.13, Counterclaim Plaintiff sustained losses in the amount of $1,438,009.49.

63. Counterclaim Plaintiff has received $6,062,967.81 from Counterclaim Defendant for authorized POCT tests over the course of the Agreement.

64. Had all 995,759 POCT tests been submitted through Counterclaim Plaintiff, it would have received approximately $7,500,977.30.

**Product Two: Laboratory Tests**

65. In addition to providing point of care tests, Counterclaim Plaintiff contracts with off-site laboratories to service franchisees. ("Laboratory Testing")

66. Counterclaim Plaintiff has three (3) contracted, authorized off-site labs: Quest, averhealth and Omega.

67. Laboratory Testing has been exclusive under the Agreement since Year 2 (December 21, 2023), requiring all franchisees to use authorized off-site laboratories. Dkt. No. 1-2, p. 3, section 1(b).

68. Counterclaim Defendant former CEO Dave Claflin and current Vice President John Smith acknowledged that Laboratory Testing has been exclusive under the Agreement since December 21, 2023. Ex. 5

69. For some franchisees, off-site Laboratory Testing generates higher revenue than POCT testing.

70. Franchisees conduct POCT tests in a higher volume than off-site Laboratory Testing, but Laboratory Testing has a higher price and Laboratory Testing breaches by the franchisees are more common.

71. Upon information and belief, Counterclaim Defendant and its franchisees paid at least $5,000,651.53 in total for Laboratory Testing during the contract period, which should have been paid entirely to Counterclaim Plaintiff.

72. Counterclaim Plaintiff has received $2,131,012.35 from Counterclaim Defendant and its franchisees for Laboratory Testing.

73. Subtracting the $2,131,012.35 from the $5,000,651.53 for the Laboratory Testing which should have been exclusively conducted through Counterclaim Plaintiff's authorized facilities means Counterclaim Defendant's breach of the exclusive contract for Laboratory Testing has damaged Counterclaim Plaintiff in excess of $2,869,639.18.

**Summary of Losses for Both Products**

74. Counterclaim Plaintiff received $6,062,967.81 for POCT test kits during the contract period.

75. If not for Counterclaim Defendant's breaches, Counterclaim Plaintiff should have received $7,500,977.30 for POCT test kits during the contract period.

76. Due to Counterclaim Defendant's POCT breaches, Counterclaim Plaintiff has sustained losses in the amount of $1,438,009.49.

77. Counterclaim Plaintiff received $2,131,012.35 from Counterclaim Defendant for Laboratory Testing during the contract period.

78. If not for Counterclaim Defendant's breaches, Counterclaim Plaintiff should have received at least $5,000,651.53 for Laboratory Testing during the contract period.

79. Due to Counterclaim Defendant's Laboratory Testing breaches, Counterclaim Plaintiff has sustained losses in excess of $2,869,639.18.

80. The $1,438,009.49 POCT breaches added to the $2,869,639.18 Laboratory Testing breaches is a loss of at least $4,307,648.67.

**Counterclaim Defendant Failed to Conduct an Audit as Required**

81. Counterclaim Defendant received notice of the exclusivity breaches on August 18, 2026. Ex. 2.

82. The Notice triggered a strict thirty (30) day contractual period for Counterclaim Defendant to cure in the manner set forth in the Agreement and Notice.

83. Under section 2(d) of the Agreement, Counterclaim Defendant is required after notice to conduct an audit of the "offending franchisee's records to verify the breach of exclusivity." Dkt. No. 1-2, p. 5.

84. Exhibit C to the Franchise Disclosure Document is the "Franchise Agreement".

85. The Franchise Agreement grants franchisees the right to operate a franchise subject to the terms and conditions of the Franchisee Agreement.

86. Section 13 to the Franchise Agreement, known as "Records and Reports", section A "Accounting and Records" obligates franchisees to preserve full, complete and accurate books, records and accounts, referred to collectively as "Business Records" for at least five years.

87. Section 13(B) to the Franchise Agreement known as "Reports and Tax Returns" states "Franchisee, at its expense must furnish to [Counterclaim Defendant] for inspection or audit the Business Records . . . and must afford [Counterclaim Defendant] full and free access to such Business Records . . . [Counterclaim Defendant] has the right to make extracts from, and copies of, all Business Records.

88. Further, Section 14 to the Franchise Agreement, known as "Inspection, Audits and Step-In Rights" under section A "The Franchisor's Right to Inspect the Franchised Business" states "To determine whether Franchisee is complying with this Franchisee Agreement, Franchisor has the right at any time during business hours, and without prior notice to Franchisee, to inspect the Business Records, and the Franchised Business and all the records, reports and information related thereto."

89. Counterclaim Defendant has had at all times the foreseeable right and obligation to access the records of all franchisees and conduct an audit.

90. Counterclaim Defendant has not conducted an audit to cure the breach which is itself a breach of the Agreement.

**Franchisees Admitted to Breaches by Sending Emails and Submitting Support Tickets**

91. During the period of Counterclaim Defendant's breach, franchisees submitted at least 101 requests to Counterclaim Plaintiff related to test results from facilities other than Counterclaim Plaintiff's approved facilities ("Support Tickets").

92. The very existence of these Support Tickets is further evidence of franchisee breaches.

93. During the period of Counterclaim Defendant's breach, franchisees sent at least eighty-three (83) emails to Counterclaim Plaintiff regarding supplies, test results, collections, chain-of-custody forms, and accounts for unauthorized facilities.

**Counterclaim Defendant Intentionally Directs the Franchisees to Violate the Agreement**

94. Counterclaim Defendant sent Counterclaim Plaintiff its instructions to franchisees to create accounts with unauthorized facilities. At least twenty-nine (29) emails were sent to franchisees with these instructions.

95. Counterclaim Defendant President and CEO Matt Kunz admitted to violations of the Agreement pursuant to a joint memorandum issued to all franchisees on or about July 13, 2026 (the "Memorandum") attached hereto as Exhibit 6.

96. Counterclaim Defendant has verbally informed franchisees they are free to use other labs.

97. Counterclaim Defendant admitted on multiple occasions that such breaches had in fact occurred. Ex. 7.

**COUNT I: Specific Performance of Counterclaim Defendant to Conduct Contractually Obligated Audit**

98. Counterclaim Plaintiff hereby incorporates and re-alleges all prior paragraphs by reference herein.

99. The Parties agreed under Section 2(d) to the Agreement ("Unauthorized Purchases"), in the event any Franchisee fails to comply fully with the exclusivity requirements of Sections 1(a) and (b), the breach is deemed to be a breach by Counterclaim Defendant itself. Dkt. No. 1-2, p. 5.

100. Under section 2(d) of the Agreement, Counterclaim Defendant is required after notice to conduct an audit of the "offending franchisee's records to verify the breach of exclusivity." Dkt. No. 1-2, p. 5.

101. Counterclaim Defendant has had notice of the breaches of exclusivity since August 18, 2026. Ex. 2.

102. The Notice triggered a strict thirty (30) day contractual period for Counterclaim Defendant to cure in the manner set forth in the Agreement and Notice.

103. Over thirty (30) days have passed since August 18, 2026.

104. Counterclaim Defendant has not conducted its contractually obligated audit of offending franchisees.

105. Counterclaim Plaintiff has notified Counterclaim Defendant of widespread noncompliance that would warrant an audit of all franchisees.

106. Counterclaim Plaintiff prays the Court order the Counterclaim Defendant conduct its contractually obligated audit of all franchisees.

**COUNT II: Preliminary and Permanent Injunction of Counterclaim Defendant to Cease Directions to Franchisees to Violate the Agreement**

107. Counterclaim Plaintiff hereby incorporates and re-alleges all prior paragraphs by reference herein.

108. Counterclaim Defendant intentionally directs its franchisees to violate the Agreement. Countercl. ¶ 94.

109. Counterclaim Defendant has and will continue to cause losses for Counterclaim Plaintiff.

110. Counterclaim Plaintiff prays the Court order the Counterclaim Defendant cease all directions to its franchisees to violate the Agreement.

**COUNT III: Breach of Contract – Violation of Exclusivity Covenant**

111. Counterclaim Plaintiff hereby incorporates and re-alleges all prior paragraphs by reference herein.

112. Counterclaim Defendant has materially breached the Agreement by its franchisees failing to purchase the required Products and Services from Counterclaim Plaintiff.

113. Pursuant to the express terms of the Agreement, any failure by a franchisee to comply with the exclusivity requirements of Sections 1(a) and 1(b) automatically constitutes a material breach by Counterclaim Defendant itself.

114. Under the Agreement's enforcement mechanisms, Counterclaim Defendant had a thirty (30) day period from the date of the Notice to cure the Breach of Exclusivity.

115. Counterclaim Defendant has materially breached the Agreement by failing to conduct the required audit of its franchisees.

116. Counterclaim Defendant has materially breached the Agreement by failing to pay Labb the required damages for the breaches of the Agreement.

117. Counterclaim Plaintiff prays the Court order Counterclaim Defendant to pay at least $4,307,648.67 for its breaches of the Agreement or an amount determined by Counterclaim Defendant conducting a contractually obligated audit.

**COUNT IV: Breach of Contract – Instigating Litigation**

118. Counterclaim Plaintiff hereby incorporates and re-alleges all prior paragraphs by reference herein.

119. Pursuant to section 8(f) of the Agreement, the defaulting Party shall reimburse the non-defaulting Party for all costs and expenses reasonably incurred by the non-defaulting Party in connection with the default, including, without limitation, reasonable attorney fees. Dkt. No. 1-2, p. 10.

120. Additionally, any judge presiding over such suit or action shall award to the prevailing Party in addition to, and not in lieu of, all other available legal and equitable relief, the reasonable attorney fees, costs, and expenses incurred by the Party in connection with such suit or action. *Id.*

121. Counterclaim Defendant filed a Complaint, a Motion for a Temporary Restraining Order and Preliminary Injunction, and a Motion for an Expedited Hearing on the Motion for a Temporary Restraining Order and Preliminary Injunction.

122. Responding to these filings require Counterclaim Plaintiff to engage in expensive litigation.

123. Counterclaim Defendant created these filings to avoid the cost of auditing franchisees in breach of the Agreement.

124. Counterclaim Defendant created these filings to avoid compensating Counterclaim Plaintiff for the breaches of the Agreement.

125. Counterclaim Defendant filed many pleadings to gain an advantage in litigation but has done so in violation of the Agreement and its Amendment.

126. Counterclaim Plaintiff further seeks all attorney fees associated with this legal action for Counterclaim Defendant's failure to comply with the Agreement.

**Prayer for Relief**

WHEREFORE, Ramsey Diagnostics Corporation d/b/a Labb, by counsel, respectfully requests this Court enter a judgment in the Counterclaim Plaintiff's favor, and against the Counterclaim Defendant, Fas-Tes Franchise Systems, LLC, as follows:

1. Order Counterclaim Defendant to conduct its contractually obligated audit

2. Order Counterclaim Defendant to cease all directions to franchisees to violate the Agreement

3. Granting judgment in favor of Counterclaim Plaintiff in the amount of $4,307,648.67, or in an amount as otherwise determined at trial;

4. Awarding Counterclaim Plaintiff its reasonable attorneys' fees, costs, and expenses; and

5. Granting such further relief as this Court deems necessary and proper.

Respectfully submitted this 5th day of October, 2026.

RAMSEY DIAGNOSTICS CORP.

By:/s/David B. Oakley____________
Of Counsel

J. Bryan Plumlee, Esq. (VSB # 44444)
David B. Oakley, Esq. (VSB # 72226)
POOLE BROOKE PLUMLEE PC
4705 Columbus Street, Suite 100
Virginia Beach, Virginia 23462
Telephone: (757) 499-1841
Facsimile: (757) 552-6016
Email: bplumlee@pbp-attorneys.com
doakley@pbp-attorneys.com
*Counsel for Defendant / Counterclaim Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of October 2026, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will then send the document and a notification of such filing (NEF) to the following party via Electronic Mail:

Jason C, Greaves—jason@binnall.com
Katie L. Raymond—katie@binnall.com

/s/ David B. Oakley________________
David B. Oakley, Esq., VSB No.: 72226
POOLE BROOKE PLUMLEE PC
4705 Columbus Street, Suite 100
Virginia Beach, VA 23462
Phone: 757-499-1841
Facsimile: 757-552-6016
doakley@pbp-attorneys.com