UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **FAS-TES FRANCHISE SYSTEMS, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**RAMSEY DIAGNOSTICS CORP., d/b/a LABB,**<br><br>*Defendant.* | Case No. 2:26-cv-961-RBS-LRL |

**PLAINTIFF FAS-TES FRANCHISE SYSTEMS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Jason C. Greaves, VSB No. 86164
Katie L. Raymond, VSB No 101624
BINNALL LAW GROUP, PLLC
717 King Street
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
katie@binnall.com

Robert M. Park (pro hac vice forthcoming)
Chase C. Parsons (pro hac vice forthcoming)
UHL, FITZSIMONS, BURTON, WOLFF & RANGEL, PLLC
4040 Broadway, Suite 430
San Antonio, Teas 78209
Phone: (210) 829-1660
Fax: (210) 829-1641
rpark@uhlfitzsimons.com
cparsons@uhlfitzsimons.com

*Counsel for Plaintiff Fas-Tes Franchise Systems, LLC*

**TABLE OF CONTENTS**


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

STANDARD OF REVIEW ........ 1

ARGUMENT ........ 2

I. Count I sufficiently states a claim for breach of contract. ........ 2

II. Limitation of Remedies is inapplicable to the matters before the Court. ........ 6

III. Count II plausibly states a claim for fraudulent inducement. ........ 7

IV. Count III sufficiently states a claim for declaratory judgment. ........ 12

V. Defendant improperly relies upon the merits of the case. ........ 13

a. Additional consideration was required to create an amendment. ........ 14
b. Arguments of divisibility are irrelevant and premature for 12(b)(6) purposes. ........ 16

PRAYER ........ 17

CERTIFICATE OF SERVICE ........ 18

# TABLE OF AUTHORITIES

## Cases

*Abi-Najm v. Concord Condo., LLC*,
280 Va. 350, 362, 699 S.E.2d 483, 489 (2010) .......... 11

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) .......... 1, 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555–56 (2007) .......... 1, 2, 5

*Crowe v. Henry*,
43 F.3d 198, 203 (5th Cir. 1993) .......... 16

*Dudley v. Estate Life Ins. Co. of Am.*,
220 Va. 343 (1979) .......... 8

*ePlus Tech., Inc. v. Aboud*,
313 F.3d 166, 180 (4th Cir. 2002) .......... 8

*Fayetteville Inv'rs v. Commercial Builders, Inc.*,
936 F.2d 1462, 1465 (4th Cir. 1991) .......... 4

*George Robberecht Seafood, Inc. v. Maitland Bros. Co.*,
220 Va. 109, 111–12 (1979) .......... 11

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159, 166 (4th Cir. 2016) .......... 4

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776, 784 (4th Cir. 1999) .......... 10

*King v. Rubenstein*,
825 F.3d 206, 212 (4th Cir. 2016) .......... 2, 16

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*,
848 F.2d 674, 679 (6th Cir. 1988) .......... 8

*Ocasio-Hernandez v. Fortuno-Burset*,
640 F.3d 1, 12–13 (1st Cir. 2011) .......... 2

*Picture Lake Campground, Inc. v. Holiday Inns, Inc.*,
497 F. Supp. 858, 866–67 (E.D. Va. 1980) .......... 7

*Renfro v. Unisys Corp.*,
671 F.3d 314, 320 (3d Cir. 2011) .......... 2

*Republican Party v. Martin*,
980 F.2d 943, 952 (4th Cir. 1992) .......... 1, 14

*Richmond v. Madison Mgmt. Grp., Inc.*,
918 F.2d 438, 447 (4th Cir. 1990) .......... 12

*Seward v. N.Y. Life Ins. Co.*,
154 Va. 154, 168 (1930) .......... 14

*Skinner v. Switzer*,
562 U.S. 521, 529–30 (2011) .......... 1

*Skyline Restoration, Inc. v. Church Mut. Ins. Co.*,
20 F.4th 825, 829 (4th Cir. 2021) .......... 2, 16

*Steyhr Daimler Puch of America Corp. v. Pappas*,
35 B.R. 1001, 1005 (E.D. Va. 1983) .......... 7

*Strickland v. United States*,
32 F.4th 311, 347 (4th Cir. 2022) .......... 2, 16

*Sweely Holdings v. SunTrust Bank et al.*,
Record No. 171165 (Va. 2018) .......... 12

*United States ex rel. Bledsoe v. Cmty. Health Sys.*,
501 F.3d 493, 503 (6th Cir. 2007) .......... 8

*United States ex. rel. Clausen v. Lab. Corp. of Am., Inc.*,
290 F.3d 1301, 1310 (11th Cir. 2001) .......... 8

*Wilson v. Carpenter*,
91 Va. 183, 187, 21 S.E. 243, 244 (1895) .......... 11

**Statutes**

Va. Code § 8.2-601 .......... 15

Va. Code § 8.2-612 .......... 15

Va. Code §8.2-209, Official Comment 2 .......... 14

Now comes Plaintiff, Fas-Tes Franchise Systems, LLC.'s ("Fas-Tes"), and files this its Memorandum in Opposition of Defendant, Ramsey Diagnostics Corp., d/b/a Labb's ("Labb") Motion to Dismiss pursuant to FRCP 12(b)(6) (the "Motion"), and in support thereof would respectfully show the Court as follows:

## INTRODUCTION

Defendant's Motion seeks a complete dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), but utterly ignores the requirement at the motion to dismiss stage of viewing all facts and reasonable inferences in favor of the Plaintiff.

## STANDARD OF REVIEW

A motion to dismiss under FRCP 12(b)(6) tests the formal sufficiency of the plaintiff's statement of its claim for relief in its complaint. *See Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The motion cannot be used to resolve factual issues or the merits of the case. *Id.* A motion to dismiss under FRCP 12(b)(6) is appropriate only if the plaintiff has not provided fair notice of its claim and factual allegations that–when accepted as true–are plausible and rise above mere speculation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

The issue is not whether the plaintiff will ultimately prevail but whether the complaint contains enough factual material to raise a right to relief above the speculative level. *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011); *Renfro v. Unisys*

*Corp.*, 671 F.3d 314, 320 (3d Cir. 2011); *Twombly*, 550 U.S. at 555–67; *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12–13 (1st Cir. 2011).

"The Court must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Strickland v. United States*, 32 F.4th 311, 347 (4th Cir. 2022) (quoting *Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F.4th 825, 829 (4th Cir. 2021), in turn quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)).

## ARGUMENT

As a threshold matter, Defendant's Motion and Memorandum fails to properly articulate the standard for a Rule 12(b)(6) motion, and ignores the requirement that the Court should review the Complaint in Plaintiff's favor. Setting that aside, Defendant's motion substantively fails for each count.

### I. Count I sufficiently states a claim for breach of contract.

Defendant incorrectly claims that Plaintiff's Complaint fails to identify a specific contractual provision requiring the software capabilities Plaintiff demands, and that the Complaint also fails to identify what industry standards were not met. Paragraph 31 of the Complaint, however, specifically identifies that Labb promised in the Original Agreement "to provide products and services that conformed to applicable industry standards for functionality and accuracy." Dkt. 1 ¶ 31. The Original Agreement attached and incorporated into the Complaint states that "Labb warrants to FL and the Current and Future FL Franchisees that the Product will

conform to applicable industry standards for functionality and accuracy and that Labb and its authorized designees will render the Services in a manner which conforms to the applicable industry standards." Dkt. 1-2 at 2. Having incorporated the factual allegations in the Complaint's preceding paragraphs, Count I sufficiently identifies that the Parties are both involved in the drug testing industry, specifically alleges that Labb's software failed to meet the applicable drug testing industry standards for functionality and accuracy, and states that Labb's current software lacks capabilities commonly available in industry-standard products and software. The Complaint goes far beyond simply offering 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' and instead gives detailed expansions of the complained breaches by identifying specific industry standards for functionality and accuracy related to essential capabilities alongside a failure of functionality commonly available in industry-standard products and software. Dkt. 1 ¶¶ 8–9, 15–18.

The Complaint goes far beyond simply offering 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' and instead gives detailed expansions of the complained breaches by identifying specific industry standards for functionality and accuracy related to essential capabilities alongside a failure of functionality commonly available in industry-standard products and software. *Id.* ¶¶ 15–18. Indeed, the Complaint references Defendant's own written admission that its software was "obsolete" and "could not deliver what the market needs." *Id.* ¶ 18. The

obvious inference to be drawn from this allegation is that Labb's software was failing to meet industry standards.[1]

The specific industry standards referenced in Plaintiff's complaint are the same applicable industry standards inculcated in the Original Agreement, i.e. industry standard functionality and accuracy related to drug-testing in order to "read, interpret, verify, record, communicate, and archive results of drug tests and other toxicology screenings gathered for and submitted by employers and prospective employers (the 'Core Software')." Dkt. 1-2 at 1. The Complaint specified in paragraphs 16 and 17 that a material hinderance posed by the existing software is the lack of functionality to accommodate third-party collection sites where Fas-Tes locations are not available, for which other available software platforms exist which are compatible with third party equipment. Dkt. 1 at 5. In addition, Fas-Tes has elaborated on the industry standard failings in its briefing in support of a preliminary injunction. Dkt. 8-1 ¶ 3; Dkt. 9 at 3–4.

Defendant claims that the demand for third-party compatibility is limited only to the express language of the Original Agreement by way of the exhibit-prevails rule; however, as detailed in the section above, that rule only applies "in the event of [a] conflict between the bare allegations of the complaint and any exhibit attached." *Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

---

[1] This inference is more fully articulated in John Smith's declaration in support of the TRO/preliminary injunction motion. Dkt. 8-1 ¶ 4.

Plaintiff's assertions, and the inferences to be drawn from them, are not in conflict with either the Original Agreement or any other adopted exhibit and simply supplement the factual record to give a specific example of the existing software's deviation from acceptable industry standards. This level of specificity is more than sufficient to provide fair notice of the Plaintiff's claims and that the facts alleged sufficiently show a plausible claim for relief.[2] *See Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555–56.

Defendant's Memorandum interposes the roles of ownership and licensure in software development. Ownership and License are two independent concepts, and Fas-Tes has nowhere asserted that it owns the Modified Software. Instead, Fas-Tes asserts that One by Labb is a modification, upgrade, or additional software developed in conjunction with the Modified Software that Labb was already obligated to provide or license to Fas-Tes under the Original Agreement. Section 6 of Exhibit B to the Original Agreement states that the development fee paid to Labb by Fas-Tes will be spent to "modify, maintain, upgrade and support the Core Software, the Modified Software *and to develop new software and technology*," and contemplates that in years Five through Eight Fas-Tes may direct how the fee is used to "develop or refine technology beneficial to FL." Dkt. 1-2 at 13–14. Defendant's statement that there are

[2] If this Court were to find that the industry standard allegations of the Complaint are deficient, that could easily be remedied by amendment to add the more detailed allegations of John Smith's declaration. *See* Dkt. 8-1 ¶¶ 3–5. Given, however, that Defendant has previously admitted in writing that its software failed to keep pace with industry standards and was "obsolete," it cannot credibly deny being on fair notice of Fas-Tes' claims. *See* Dkt. 1 ¶ 18; Dkt. 8-1 ¶ 4.

no facts alleged supporting the proposition that One by Labb was developed to "address the specific needs of FL" is both a bare conclusion and false. By the clear terms of the Original Agreement, as well as additional pre-discovery facts in Fas-Tes's possession, any development made using the Development Fee was meant to be provided to Fas-Tes under their License, as asserted in the Complaint. It is also inferable from Defendant's admission, alleged in paragraph 18 of the Complaint.[3]

## II. Limitation of Remedies is inapplicable to the matters before the Court.

Defendant next argues that the "exclusive remedies" provision of the Original Agreement bars Plaintiff's claim for relief. Even taking Defendant's contentions that this provision is applicable—which it is not—Section 3 clearly stated this limitation is expressly framed around a "breach of warranty" claim concerning products and services and describes the franchisees' remedies for nonconformance. Count I, however, addresses Labb's failure to develop and license Modified Software and additional software, and goes on to assert that One by Labb was wrongfully withheld from Plaintiff. Defendant fails to support its argument that the limitation of warranty remedy clause reaches every alleged breach concerning software-development,

[3] Again, it strains credulity for Defendant to claim that One by Labb was not intended to replace the software provided under the Original Agreement, when their CEO admitted in writing—in the very document referenced in paragraph 18 of the Complaint—that One by Labb was being developed as a result of the "deliberate choice to abandon the original platform . . . and build from the ground up" and that Labb made that decision "because the industry has reached a point where incremental improvement on the existing platform could not deliver what the market needs." Dkt. 8-1 ¶ 4; Dkt. 8-3 at 2.

licensing, exclusivity, and the asserted withholding of One by Labb. It likewise fails to address claims of harm to Fas-Tes' franchise system, franchisee relationships, business opportunities, and loss of goodwill, except by simply characterizing the pleaded amount of damages as conclusory. However, the very plausibility standard cited by Defendant requires merely sufficient factual matter, not concrete proof of damages calculations at the pleading stage. The Complaint supplies a factual description of the alleged injury and its asserted connection to the claimed breaches. The mere absence of a damages equation does not establish that the pleaded harm is merely a naked legal conclusion. Plaintiff has met and exceeded the plausible pleading standard required of it, and Defendant's Motion should be denied.

## III. Count II plausibly states a claim for fraudulent inducement.

Defendant improperly asks the Court to apply Rule 9(b) in a vacuum, despite this District's warning that Rule 9(b) should not be applied so strictly as to "swallow the more encompassing notice pleading mandate" of Rule 8. *See Steyhr Daimler Puch of America Corp. v. Pappas*, 35 B.R. 1001, 1005 (E.D. Va. 1983); *see also Picture Lake Campground, Inc. v. Holiday Inns, Inc.*, 497 F. Supp. 858, 866–67 (E.D. Va. 1980).

> The enforcement of Rule 9(b) should not become a throwback to the Field Code or a tool to require plaintiffs repeatedly to redraft pleadings despite defendants' pre-existing full knowledge of the matters which plaintiffs' pleading addresses. Therefore, if under the circumstances of the case it is apparent that even though plaintiffs' pleadings are vague, the defendants do in fact have notice of the matters of which plaintiffs complain, a strict application of Rule 9(b) can serve no purpose.

*Steyhr*, 35 B.R. at 1005 (quoting *Picture Lake*, 497 F. Supp. at 866). The Sixth Circuit similarly requires that "Rule 9(b) is not to be read in isolation, but is to be interpreted

in conjunction with Federal Rule of Civil Procedure 8." *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 503 (6th Cir. 2007) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988) ("[T]he two rules must be read in harmony.")). Rule 8 requires only "a short and plain statement of the claim" made by "simple, concise, and direct allegations." *Id.* Rule 8 is the commonly understood requirement of "notice pleading" where technical pleading requirements are rejected in favor of an approach designed to reach the merits of an action. *Id.* Rule 9 arguments should only sustain a 12(b)(6) Motion when a complaint contains "no specific information about the filing of the claims themselves—nothing, that is, to alert the defendants 'to the precise misconduct with which they are charged and to protect defendants against spurious charges of immoral and fraudulent behavior.'" *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 503 (6th Cir. 2007) (quoting in turn *United States ex. rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2001)).

The Sixth Circuit in *Bledsoe* went on to find that for purposes of Rule 9(b) an offending corporation can be the alleged perpetrator of fraudulent conduct. *Id.* at 506. Virginia law does not conflict with the rule that the elements of fraud "may be satisfied either by a principal acting alone, or through the acts of the agents." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 180 (4th Cir. 2002) (citing *Dudley v. Estate Life Ins. Co. of Am.*, 220 Va. 343 (1979)). Ultimately a plaintiff must prove the Virginia fraud elements by clear and convincing evidence; that, however, is a merits-based

burden, and is distinct from Rule 9(b), which governs the particularity of the allegations rather than the evidence needed to prove fraud.

Defendant wrongfully seeks to hide behind the corporate veil to evade liability for its own fraudulent conduct by asking the Court to dismiss Count II for an alleged failure to identify a "who, what, when, where, why" gambit. Under the circumstances of this case, Fas-Tes' Complaint has alleged each of these points with sufficient particularity, and Defendant cannot credibly claim to not understand the nature of the alleged fraud. Fas-Tes has asserted that Labb itself made the fraudulent statements, either directly through its own corporate form or through an agent. The Complaint references the recitals in Exhibit 2 (the LOI). Without admitting that all statements of the LOI are true—as is readily apparent from the face of the Complaint—James Ramsey of Labb was the signatory of the LOI on July 6, 2026, which reasserts Labb's previous allegations of violation of the exclusivity provisions of the Original Agreement. Through Labb's knowingly false representations it secured a signature of the LOI providing for a $100,000 damage payment, along with a years-long ballooned pricing fee due to Labb. As in *Steyhr* and *Picture Lake*, it would serve no purpose under the circumstances of this case to redraft pleadings where the details are known to Defendant and are already elaborated upon in Fas-Tes' briefing in support of a preliminary injunction.

Defendant goes on to argue that the Complaint does not allege any of the facts required by *Harrison*. However, the Court in *Harrison* actually stated that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that

the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Defendant clearly identified the 'negotiations leading to the July 2026 amendment and future dealings of the parties' and therefore is aware of the particular circumstances for which they will have to prepare a defense at trial. Secondly, Plaintiff has substantial prediscovery evidence of those facts and is ready to present preliminary evidence concerning these facts should the Court require amendment of Plaintiff's Complaint.[4]

Labb's repeated insistence on contacting Plaintiff's franchisees directly regarding price increases is but a part of the continued damage inflicted upon the goodwill fostered by Fas-Tes over years of work with various franchisees. Defendant's claims as to 'unfulfilled promises or statements regarding future events' are without merit because the events underlying Plaintiff's claims have already occurred—at least in part.

Defndant's argument as to economic loss rule impermissibly blurs the distinction between contract and tort law. The Complaint alleges inducement to enter into the LOI through false statements regarding allegedly then-existing franchisee breaches and threats of direct intervention. The LOI sought to establish a new fee

---

[4] Fas-Tes has already submitted some of such evidence through the Declaration of John Smith in support of its TRO/preliminary injunction motion, Dkt. 8-1, and expects to present additional evidence at the hearing scheduled for October 29, 2026.

structure to take effect on a date certain, regardless of whether the software platform was being used or not—thus damaging the existing business relationships and goodwill between Plaintiff and its franchisees. The pleaded injury is therefore not limited only to a claim that Labb performed the Original Agreement poorly; it includes fraudulent inducement to execute an instrument for Labb to charge new fees, which it has already done. Defendant's memorandum fails to meaningfully argue why a claim for fraudulent inducement should be prohibited by the economic loss rule, and it's motion should be denied.

Additionally, Plaintiff does not seek a breach of contract remedy under the LOI because Plaintiff has asserted that the LOI is unenforceable for several reasons stated in the Complaint. It is axiomatic that the economic loss rule cannot apply to fraudulent inducement which occurred prior to the execution. The Virginia Supreme Court in *Abi-Najm* stated that "a false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely, is always ground for recission of the contract." *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 362, 699 S.E.2d 483, 489 (2010) (quoting *George Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 220 Va. 109, 111–12, 255 S.E.2d 682, 683 (1979); in turn quoting *Wilson v. Carpenter*, 91 Va. 183, 187, 21 S.E. 243, 244 (1895)). And further stated "[f]raud in the inducement of a contract is also ground for an action for damages." *Id.* The pre-existing facts contemplated by Defendant in making its fraudulent statements was the false accusation of widespread breaches of exclusivity totaling $100,000 in value. What is distinguishable between this case and the argument made by Defendant is

that Defendant's fraudulent statements were false when made, and Plaintiff does not rely upon future contractual performance of Defendant to prove such falsity. Thus, the economic-loss rule is inapplicable. *Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 447 (4th Cir. 1990) ("Virginia law 'distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract.'").

Next Defendant cites *Sweely Holdings* to attack justifiable reliance. The quoted portion of that case in Defendant's memorandum, however, is self-defeating: it applies when a party to a settlement agreement is *represented by counsel at the time of the negotiation*. *See Sweely Holdings v. SunTrust Bank et al.*, Record No. 171165 (Va. 2018). Defendant offers no argument or evidence that Plaintiff was represented by Counsel at the time of the LOI's negotiation. It cannot do so, because Fas-Tes was *not* represented by counsel at the time. Thus, *Sweely Holdings* is inapplicable. Defendant's Motion fails to address the breakdown in the working relationship between the parties considering Labb's bad faith actions and fails to address the fact that the LOI's terms contemplated a final agreement negotiated in good faith between the parties by July 30, 2026. This final agreement was never created or executed, and the LOI has expired by its own express terms. Therefore, Defendant's Motion should be denied.

## IV. Count III sufficiently states a claim for declaratory judgment.

Avoiding the 'slippery-slope' argument made by Defendant's memorandum, Defendant conceded that declaratory relief is a tool for the Court to 'resolve

uncertainty about rights before they have fully matured into an accrued cause of action.' Dkt. 22 at 8. This is exactly what Plaintiff seeks from the Court in relation to the Original Agreement and the LOI. With each passing month either party to this suit may claim accrual of an action. Count III alleges an actual, substantial, and immediate controversy over the enforceability of the LOI, the governing price terms, Labb's authority to impose disputed fees, FasTes' future exclusivity and buyout obligations, and the parties' respective rights under both instruments. It also seeks declarations directed to future performance, valid termination or adjudication, and whether Fas-Tes is excused from certain obligations asserted against it by Defendant. These requested determinations are not confined to an award of damages for an already-completed breach.

While there may be overlap between declaratory judgment and Plaintiff's other causes of action, Defendant has not established that no useful prospective purpose remains where the Parties actively dispute current pricing, continued performance, the validity of the LOI, and Plaintiff's ongoing obligations to Labb. The allegations contained in Cause III support a present controversy over continuing rights and conduct, rather than solely retrospective damages. Were the parties to have completely cut ties, what overlap there is between causes would be more relevant.

## V. Defendant improperly relies upon the merits of the case.

As has been done repeatedly in its Motion & Memorandum, Defendant seeks to preliminarily try the merits of the case rather than focus solely on the pleadings at issue. Such approach is an improper argument for 12(b)(6) motions, which cannot

be used to resolve the factual issues or the merits of the case. *Republican Party*, 980 F.2d at 952.

**a. Additional consideration was required to create an amendment.**

Defendant cites to inapplicable precedent from a non-Virginia State Court, which should be wholly disregarded for its lack of precedential authority, much less any persuasive value. Opposite to Defendant's cited precedent, the Commonwealth of Virginia has long held that "[t]he general rule is that a new promise, without other consideration than the performance of an existing contract in accordance with its terms, is a naked promise without legal consideration therefor and unenforceable." *Seward v. N.Y. Life Ins. Co.*, 154 Va. 154, 168 (1930). This rule was incorporated into the face of Plaintiff's Complaint. Furthermore, as stated in paragraph 24 of its Complaint—and included by reference in Count III—no execution of a final agreed amendment occurred and the $100,000 in funds were not conveyed to Labb.

Additionally, Defendant's argument regarding application of the UCC is a bare legal conclusion. However, to the extent the UCC is applicable—which Plaintiff does not here concede—Defendant's Motion fails to address the standard of good faith and fair dealing imposed upon it under the UCC. Va. Code §8.2-209, Official Comment 2 ("The effective use of bad faith to escape performance on the original contract terms is barred, and the extortion of a 'modification' without legitimate commercial reason is ineffective as a violation of the duty of good faith. Nor can a mere technical consideration support a modification made in bad faith."). Plaintiff's Complaint identifies Defendant's lack of good faith by making false representations, along with

the shockingly high price imposed by the LOI, both of which would support an argument for failure to adhere to necessary standards under the UCC. In short, the LOI was based on Labb's insistence on punitive payback for an alleged wrong that it knew it had not occurred. Such basis for amendment is not in keeping with the general requirements of consideration-free amendment under the UCC.

Defendant's claims under the UCC additionally fail to address the issue that Plaintiff's Complaint alleges that the current software offered by Labb does not meet the contractually required industry standard and is therefore non-conforming goods under the UCC which Plaintiff would have a right to reject even if the LOI is enforced. Va. Code § 8.2-601. Because the Core/Modified Software is at the heart of both the contract and Plaintiff's business, such nonconformity with industry standard has substantially impaired the value of the whole contract, thus breaching the entire agreement. *See* Va. Code § 8.2-612.

Additionally, Plaintiff's Complaint identifies that whatever consideration there could be to support the LOI was never exchanged between the Parties. Defendant's Motion and Memorandum fails to address the lack of delivery of consideration in their argument and additionally fails refute the lack of consideration for the increase in price structure for the same services and products already contractually required under the Original Agreement. Defendant's Motion should therefore be denied.

**b. Arguments of divisibility are irrelevant and premature for 12(b)(6) purposes.**

Defendant's arguments regarding the divisibility of the LOI rests upon Defendant's prior position that the LOI is even enforceable. Labb once again seeks to delve into the merits of the case, rather than look solely upon the statements of Plaintiff's claim for relief. Defendant's argument is in essence a Motion for Summary Judgment and fails to present the proper posture of a 12(b)(6) motion—that a movant admits the facts alleged in the complaint but challenges Plaintiff's right to any relief based on those facts. *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1993). Defendant similarly fails to address the pleading standard for a 12(b)(6) motion, which is that "[t]he Court must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Strickland,* 32 F.4th at 347 (quoting *Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F.4th 825, 829 (4th Cir. 2021), in turn quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)).

The facts and inferences to be drawn in Plaintiff's favor are simple: Plaintiff was fraudulently induced into signing an 'agreement to agree' to amend the already breached Original Agreement based on insufficient consideration. Defendant's own Memorandum concedes that 'agreements to agree' are impermissibly vague and unenforceable. Defendant's merits-based arguments over the divisibility of the LOI, however, only go to whether *Defendant's* defenses or counterclaims are applicable, and do not correctly relate to whether Plaintiff has plausibly pleaded a cause of

action. Therefore, divisibility of the LOI is a moot point for purposes of a 12(b)(6) consideration.

**PRAYER**

For the foregoing reasons, Plaintiff respectfully prays that this Court:

a) Deny Defendant's Motion with Prejudice;

b) Or, in the alternative, that the Court grant Plaintiff leave to amend its Complaint; and

c) Award Plaintiff such other and further relief as the Court deems just and proper–both general and special–at law or in equity.

Dated: October 19, 2026

Respectfully submitted,

*/s/ Jason C. Greaves*
Jason C. Greaves, VSB No. 86164
Katie L. Raymond, VSB No 101624
BINNALL LAW GROUP, PLLC
717 King Street
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
katie@binnall.com

Robert M. Park (pro hac vice forthcoming)
Chase C. Parsons (pro hac vice forthcoming)
UHL, FITZSIMONS, BURTON, WOLFF & RANGEL, PLLC
4040 Broadway, Suite 430
San Antonio, Teas 78209
Phone: (210) 829-1660
Fax: (210) 829-1641
rpark@uhlfitzsimons.com
cparsons@uhlfitzsimons.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on October 19, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/ Jason C. Greaves*
Jason C. Greaves, VSB No. 86164

*Counsel for Plaintiff*