**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

**FAS-TES FRANCHISE SYSTEMS, LLC,**

***Plaintiff,***

v. Case No. 2:26-cv-961

**RAMSEY DIAGNOSTICS CORP., d/b/a LABB,**

***Defendant.***

**DEFENDANT RAMSEY DIAGNOSTICS CORP. D/B/A LABB'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Now comes Defendant Ramsey Diagnostics Corp. d/b/a Labb, by counsel, and files its Reply Memorandum in Support of its Motion to Dismiss pursuant to FRCP Rule 12(b)(6) all counts asserted in Plaintiff's Complaint (Dkt. No. 1) as follows:

## I. Introduction.

Plaintiff's Opposition confirms dismissal is warranted. Rather than identify well-pled facts establishing the elements of its claims, Plaintiff relies upon conclusory allegations, materials outside the allegations of the Complaint and exhibits, and arguments contradicted by the contracts incorporated into the Complaint itself. Plaintiff repeatedly attempts to cure pleading deficiencies through references to declarations, preliminary injunction filings, and factual assertions outside the Complaint. None may be considered under Rule 12(b)(6).

Plaintiff also fails to overcome the express terms of the parties' agreements. The Agreement limits remedies for any alleged software nonconformity, preserves Labb's ownership of software and developments funded through Development Fees, and does not grant Plaintiff rights to every product subsequently developed by Labb.

Count I fails because Plaintiff does not plausibly plead breach of a specific contractual obligation. Count II fails because Plaintiff still has not satisfied Rule 9(b), has not plausibly alleged falsity or justifiable reliance, and seeks to convert a commercial contract dispute into a tort claim. Count III is wholly duplicative of the breach and fraud claims. The Motion should therefore be granted.

## II. Count I fails to state a claim for breach of contract.

### A. The Agreement's Exclusive remedy provisions bar the damages sought under Count I.

Plaintiff argues the limitation-of-remedies provision applies only to warranty claims and not to software-development disputes. (Dkt. No. 25 at 10-11.) This argument ignores the Complaint itself and is a distinction without merit. Plaintiff specifically alleges that in the Agreement Defendant "warranted and agreed to provide Fas-Tes with products which conform to applicable industry standard for functionality and accuracy." (Dkt. No. 1 ¶ 10.) This warranty to provide products that conform to applicable industry standards comes directly from the Agreement (Dkt. No. at 7 §3(a)), and is the warranty breach asserted in Count I. Count I alleges Labb breached this warranty by failing to provide software consistent with industry standards for functionality and accuracy by failing to provide the One by Labb software. (Dkt. No. 1 ¶¶ 31-33.) Those allegations correspond precisely to the Agreement's warranty provisions.

Section 3(a) establishes the warranty. Section 3(b) is a limitation of warranties. Section 3(c) establishes exclusive remedies. Section 3(c) sets forth the available remedies if there is a breach by Defendant to include only, at Defendant's option: 1) replacement of products and/or reperformance of services, ii) refund of payments for non-conforming products or services, or 3)

receive a credit for non-conforming products or services. Section 3(d) states those remedies are the parties' "SOLE AND EXCLUSIVE REMEDY." (Dkt. No. 1-2 at 7-8.)

Virginia routinely enforces contractual limitations of remedies negotiated between sophisticated commercial parties. *See C.E. Wright & Co. v. Shackleford*, 152 Va. 635, 648, 148 S.E. 807 (1929); Va. Code § 8.2-719. Here, Plaintiff does not assert any of available remedies under the Agreement for the alleged breach of warranty claim asserted as Count I for breach of contract. Plaintiff cannot avoid those limitations through artful pleading. Plaintiff does not allege it seeks any of the remedies available under Section 3(c). Instead, Plaintiff seeks damages for "impairment of its franchise system, loss of business opportunities, loss of good will amongst its franchisees, disruption of franchisee relationships, and exposure to disputed charges." (Dkt. No. 1 ¶35.) Those claims for damages are precluded by the Agreement. Therefore, Plaintiff's breach of contract claim as alleged as a breach of warranty must be dismissed.

**B. Plaintiff fails to identify any cognizable industry standard.**

Plaintiff argues that paragraphs 15-18 of the Complaint sufficiently identify industry standards allegedly violated by Labb. (Dkt. No. 25 at 6-9.) They do not. While Plaintiff repeatedly invokes the phrase "industry standards," neither the Complaint nor the Opposition identifies any actual standard governing drug-testing software. No regulation, accreditation standard, trade standard, technical specification, governmental requirement, or published industry benchmark is identified. Instead, Plaintiff alleges only that other software platforms exist, some platforms accommodate third-party collection sites, some competitors offer different functionality, and Defendant later developed another product. Those allegations do not plausibly establish Defendant's Core and Modified Software required by the Agreement failed to conform

to applicable industry standards for functionality and accuracy within the meaning of Section 3(a) of the Agreement.

The Agreement does not require accommodation by third-party collection sites. Plaintiff's argument improperly equates preferred functionality, not required by the Agreement, with contractual nonconformity. Neither the Agreement nor the Complaint identifies any contractual requirement that Defendant's software accommodate third-party cups or third-party collection platformss. Under *Twombly* and *Iqbal*, the mere assertion that software should possess additional features does not plausibly allege breach of a contractual warranty.

**C. Plaintiff cannot amend the Complaint through its memorandum in opposition.**

Plaintiff repeatedly relies upon the declaration of John Smith submitted as part of Plaintiff's motion for a temporary restraining order and preliminary injunction, Plaintiff's preliminary injunction briefing, proposed evidence not contained in the Complaint, and assertions that additional facts "could easily be remedied by amendment." (Dkt. No. 25 at 8-9.) Plaintiff's argument effectively acknowledges the Complaint does not contain those allegations. A Rule 12(b)(6) motion tests the sufficiency of the Complaint itself and any documents incorporated into the Complaint. *See Goines v. Valley Community Services Board*, 822 F.3d 159, 165-66 (4th Cir. 2016). Plaintiff cannot cure deficient pleading through opposition briefing or declarations submitted in connection with separate motions. The Court should evaluate only the allegations actually pleaded.

**D. Plaintiff's damages allegations remain conclusory.**

Plaintiff argues it need not provide a damages calculation at the pleading stage. (Dkt. No. 25 at 10-11.) Defendant does not contend otherwise. Rather, Plaintiff must still plead facts

making damages plausible. The Complaint alleges a specific figure of "$533,010" but provides no facts to support damages such as methodology, calculation, supporting transactions, lost contracts, customer losses, or concrete injury tied to the alleged breaches. (Dkt. No. 1 ¶35.) General references to goodwill, franchisee relations, and business opportunities remain speculative and insufficient under *Twombly* and *Iqbal*.

## III. Count II Fails to state a claim for fraudulent inducement.

### A. Plaintiff fails to allege justifiable reliance.

Plaintiff is a sophisticated franchisor.[1] Plaintiff possessed all the information necessary and the right and ability to investigate and verify franchisee compliance. Under the Agreement, Plaintiff was the party responsible for franchisee oversight and auditing:

> In the event of a Breach of Exclusivity discovered by Labb or reported to Labb by FL or FL's Franchisee, FL, subject to Labb's rights pursuant to Section 4.(f) of this Agreement, will have thirty (30) days to cure the Breach of Exclusivity by (i) **auditing the offending Franchisee's records to verify the Breach of Exclusivity** and (ii) paying Labb liquidated damages ("Damages") equal to the price the Franchisee would have paid Labb had the Franchisee purchased and used Labb's Products and Services for all drug tests and related services which the Franchisee sold or provided to or performed for the Franchisee's customers.

(Dkt. No. 1-2 at 7 § 2(d) (emphasis added).) The Complaint affirmatively alleged Defendant does not have the right under the Agreement to conduct its own audit or investigation of exclusivity breaches by the franchisees. (Dkt. No. 1 ¶ 20.)

---

[1] Plaintiff attempts to distinguish *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367 (2018), by asserting it lacked counsel during negotiation of the Amendment. (Dkt. No. 25 at 16.) That distinction misses the point. The Supreme Court's discussion in *Sweely Holdings* was not limited solely to representation by counsel but to the broader justifiable-reliance inquiry. *Id.* at 382-85.

Plaintiff did not conduct an audit to verify breaches identified by Defendant. Plaintiff cannot plausibly claim it reasonably relied on unverified allegations concerning matters it was contractually obligated to audit. By not conducting an audit, Plaintiff wholly discredits any assertion that it relied upon statements from Defendant regarding exclusivity breaches. Since there was no audit by Plaintiff, there can be no justifiable reliance or fraud.

**B. The economic loss rule bars Count II.**

Plaintiff relies heavily on *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350 (2010). (Dkt. 25 at 15-16.) *Abi-Najm* is distinguishable. That case did not involve the amendment of the parties' ongoing contractual relationship. Rather, it was the party's "present intent not to perform its [future] obligations" prior to the formation of the contract which properly alleged fraudulent inducement. *Id.* 363-64. The court in *Abi-Najm* recognized its own prior precedent that fraud allegations are legally insufficient when "a contract or an agreement was the source of the duty allegedly breached." *Id.*

Here, the fraudulent statements complained of by Plaintiff relate to duties under the Agreement. The alleged misrepresentations here concern exclusivity obligations and franchisee compliance—contractual rights arising under the Agreement. Every alleged duty exists because of the Agreement. Upon Defendant reporting breaches, Plaintiff had the exclusive duty to "audit and verify" the breaches. (Dkt. No. 1-2 at 7 §2(d).) The damages sought are exclusively economic losses arising from the contractual relationship. Under *Filak v. George*, 267 Va. 612, 618-19 (2004), Virginia law does not permit a plaintiff to recast a contract dispute as a tort claim simply by attaching the label "fraud."

**C. Plaintiff still does not satisfy Rule 9(b).**

Plaintiff's Opposition devotes substantial discussion to Rule 8 notice pleading but largely ignores Rule 9(b)'s requirements. (Dkt. No. 25 at 11-14.) Even accepting Plaintiff's authorities, the Complaint remains deficient. Plaintiff still fails to plead who specifically made each representation, when each representation was made, where it was made, the exact content of each statement. The Fourth Circuit requires such allegations. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Plaintiff's repeated assertion that Defendant already knows what is being alleged is not a substitute for pleading with particularity.

The non-binding case law cited by Plaintiff that Rule 9(b) should not be strictly applied remains unpersuasive. First, *Steyhr Daimler Puch of Am. Corp. v. Pappas*, 35 B.R. 1001, 1005 (E.D. Va. 1983) recognized Rule 9(b) is an exception to Rule 8 general notice pleading standards and that the strict application of Rule 9(b) is only relaxed in "certain circumstances." However, that court did not find such circumstances existed and dismissed a party's fraud claim, with leave to amend. *Id.* Similarly, in the other case cited by Plaintiff to apply a relaxed version of Rule 9(b), the trial court there fell short of granting a motion to dismiss a fraud claim, but the court did require the plaintiff to amend its pleadings. *Picture Lake Campground, Inc. v. Holiday Inns, Inc.*, 497 F. Supp. 858, 866-67 (E.D. Va. 1980). Here, Plaintiff has not put forth such certain circumstances justifying a relaxed application of Rule 9(b).

**D. Plaintiff fails to plausibly plead facts of falsity.**

The entire fraud claim depends on Plaintiff's assertion that Labb had "no evidence" of exclusivity violations. (Dkt. No. 1 ¶ 40.) However, Plaintiff pleads no facts establishing no violations occurred whatsoever, Defendant knew they did not occur, that Defendant had no basis for concerns, or that the damages calculations discussed by the parties related to the suspected

breaches were fabricated. The Agreement placed responsibility for franchisee compliance and auditing squarely upon Plaintiff. (Dkt. No. 1-2 at 6-7 §2(c)-(d).) A disagreement regarding whether exclusivity violations occurred is not fraud.

## IV. Count III for declaratory judgment should be dismissed.

Declaratory judgment is discretionary. 28 U.S.C. § 2201; *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 324-25 (4th Cir. 1937); (Dkt. No. 22 at 8.) Every declaration Plaintiff seeks depends on resolution of Counts I and II by asking the court to merely declare:

> i. The LOI is void, rescinded, or otherwise unenforceable;
> ii. The Original Agreement, rather than the LOI, governed the pricing of Products and Services before any valid termination or adjudication of Fas-Tes' rights;
> iii. Labb's unilateral imposition and collection of fees under the LOI was unauthorized;
> iv. Fas-Tes is excused from further performance of the Original Agreement's prospective exclusivity and early-termination buyout provisions because of Labb's material breaches; and
> v. Fas-Tes may terminate the Original Agreement without the contractual buyout otherwise specified by that agreement.

(Dkt. 1 ¶50.) Each of these requested declarations requires resolution of the claims asserted in Counts I and II. Thus, Count III serves no independent purpose and should be dismissed as duplicative.

## V. Plaintiff's attacks on the Amendment fail as a matter of law.

### A. There was adequate consideration for the Amendment.

Although consideration was not required for the Amendment, see argument *infra*, there was indeed adequate consideration. Even if consideration were required, the forbearance of pursuing disputed claims and the agreement by Defendant to continue providing products and services to the franchisees despite the prior exclusivity breaches independently supplies consideration. Virginia courts have defined consideration as:

> the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made. It matters not to what extent the promisor is benefited or how little the promisee may give for the promise. A very slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise.

*Walker v. Arrington*, 241 Va. 451, 455, 403 S.E.2d 693, 695 (1991).

"Forbearance to prosecute a well-founded or doubtful claim is a sufficient consideration for a contract,…and an agreement to forbear may be implied from the conduct of the parties and the nature of the transaction." *Troyer v. Troyer*, 231 Va. 90, 93-94, 341 S.E.2d 182, 185 (1986). In *Troyer*, a husband and wife were going through a divorce. *Id.* The husband agreed to relinquish his property rights to certain marital property, and the wife did not pursue her rights to spousal support. *Id*. The court found the trial court reasonably could infer that the consideration for the contract was the wife's forbearance to claim support. *Id.*

Under Section 1 of the Amendment, both parties and the franchisees, as bound by Plaintiff, agreed to legally enforceable duties, obligations, and rights. (Dkt. No. 1-3 at 2-3.) Section 1.1 required Plaintiff to announce the new fee structure to the franchisees. Section 1.2 required Franchisees to pay a $249 monthly fee to Defendant. Section 1.3 set forth new revenue-based fees. Section 1.4 confirmed the new pricing schedule applied regardless of what software platform was being used. These new duties and obligations in Section 1 independently provided consideration.

Section 2 required both parties to work together "in good faith" towards a term sheet and a definitive agreement. This gave Plaintiff a new right to bring a claim for lack of good faith by Defendant in reaching a term sheet or definitive agreement if Defendant did not work in good

faith, but Plaintiff has chosen not to pursue such a claim. This new right and good faith obligation was valid consideration.

Pursuant to Section 3, Defendant agreed to, and in fact did, forebear prosecuting its claims for multiple breaches. Defendant had a contractual right under the Agreement to terminate, suspend performance, or pursue remedies for existing exclusivity breaches. Defendant instead agreed to continue providing software under a new fee structure. Defendant deferred or temporarily declined enforcement of existing breach claims while the parties attempted to resolve them. Defendant did in fact forebear filling its claims in excess of $4 million against Plaintiff until long after the duty to work in good faith towards a term sheet and definitive agreement expired.[2] This forbearance by Defendant was valid consideration.

Section 3 gave Plaintiff the ability to settle prior breaches by making timely payment of $100,000 after fulfilling obligations in Section 2. Plaintiff also did forebear rights it had under the Agreement pursuant to Section 3 of the Amendment—the rights to cure the breaches by conducting an audit to verify breaches. Prior to entering the Amendment, Plaintiff was put on notice by Defendant of multiple violations caused by the franchisees. (Dkt. No. 1¶ 20.) At that time, Plaintiff had the opportunity and right to verify and cure the alleged breaches over the course of thirty days by *inter alia* conducting an audit to verify the extent of Defendant's claims of violations. (Dkt. No. 1-2 at 7 §2(d).) Plaintiff then did forebear its right to conduct the audit. Instead of exercising its audit rights, Plaintiff chose to enter the Amendment which provided the opportunity for it to resolve the exclusivity breaches in a summary fashion. This forbearance by Plaintiff was valid consideration.

---

[2] The court may take judicial notice of the fact Defendant filed its Counterclaim on October 5, 2026 seeking $4,307,648.67. F.R.E. 201; *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989).

**B. Additional Consideration was not required.**

Notwithstanding the fact there was sufficient consideration, it was not required for the Amendment. Plaintiff primarily relies upon *Seward v. New York Life Insurance Co.*, 154 Va. 154 (1930). (Dkt. No. 25 at 18.) That reliance is misplaced. The Amendment resolved ongoing disputes regarding alleged exclusivity violations. When parties to an existing contract settle a dispute by executing an amendment, the amendment does not require new consideration. *Producers' Coal Co. v. Mifflin Coal Mining Co.*, 82 W. Va. 311, 317 (1918); (Dkt. No. 22 at 10.)

Further, where the Uniform Commercial Code applies, Virginia has expressly abolished any requirement of additional consideration for contract modification. "An agreement modifying a contract within this title needs no consideration to be binding." Va. Code § 8.2-209(1). Plaintiff's Opposition never meaningfully addresses this statutory language. Plaintiff does not plausibly allege bad faith. Plaintiff invokes Official Comment 2 to Va. Code §8.2-209 and suggests extortion or bad faith. (Dkt. No. 25 at 18-19.) Rather, Plaintiff alleges only that Defendant asserted contractual rights, the parties negotiated pricing, Labb proposed new terms, and Plaintiff later disagreed with those terms after executing the Amendment. Those allegations do not plausibly establish bad faith.

**C. Section 1 of the Amendment became effective.**

The Amendment expressly separates Section 1 (fee modifications), Section 2 (future negotiations), and Section 3 (settlement and release conditions). (Dkt. No. 1-3 at 1-2.) Section 1 is not dependent upon any of the other sections. Plaintiff concedes no definitive agreement was executed and it never made the $100,000 payment. (Dkt. No. ¶ 24.) Those facts only affect Sections 2 and 3. Nothing in the Amendment provides that failure to reach agreement on a term sheet, failure to reach agreement on a definitive agreement, or failure by Plaintiff to make the

$100,000 payment nullifies Section 1. Section 1 is not contingent upon these actions. Moreover, Section 4.1 expressly states: “Except as expressly amended by this Amendment, the Agreement remains in full force and effect.” The plain language of the Amendment defeats Plaintiff's theory.

**VI. Conclusion.**

For the foregoing reasons, and for the reasons stated in Defendant's opening memorandum (Dkt. No. 22), Defendant respectfully requests that the Court dismiss Counts I, II, and III of the Complaint with prejudice, dismiss all derivative requests for declaratory, recessionary, and injunctive relief, award Defendant its contractual attorney's fees and costs as provided for in the Agreement, and grant such additional relief as the Court deems just and proper.

Respectfully submitted.

**RAMSEY DIAGNOSTICS CORP.**

By:/s/David B. Oakley
Of Counsel

J. Bryan Plumlee, Esq., VSB No.: 44444
David B. Oakley, Esq., VSB No.: 72226
POOLE BROOKE PLUMLEE PC
4705 Columbus Street, Suite 100
Virginia Beach, VA 23462
Phone: 757-499-1841
Facsimile: 757-552-6016
bplumlee@pbp-attorneys.com
doakley@pbp-attorneys.com
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of October 2026, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will then send the document and a notification of such filing (NEF) to the following counsel of record via Electronic Mail:

Jason C, Greaves—jason@binnall.com
Katie L. Raymond—katie@binnall.com

/s/ David B. Oakley
David B. Oakley, Esq., VSB No.: 72226
POOLE BROOKE PLUMLEE PC
4705 Columbus Street, Suite 100
Virginia Beach, VA 23462
Phone: 757-499-1841
Facsimile: 757-552-6016
doakley@pbp-attorneys.com